CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JUN 2 6 2020

JULIA C. DUDLEY, CLERK
BY: /s/ A. Beale
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JANICE A. MOORE, et al., | ) |
| | ) |
| Plaintiffs, | ) Civil Action No. 3:19CV00045 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| VIRGINIA COMMUNITY | ) By: Hon. Glen E. Conrad |
| BANKSHARES, INC., et al., | ) Senior United States District Judge |
| | ) |
| Defendants. | ) |

Plaintiff Janice A. Moore filed a two-count putative class action complaint on August 12, 2019, alleging violations of the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et. seq. ("ERISA") by Defendants Virginia Community Bankshares, Inc. (the "Holding Company"); Virginia Community Bank ("VCB"), a wholly-owned subsidiary of the Holding Company; A. Pierce Stone; Ronald S. Spicer; John A. Hodge; and H.B. Sedwick, III. This matter is before the court on Defendants' motion to dismiss Moore's complaint under Federal Rule of Civil Procedure 12(b)(6) and Defendants' motion to supplement the record. The complex matters addressed therein have been expertly briefed and argued by all parties and are ripe for review. For the reasons stated, the court will deny the motion to dismiss and deny the motion to supplement the record.

## Background

Moore is a former VCB employee and former participant in an Employee Stock Ownership Plan—a retirement plan—sponsored by the Holding Company for the benefit of employees of the Holding Company and of VCB (the "ESOP" or the "Plan"). The bulk of the Plan's assets were in Holding Company stock with the remainder invested in cash. Compl. ¶¶ 1, 43, & 44. Moore alleges that the Boards of Directors of the Holding Company and of VCB (which included Spicer) administered the Plan, that the same people who controlled the ESOP also controlled VCB, and

that VCB had discretion to make stock bonus contributions to the ESOP. Id. ¶¶ 41–45. At "all relevant times," Stone, Hodge, and Sedwick were trustees of the ESOP. Id. ¶¶ 24–27. The Plan has since terminated, effective December 31, 2016. Id. ¶ 123.

### *The 2007 Valuation*

This story begins in late-2006 and early 2007. Moore alleges that the ESOP trustees retained an investment bank, Howe Barnes Hoefer & Arnett, Inc. ("Howe Barnes"), to perform a valuation of Holding Company stock as of December 31, 2006. Compl. ¶ 60, Ex. 1. To do so, Howe Barnes considered information provided by the trustees, and "relied on" the "accuracy and completeness" of that data. Ex. 1 at 2–3. Howe Barnes submitted a March 19, 2007 letter that valued Holding Company stock at $55 per share. Id.

Moore asserts that Howe Barnes reached its $55 per share valuation due to fraudulent omissions by the ESOP trustees, Stone, Spicer, and others. Id. ¶¶ 57–68. She contends that the Holding Company and VCB were facing serious problems at the time of the valuation—including defaults or anticipated defaults on one or more large loans that were highly unlikely to be repaid—that would negatively impact the value of Holding Company stock. Id. ¶ 64.

Moore fortifies this assertion with specific allegations. In 2010, the Virginia State Corporation Commission (the "Corporation Commission") and the Federal Reserve Bank of Richmond (the "Federal Reserve") began investigating VCB's and the Holding Company's operations. This resulted in a Compliance Agreement dated June 29, 2011, which according to Moore "revealed long-standing patterns of operational and compliance problems and regulatory violations" including, among other things, insufficient oversight in credit risk management and lending, as well as "problems related to loan grading." Id. ¶ 65; see also ECF No. 30-8. For example, the agreement required that VCB and the Holding Company comply with certain agency

guidance and policy statements—dated 1985, 2001, 2006, 2009, and 2010—which related to credit risk management among other things. ECF No. 30-8 ¶¶ 4(d), 5(f), 9(b), & 13(c). Moore posits that the issues addressed by the investigation and subsequent agreement did not arise overnight and that they existed in 2006. Compl. ¶ 65.

Based on information and belief, Moore alleges that the trustees, Stone, and Spicer failed to disclose these issues to Howe Barnes. Id. ¶ 67. Moore points to the disparity between the Howe Barnes valuation as of December 31, 2006: $55 per share, and the price of Holding Company stock sold on December 29, 2006: $44.00 per share. Id. ¶ 61. She also notes subsequent drop-offs in share value. See, e.g., id. ¶¶ 59, 92, 109, 131. According to Moore, this indicates that Howe Barnes did not have all the facts necessary to value the Holding Company shares.

### *The Loans*

Next, Moore alleges that Defendants caused the ESOP to repurchase Holding Company stock at that allegedly inflated value, established by the 2007 valuation, for the purpose of making cash distributions to Stone and Spicer. Id. ¶¶ 90–93 & 136. Indeed, Moore alleges, based on information and belief, that Defendants obtained the 2007 valuation for the purpose of entering these transactions. Id. ¶ 68. Defendants leveraged the ESOP's assets to finance Stone and Spicer's cash-outs through allegedly non-exempt loans issued in 2007 and 2008 between VCB as the lender and the ESOP as the borrower, loans which Stone and Spicer helped to "set up." Id. ¶¶ 8, 85–113. Thereby, Defendants foisted the burden of these loans upon Plan participants because, according to Moore, the sums paid on the loans should have been used for the benefit of all plan participants.

### *Moore Discovers the Transactions*

Moore alleges that she became suspicious about the ESOP transactions in late 2014 or early 2015. VCB co-founder and former Board member Goodman Duke, who was "visibly upset,"

3

"briefly showed" Moore a copy of the Howe Barnes valuation at that time. Id. ¶ 97. On February 26, 2017, Moore wrote a letter to VCB's president and CEO complaining about the Plan's management. He responded, attaching a copy of the valuation, in April 2017. ECF No. 30-10.

According to Moore, Defendants had engaged in a coverup to prevent her and other Plan participants from learning about the valuation and the 2007 and 2008 loans. For example, she states that the 2007 valuation letter and loans were not disclosed for many years. Compl. ¶¶ 67–68, 94. Further, she alleges that transactions in 2008 were part of an effort to conceal the details of the 2007 loan, and that Defendants disclosed "inaccurate information" on certain disclosures—Form 5500 filings—to the Department of Labor and the Internal Revenue Service. Id. ¶¶ 11, 114–125. As to the Form 5500 filings, Moore alleges that Defendants failed to disclose a "Schedule E (ESOP information)" from 2006–2009 and information related to the Plan's liabilities, i.e. the loans, in line 1.b of Schedule I for each Form 5500 from 2007–2016. Id.; ECF No. 30-2 at 10, 17, 22, 27, 34, 41, 48, 55, 63, 71, 80, 88, & 96.

Moore also alleges that VCB intimidated employees who raised concerns about the ESOP. Compl. ¶¶ 94–95. For example, in 2010, a VCB loan officer was fired roughly two weeks after asking to review the ESOP's governing documents. Upon leaving, he allegedly stated that "this is what happens when you ask about the ESOP." In addition, Moore states that defendants "initiated questionable performance charges against her" soon after she asked about the ESOP. Id. Defendants also allegedly resisted Moore's efforts to obtain information in concert with an investigation by the Department of Labor. Id.

## Procedural History

Defendants' initial motion to dismiss raised three principle arguments: (1) that Moore's complaint is untimely under ERISA's statutory time limits; (2) that Moore fails to plausibly allege

4

that Defendants possessed but failed to disclose materially adverse information in 2006; and (3) that defendants VCB and Ronald Spicer are not proper defendants, or that the complaint does not sufficiently allege that they are fiduciaries under ERISA. On January 29, 2020, the parties appeared before the court on the motion to dismiss.

Thereafter, the court entered an order which, in part, took the motion under advisement and permitted the parties to jointly submit documents that they agreed were integrated into Moore's complaint or subject to judicial notice, were relevant to the motion, and were authentic. ECF No. 27. The order also invited supplemental briefing. The parties submitted a joint declaration and accompanying documents contemplated by the court's order. At the same time, Defendants filed a motion arguing that the court should consider additional documents. Moore responded that these documents were not explicitly relied on in her complaint. Defendants' supplemental briefing offered additional arguments for dismissal, to which Moore has responded.

## Standard of Review

To be sure, Federal Rule of Civil Procedure 12(b)(6) is an "important mechanism for weeding out meritless claims." Fifth Third Bancorp v. Dudenhoeffer, 573 U.S. 409, 425 (2014) (analyzing ERISA claims and citing Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554–63 (2007)). To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face," meaning that a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference" that a defendant is liable. Iqbal, 556 U.S. at 678 (internal quotation marks omitted). Yet "[w]hen considering the sufficiency of a complaint's allegations under a Rule 12(b)(6) motion, courts must construe the complaint liberally so as to do substantial justice." Bd. of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc., 929 F.3d 135, 152 (4th Cir. 2019) (quotation marks omitted).

5

In so doing, courts must "assume as true all its well-pleaded facts and draw all reasonable inferences in favor of the plaintiff." Id. at 145 (quoting Nanni v. Aberdeen Marketplace, Inc., 878 F.3d 447, 452 (4th Cir. 2017)).

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Id.

In the ordinary course, a court may only rely on the allegations contained within a complaint when reviewing a Rule 12(b)(6) motion. Courts may nevertheless consider extrinsic documents without converting a motion to dismiss into a motion for summary judgment where the documents are integral to a complaint and there is no dispute as to their authenticity. See Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166–69 (4th Cir. 2016). Like facts alleged in a complaint, facts derived from extrinsic documents must be construed in the light most favorable to the plaintiff. See Zak v. Chelsea Therapeutics Int'l, Ltd., 780 F.3d 597, 607–08 (4th Cir. 2015).[1]

## Discussion

ERISA provides participants in an ERISA-governed retirement plan with a cause of action to recover losses caused by the misdeeds of ERISA fiduciaries. Two sections of the statute are most relevant to this case: the section outlining fiduciary duties, 29 U.S.C. § 1104, and the section prohibiting certain transactions, id. § 1106. Under § 1104(a), fiduciaries are held to the prudent man standard of care, which has its roots in trust law. See Tibble v. Edison Int'l, 135 S. Ct. 1823, 1828 (2015). Subject to numerous exceptions, § 1106 prevents parties in interest and fiduciaries

---

[1] The court denies Defendants' motion to supplement the record. Simply stated, Defendants have not demonstrated that these documents—at most obliquely referenced—were integral to Moore's complaint. See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004); Phillips v. LCI Int'l, Inc., 190 F.3d 609, 618 (4th Cir. 1999) (considering document on motion to dismiss "because it was integral to and explicitly relied on in the complaint and because the plaintiffs [did] not challenge its authenticity"). In any case, the court believes that consideration of these documents would not have altered its conclusions on the present motion to dismiss.

from engaging in certain transactions or "deal[ing] with the assets of a plan in their own interest or for their own account." 29 U.S.C. §§ 1106(a)–(b).

I. **Allegations Regarding the 2007 Valuation**

Defendants maintain that Moore fails to plead the facts surrounding the March 2007 valuation with the requisite specificity, and thus, that the court should "dismiss the fraudulent valuation claim with prejudice." Mem. 17–19; Supp. Mem. at 27–29. The court disagrees.

To satisfy Rule 9(b), a plaintiff must plead "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (internal quotation marks omitted). Nevertheless, courts "should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." Id.; accord United States ex rel. Bunk v. Gov't Logistics N.V., 842 F.3d 261, 275 (4th Cir. 2016).

The court is convinced that Moore's allegations as to the 2007 valuation suffice. Viewing Moore's allegations as true, the court finds it reasonable to infer that the Compliance Agreement addressed long-standing problems resulting from the investigation by the Corporation Commission and the Federal Reserve. Indeed, the agreement itself references an examination begun by the regulators on May 3, 2010. ECF No. 30-8 at 6. The agreement also required that VCB and the Holding Company comply with agency policy statements issued in 2001 and 2006, and mentioned reducing the level of "problem assets." Id. at 3, 4, & 8. These provisions make it reasonable to infer that VCB and the Holding Company had not been in compliance with those years-old policy statements. Stated otherwise, it is reasonable to infer that the Defendants would not have agreed

7

with government regulators to remedy problems that they did not have. See Fed. Hous. Fin. Agency v. JPMorgan Chase & Co., 902 F. Supp. 2d 476, 486–88 (S.D.N.Y. 2012) (denying motion to dismiss fraud claim where, in part, plaintiffs alleged "the results of private and government investigations, which ha[d] concluded that, during the relevant period, several of the mortgage originators . . . disregarded their own underwriting guidelines on a widespread and systematic basis"). Moore alleges that specific individuals failed to disclose these alleged problems to Howe Barnes in the course of the 2007 valuation. Howe Barnes, moreover, "relied on" the data provided by the Defendants to perform the 2007 valuation. Compl. ¶¶ 64–68, Ex. 1. In sum, the specific facts submitted by Moore allow the court to determine the who, what, when, where, and how of the alleged fraud. See Harrison, 176 F.3d 791.

Defendants have not shown that Moore's allegations as to the 2007 valuation are otherwise deficient. She has alleged scienter generally, as permitted under Rule 9(b). Accordingly, the court believes that Moore has sufficiently alleged that the Defendants obtained the 2007 valuation by fraudulently omitting the matters addressed in the Compliance Agreement from the information provided to Howe Barnes. See, e.g., Gov't Logistics N.V., 842 F.3d at 276 (reversing grant of motion to dismiss where pleadings "sufficiently outline[d] the dealings" at issue, and thus "satisf[ied] the mandate of Rule 9(b)"); McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 559 (4th Cir. 2013) (ruling that Rule 9(b) was satisfied where the court could determine that "(1) the time of the alleged fraud was late summer or fall, 2006 . . . ; (2) the appraisal was undertaken at McCauley's home, to which Ocean Bank sent an appraiser; (3) the false representation consisted of the representation from Ocean Bank that McCauley's home was worth $51,000 or more; (4) the identity of the person making the misrepresentation was Ocean Bank; and (5) as a result of the misrepresentation, McCauley agreed to the $51,000 loan").

Further, this case is distinguishable from Defendants' strongest authority, <u>Vigeant v. Meek</u>, 953 F.3d 1022 (8th Cir. 2020). In that case, the plaintiff failed to explain how an allegedly fraudulent scheme could have affected the value of the stock in which her plan had invested. Thus, the issue on appeal was whether because a company's fortunes fell sharply in 2017, the court should have inferred that there were unexamined problems with the company in 2015 and 2016, and the United States Court of Appeals for the Eighth Circuit affirmed the dismissal of her claim. <u>Id.</u> at 1026–28. In contrast, Moore points to the Holding Company share values both <u>before and after</u> the valuation as indicating that Howe Barnes did not have the facts to make an accurate assessment. There is also no indication that the record in <u>Meek</u> included anything like the 2011 Compliance Agreement in this case.

## II. **The Need to Disclose the Loans**

In their supplemental memorandum, Defendants argue that the 2007 and 2008 loans were legal. Thus, the Defendants assert that under ERISA's disclosure requirements, there was no affirmative duty to inform plan participants about them. ECF No. 40 at 3–6.

The problem with this argument is that "the duty to inform entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." <u>Griggs v. E.I. DuPont de Nemours & Co.</u>, 237 F.3d 371, 380 (4th Cir. 2001) (internal quotation marks omitted). "[A]n ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to [the beneficiary's] detriment cannot remain silent—especially when that misunderstanding was fostered by the fiduciary's own material representations or omissions." <u>Id.</u> at 381. Moore sufficiently explains how it is plausible that the 2007 valuation was fraudulent, as the court has concluded above, that the loans incorporated aspects of that valuation, and that the loans violated ERISA and/or did not

9

comport with Defendants' fiduciary duties. See, e.g., 29 C.F.R. § 2550.408b-3(c)(2) ("At the time that a loan is made . . . the price of securities to be acquired with the loan proceeds should not be such that plan assets might be drained off."); 29 U.S.C. § 1108(e)(1) (permitting a transaction between a plan and a party in interest "if [it] is for adequate consideration"); see also Pizzella v. Vinoskey, 409 F. Supp. 3d 473, 511–13 (W.D. Va. 2019) (describing contours of the affirmative defense that a transaction involved "adequate consideration").

Moore has also sufficiently alleged that the loans were purposefully not disclosed to her, and that Defendants knew or should have known that those loans might result in harm to her and other Plan participants. See, e.g., Compl. ¶ 67, 108, 129. As a result, the court believes that Moore has stated enough facts such that it is plausible that Defendants had a duty to inform her about the 2007 and 2008 loans. See Griggs, 237 F.3d at 380–81; Spires v. Schools, 271 F. Supp. 3d 795, 801 (D.S.C. 2017) ("Plaintiffs allege the Plan Committee members failed to take action in response to improper insider transactions and other specific acts of management malfeasance, of which the Plan Committee had actual knowledge" and that "those transactions were undisclosed or concealed from Plan participants.") (internal citations omitted); Hensley v. P.H. Glatfelter Co., No. 1:04-CV-200, 2005 WL 3158033, at *4 (W.D.N.C. Nov. 28, 2005) (defendants could not "withhold[] information" showing "that a specific substantial risk loomed in the background").

### III. Timeliness of Moore's Claim

Defendants have also moved to dismiss Moore's claims as untimely, which is an affirmative defense. See Fed. R. Civ. P. 8(c)(1). Having reviewed the record and applicable law, the court concludes that Moore's claims cannot be dismissed as untimely at this stage of the proceedings.

"Plaintiffs are not ordinarily required to plead allegations relevant to potential affirmative

10

defenses . . . ." Four-C-Aire, Inc., 929 F.3d at 152 (reversing grant of motion to dismiss ERISA claim). "[W]here facts sufficient to rule on an affirmative defense"—including "the defense that the plaintiff's claim is time-barred"—"are alleged in the complaint, [a] defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). "This principle only applies, however, if all facts necessary to the affirmative defense 'clearly appear[] *on the face of the complaint.*'" Praxair, Inc., 494 F.3d at 464 (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993) (emphasis in original)) (reversing grant of motion to dismiss on statute of limitations grounds). To do so, movants must show that the record "foreclose[s]" a plaintiff's reliance on any "potential rejoinder" to the affirmative defense raised, including an argument that the statute had not yet run. Id. at 466.

As is relevant to this case, § 1113 of ERISA sets forth three alternative periods within which a plaintiff must file a claim, and each period has different triggering events.[2] Here, the court focuses on the third. "The third period, which applies 'in the case of fraud or concealment,' begins when the plaintiff discovers the alleged breach." Sulyma, 140 S. Ct. at 774 (quoting 29 U.S.C. § 1113). Under what the court will refer to as the "fraud or concealment exception," suit must be filed within six years of "the date of discovery" of a claim. Id. at 774, 776.

Fundamentally, the parties disagree on what triggers the fraud or concealment exception: Moore argues that the fraud or concealment exception applies in cases of fraud or concealment; Defendants contend that it requires a showing of "fraudulent concealment." Authority is divided

---

[2] The first period begins when the alleged breach occurs. Intel Corp. Inv. Policy Comm. v. Sulyma, 140 S. Ct. 768, 774 (2020). Under § 1113(1), suit must be filed within six years of "the date of the last action which constituted a part of the breach or violation" or, in cases of breach by omission, "the latest date on which the fiduciary could have cured the breach or violation." Id. The second statutory period "accelerates the filing deadline," and begins when the plaintiff gains "actual knowledge" of the breach. Id. Under § 1113(2), suit must be filed within three years of "the earliest date on which the plaintiff had actual knowledge of the breach or violation." Id.

11

on this question,[3] and the United States Court of Appeals for the Fourth Circuit has not decided which side of this split to join. However, in Browning v. Tiger's Eye Benefits Consulting, the Fourth Circuit concluded that ERISA's fraud or concealment provision "encompasses *at a minimum* the 'fraudulent concealment doctrine.'" 313 F. App'x 656, 663 & n.4 (4th Cir. 2009) (emphasis in original). The court need not resolve this question to decide the present motion to dismiss. To the extent that Moore needed to plead anything to negate the affirmative defense that her claim is untimely,[4] her pleadings suffice under either theory.

The parties agree that fraudulent concealment is the more stringent of these options, and so the court will apply that test. "[T]o toll a limitations period based on fraudulent concealment, 'a plaintiff must demonstrate: (1) the party pleading the statute of limitations fraudulently concealed facts that are the basis of the plaintiff's claim, and (2) the plaintiff failed to discover those facts within the statutory period, despite (3) the exercise of due diligence.'" Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 548 (4th Cir. 2019) (quoting Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 122 (4th Cir. 1995)).

To begin, the court believes that Moore satisfies the first element of the fraudulent concealment test. To do so "a plaintiff must provide evidence of affirmative acts of concealment" such as "some trick or contrivance intended to exclude suspicion and prevent inquiry" committed "by the defendants." Edmonson, 922 F.3d at 553 (internal quotation marks omitted). In this case, Moore alleges intimidation and retaliation against employees who investigated the ESOP. Moore

---

[3] Compare, e.g., Fulghum v. Embarq Corp., 785 F.3d 395, 415 (10th Cir. 2015) (en banc) with, e.g., Larson v. Northrop Corp., 21 F.3d 1164, 1172 (D.C. Cir. 1994).

[4] Due to the lengthy passage of time here and Moore's affirmative allegations regarding her discovery of the breaches, the court treats this matter "as the unusual case where a claim is filed *clearly* beyond the applicable limitations period and the plaintiff seeks to forestall its dismissal by alleging the facts of discovery." Praxair, Inc., 494 F.3d at 466 (emphasis in original); Edmonson, 922 F.3d at 552–58 (assessing whether complaint alleged fraudulent concealment tolling on review of a motion to dismiss).

states that VCB fired a loan officer in 2010 soon after he asked to see the Plan's governing documents. In gathering his things to leave, he told his co-workers, "this is what happens when you ask about the ESOP." See Compl. ¶ 95. Similarly, Moore contends that Defendants "initiated questionable performance charges against her" in 2017 after she began asking questions. Id. Moore also asserts that Stone "obfuscated her inquiry" by claiming that he had lost money like other Plan participants, not that he had cashed out his shares at a high price. Id. ¶ 96.

Other courts have concluded that similar acts trigger the fraud or concealment exception. See Chaaban v. Criscito, 468 F. App'x 156, 160 (3d Cir. 2012) (defendant "instructed" employees of the plan administrator "that they were not permitted to speak to anyone other than himself about the Plans"); In re Unisys Corp. Retiree Med. Benefit "ERISA" Litig., 242 F.3d 497, 505 (3d Cir. 2001), as amended (Mar. 20, 2001) (concluding that "dissuad[ing]" an employee "from consulting counsel" about her rights could be affirmative concealment); McGuire v. Metro. Life Ins. Co., 899 F. Supp. 2d 645, 661 (E.D. Mich. 2012) ("Defendant [] provided shifting and misleading information that further hindered the Plan's discovery of its dividend policy change—nearly rendering the Plan's investigations futile."). So too here, the court concludes that Moore has sufficiently alleged affirmative acts by the Defendants carried out to avoid inquiry into the ESOP.[5]

Next, Moore satisfies the second element of the test because the court cannot conclude that Moore discovered the alleged breaches more than six years before filing her complaint. "[T]he date of discovery," is established by "'not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known.'" Sulyma, 140 S. Ct. at 774, 776 (quoting Merck & Co. v. Reynolds, 559 U.S. 633, 648 (2010)). First, the court cannot conclude

---

[5] Because the court deems these allegations sufficient as to this element, the court need not determine whether other alleged acts, such as the filing of Form 5500s, might have also been affirmative concealment.

13

that Moore actually discovered Defendants' alleged breaches before August 2013. As pled, Moore did not know about the alleged breaches in this case until 2017. Compl. ¶¶ 71, 97, & 100. The court must treat these allegations as true.

Nor can the court conclude at this stage that Moore was on constructive notice of her claims six years before filing her complaint. Defendants insist that, if only Moore had been reasonably diligent, she would have known that when the Holding Company entered "Code 2P on line 8a" of its Form 5500s she needed to consult the relevant IRS instructions for those forms. According to the Defendants, had she done so, she would have understood that the Plan had "acquire[d] employee securities with borrowed money or other debt-financing techniques,"—even though Line 1.b of each Form 5500 did not disclose any "Total plan liabilities." Under this argument, Defendants contend that the court can presently conclude that Moore was on constructive notice of her claims as a matter of law. ECF No. 40 (citing ECF No. 30-4); ECF No. 30-2. The court disagrees.

Adopting that argument at this stage would place too much credence on the Defendant's documents and would require drawing factual inferences regarding Defendants' accounting practices and the nature of the loans against Moore.[6] See Supp'l Mem. at 12–14; Supp'l Opp. at 31–33. The court cannot do so. See Zak, 780 F.3d at 607–08 (district court should not have held that defendant's securities filings proved the absence of certain transactions); see also Goines, 822 F.3d at 166–68 (regarding a "document [] prepared by or for the defendant," courts must consider that the document "may reflect the defendant's version of contested events or contain self-serving, exculpatory statements"). At least at this stage, the court is convinced that it cannot hold as a

---

[6] Stated otherwise, while the court need not presently hold that the Form 5500s reflect evidence of fraudulent concealment, supra n.5, it cannot conclude that the filings foreclose application of the fraudulent concealment exception.

matter of law that Defendants' Form 5500 filings put Moore on notice of her claims. See Edmonson, 922 F.3d at 554–57 (reversing order that public filings should have alerted the plaintiff to her claim and contrasting authority which "involved plaintiffs that were sophisticated business entities, as opposed to consumers").

Finally, in the court's view, Moore's pleadings suffice under the third element of the test because assessing whether Moore was sufficiently diligent is a fact-bound determination that the court cannot render at this stage.[7] See Edmonson, 922 F.3d at 554 (reversing grant of motion to dismiss and stating that "[g]enerally, whether a plaintiff exercised due diligence" under the fraudulent concealment tolling doctrine "is a jury issue not amenable to resolution on the pleadings . . . ."); Nat'l Elec. Ben. Fund v. Arlington Park Racecourse, LLC, No. 8:11-CV-0090, 2011 WL 2712742, at *4 (D. Md. July 8, 2011) (concluding that whether the plaintiff "ought to have made a prompter inquiry" was "a fact-intensive inquiry that the court cannot resolve at this stage"). Moore alleges at least some diligence in seeking information from the Defendants, Duke, and the Department of Labor. The court cannot presently conclude that Moore did not do enough.

Simply stated, the facts on the record do not "foreclose" Moore's reliance on the fraud or concealment exception as a "rejoinder" to Defendants' argument that her claims are untimely. See Praxair, Inc., 494 F.3d at 466. Accordingly, the court will deny the motion to dismiss Moore's claims under Section 1113. See id. (record on a motion to dismiss did not establish date of plaintiff's "discovery" of his breach of contract claim); see also Healey v. Abadie, 143 F. Supp. 3d 397, 401–04 (E.D. Va. 2015) (denying motion to dismiss because it was not clear from the face

---

[7] The bulk of Defendants' cited authority is distinguishable on the procedural posture in which those cases were decided: summary judgment, where parties have the burden to marshal specific, admissible evidence after discovery. See Edmonson, 922 F.3d at 557 (concluding that summary judgment authority was "inapposite" in determining whether plaintiff was on inquiry notice of claim on a motion to dismiss); Fed. R. Civ. P. 56(c), (e).

of the complaint "that Abadie did not conceal her actions under ERISA, which is the relevant inquiry on a Rule 12(b)(6) Motion implicating an affirmative defense").[8]

### IV. Allegations Regarding VCB and Spicer

Next, Defendants move for partial dismissal on the basis that Moore fails to adequately plead that either VCB or Spicer are ERISA fiduciaries. Here too, the court disagrees.

In relevant part, ERISA provides that a person is a fiduciary with regards to a plan "to the extent (i) he exercises any discretionary authority or discretionary control respecting management" of that plan "or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect," regarding assets of the plan, "or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration" of the plan. 29 U.S.C. § 1002(21)(A). The definition also "includes any person designated under section 1105(c)(1)(B)" of ERISA, which allows "named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities (other than trustee responsibilities) under the plan."

The Fourth Circuit has described this statutory definition as "functional." See Moon v. BWX Techs., Inc., 577 F. App'x 224, 229–30 (4th Cir. 2014). Courts "must examine the conduct at issue when determining whether an individual is an ERISA fiduciary." Id. (internal quotation marks omitted)). Yet ERISA does not "characterize a fiduciary as one who exercises *entirely* discretionary authority or control. Rather, one is a fiduciary to the extent he exercises *any* discretionary authority or control." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989) (emphasis in original). In sum, "an individual or entity can still be found liable as a de

---

[8] Having concluded Defendants have not carried their burden to show that Moore is precluded from relying on the fraud or concealment exception, which offered Moore the most time in which to file her complaint, the court need not consider whether her claims are timely under Sections 1113(1) and 1113(2).

facto fiduciary if it lacks formal power to control or manage a plan yet exercises informally the requisite discretionary control over the plan management and administration." Moon, 577 F. App'x at 229–30 (internal quotation marks omitted); Searls v. Sandia Corp., 50 F. Supp. 3d 737, 747 (E.D. Va. 2014). Courts also have an "obligation to liberally construe fiduciary status under ERISA." Dawson-Murdock v. Nat'l Counseling Grp., Inc., 931 F.3d 269, 278 (4th Cir. 2019).

Here, Moore alleges several non-conclusory facts about Spicer's and VCB's roles with respect to the Plan. For example, Moore alleges that VCB was "controlled by the same people who controlled the ESOP," and that Spicer helped "set up" the loans at issue. Compl. ¶¶ 7–11. Moore also describes Spicer's senior job titles, including as a director, within VCB and the Holding Company. Id. ¶¶ 25, 88; ECF No. 30-11 (during Spicer's tenure as a director, there were only two to four individuals who served in that capacity). Meanwhile, the ESOP "was administered by the Board of Directors of the Holding Company and the Board of Directors of VCB." Compl. ¶ 41. In addition, "VCB had discretion to make stock bonus contributions to supplement the money purchase contribution." Id. ¶¶ 44–45. Further, VCB's president and CEO wrote Moore a letter on VCB letterhead explaining why there was "nothing inappropriate" about the 2007 loan, referred to the ESOP as "our" plan, and noted that "the company could redeem the shares" as one way to pay its participants. Id. ¶¶ 71–72 & ECF No. 30-10.

Drawing all reasonable inferences in Moore's favor, the court believes that these allegations make it plausible that Spicer and VCB exercised some "discretionary authority or control" over the Plan, whether formally or informally. Bruch, 489 U.S. at 113; Moon, 577 F. App'x at 229–30. As a result, the court finds it plausible that they were fiduciaries of the ESOP with respect to the breaches alleged by Moore. See, e.g., Dawson-Murdock, 931 F.3d at 280 ("[T]he Supreme Court and our Court have both recognized that conveying information about plan benefits to a beneficiary in order to assist plan-related decisions can constitute fiduciary activity."); see also 29

17

C.F.R. § 2509.75-8 D–4 ("[M]embers of the board of directors [who] exercise discretionary authority or discretionary control respecting management of such plan [] are . . . fiduciaries with respect to the plan.") (internal quotation marks omitted). Accordingly, the court will not dismiss VCB and Spicer from this case at this stage.

## Conclusion

For the reasons stated, the court will deny the motion to dismiss and the motion to supplement the record. The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 26th day of June, 2020.

_____
Senior United States District Judge