IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | | |
|---|---|---|
| JANICE A. MOORE, *on behalf of* | ) | |
| *herself and a class of all similarly* | ) | Civil Action No. 3:19-cv-00045 |
| *situated participants in the Virginia* | ) | |
| *Community Bankshares, Inc. Employee* | ) | MEMORANDUM OPINION & ORDER |
| *Stock Ownership Plan*, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | By:   Joel C. Hoppe |
| | ) |        United States Magistrate Judge |
| VIRGINIA COMMUNITY | ) | |
| BANKSHARES, INC., et al., | ) | |
| Defendants. | ) | |

This matter is before the Court on Plaintiff Janice Moore's Motion to Amend her

Complaint. ECF No. 61. The motion has been fully briefed, *see* ECF Nos. 62, 65, 69, 72, and is

ripe for disposition. For the following reasons, the Court hereby grants Plaintiff's Motion to

Amend.

## I. Background

This putative class action suit arises from Defendants' alleged improprieties

administering an Employee Stock Ownership Plan ("ESOP"). Defendant Virginia Community

Bankshares, Inc. ("the Holding Company") sponsored the ESOP, which was offered to

employees of Defendant Virginia Community Bank, Inc. ("VCB"), including Plaintiff Moore

and other members of the proposed Plaintiff class.[1] The ESOP was governed by the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Plaintiff Moore filed her

---

[1] An ESOP is a retirement savings plan where an employer makes contributions to the plan on behalf of its participating employees and those contributions are then used to purchase stock. At retirement or disassociation, the participating employee may elect either a distribution of the shares allocated to his or her account or an equivalent cash distribution. Under the governing ERISA regulations, ESOPs must invest primarily in the stock of the company sponsoring the plan. Here, the Holding Company sponsored the plan offered to VCB employees, and thus was required to invest primarily in the Holding Company's stock. *See* Am. Compl. ¶¶ 50, 54–56, 60, ECF No. 68-1.

original complaint (the "Original Complaint"), ECF No. 1, on August 12, 2019, naming the following Defendants: A. Pierce Stone, John A. Hodge, and H.B. Sedwick III (together, "the Trustee Defendants") and Ronald Spicer, the Holding Company, and VCB. Compl. 1–2. Stone, Hodge, Sedwick, Spicer, the Holding Company, and VCB are the six "Original Defendants" to this putative class action.

Plaintiff Moore's Original Complaint asserted one count for breach of fiduciary duty under ERISA and one count for engaging in prohibited transactions under ERISA. *Id.* ¶¶ 144–64. She alleged that the Original Defendants engaged in a series of "prohibited transactions" under ERISA from 2006 until 2008. First, the Original Defendants intentionally withheld information from Howe Barnes Hoefer & Arnett, Inc., an investment bank that the Original Defendants retained to perform a valuation of the Holding Company in 2006, to obtain a fraudulently inflated valuation. *Id*. ¶¶ 57–68. The Original Defendants allegedly then caused the ESOP to repurchase Holding Company stock at the inflated valuation using ESOP contribution funds to finance cash distributions to Defendants Stone and Spicer through non-exempt loans issued in 2007 and 2008. *Id.* ¶¶ 8–10, 85–113, 136. The Original Defendants personally benefited from the loans at the expense of ESOP participants, including Plaintiff Moore and the other putative Plaintiff class members, by creating annual debt payments for ESOP participants that continued until the ESOP's termination in 2016. *Id.* ¶ 3. The Original Defendants allegedly later covered up the inflated valuation and the 2007 and 2008 loans, disclosing "inaccurate information" on filings with the Department of Labor and Internal Revenue Service. *Id.* ¶¶ 11, 67–68, 94, 114–25. Lastly, the Original Defendants allegedly intimidated or disciplined employees for raising concerns about the ESOP. *Id.* ¶¶ 94–95.

2

In September 2019, the Original Defendants moved to dismiss the Original Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, primarily arguing that Plaintiff Moore's claims were time-barred. ECF Nos. 15, 18. In June 2020, the Honorable Glen E. Conrad, presiding, denied the motion to dismiss and allowed Plaintiff Moore's claims to proceed. *Moore v. Va. Comm. Bankshares, Inc.*, No. 3:19cv45, 2020 WL 3490224 (W.D. Va. June 26, 2020), ECF Nos. 44, 45. The case is currently in "Phase I" of the parties' agreed-upon bifurcated discovery schedule, ECF Nos. 51, 52, 53, and has not been set for trial before the Honorable Norman K. Moon, presiding, *see* ECF No. 54, 55.

Plaintiff Moore moved for leave to amend her complaint in August 2021. ECF No. 61. Her proposed two-count amended complaint ("Amended Complaint"), ECF Nos. 65 (sealed), 68-1 (redacted), largely reiterates the allegations from her Original Complaint. She no longer asserts, however, that Defendant Stone personally benefited from the inflated 2007 valuation. The Amended Complaint seeks to substitute Blue Ridge Bankshares, Inc., and Blue Ridge Bank, N.A., as successor entities through merger to Defendants the Holding Company and VCB, respectively. Alleged events and transactions related to the Blue Ridge-VCB merger, which was finalized in December 2019, feature prominently in the Amended Complaint's proposed changes. The Amended Complaint also seeks to add Thomas Crowder, Andrew Holzwarth, A. Preston Moore, Mark Sisk (the "Director Defendants"), and Amy Schick as defendants.[2] The

---

[2] In discussing the allegations in the Amended Complaint, the Court will refer to each proposed defendant as "Defendant." This is to distinguish Plaintiff Janice Moore from proposed Defendant A. Preston Moore. No proposed Defendant is officially a party to this action until the Court accepts the Amended Complaint for filing, *see Angles v. Dollar Tree Stores, Inc.*, 494 Fed. App'x 326, 329 (4th Cir.2012) (citing *Bridges v. Dep't of Md. State Police*, 441 F.3d 197, 207 (4th Cir.2006); *Murray v. Archambo*, 132 F.3d 609, 612 (10th Cir.1998); Fed. R. Civ. P. 15(a)(2), and Plaintiff serves the putative Defendant with a summons and copy of the operative pleading in accordance with the Federal Rules of Civil Procedure, *see Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350–51 (1999) (citing Fed. R. Civ. P. 4(a), 12(a)).

3

Trustee Defendants (Stone, Hodge, Sedwick) and Defendant Spicer are still named as defendants to Counts I and II.

Defendant Crowder served as Executive Vice President, Chief Financial Officer, and Chief Operating Officer of VCB from July 2014 until the merger in December 2019, and as a director of both VCB and the Holding Company from 2018 until the Blue Ridge merger. Am. Compl. ¶ 34. Defendant Holzwarth served as a director of both the Holding Company and VCB from 2016 until the merger. *Id.* ¶ 35. Defendant Moore served as Director, President, Chief Executive Officer, and Treasurer of the Holding Company from 2010 or 2011 until the merger, and as Director, President, and Chief Executive Officer of VCB during the same period. *Id.* ¶ 36. Defendant Sisk began serving as a director for the Holding Company in 2015 and severed as Chair of the Holding Company's Board from 2015 until the merger. *Id.* ¶ 38. Defendant Schick began her employment with VCB in 1988, and "was at all relevant times VCB's Senior Vice President of Human Resources and intimately involved with the ESOP." *Id.* ¶ 37 (cleaned up). Defendant Schick "also served as Corporate Secretary of both VCB and the Holding Company from 2008 until the [m]erger" was finalized in December 2019. *Id.*

Plaintiff Moore also adds to her Amended Complaint new allegations against all original and proposed Defendants relating to the 2016 termination of the ESOP and subsequent merger with Blue Ridge. Specifically, she alleges that "the Holding Company Board met and approved a termination of the ESOP effective December 31, 2016." *Id..* ¶ 143. Sometime before that meeting, Defendant Moore had hired consulting firm ESOP Services, Inc. to advise the Holding Company and VCB on its ESOP termination procedures. *Id.* ¶ 145. Upon ESOP Services, Inc.'s recommendation, Michael N. Mulkey was engaged as an independent trustee for purposes of the ESOP termination. *Id.* ¶ 146.

4

In July 2017, the Holding Company and Atlantic Bay Mortgage Group announced they would merge pending regulatory approval. *Id.* ¶ 147. The Holding Company applied to the IRS for a final determination letter on the tax-qualified status of the ESOP, and delayed distributions to ESOP participants until it received a favorable letter from the IRS on December 4, 2017. *Id.* ¶ 148. Upon receiving that letter, "and in light of the pending merger" with Atlantic Bay Mortgage Group, "Mr. Mulkey determined that distributions should be based on a valuation of the ESOP Stock as of December 31, 2017, and possibly updated with a 'bring down' letter and fairness opinion depending on the proximity of the [anticipated Atlantic Bay Mortgage Group] merger closing date to the distribution date." *Id.* ¶ 149. Mr. Mulkey engaged Mercer Capital to conduct the 2017 valuation. *Id.* In July 2018, Mercer Capital issued a valuation report concluding that "the ESOP Stock value as of December 31, 2017, was $34.65 per share." *Id.* ¶ 150.

On July 20, 2018, Defendant Moore provided Mr. Mulkey with the ESOP bank statements and checkbook register. *Id.* ¶ 151. Only then did Mr. Mulkey "learn[] that over $100,000 had been deducted from the ESOP to pay plan termination expenses. As of December 16, 2017, the ESOP trust account had $155,562.05 in cash. But by July 20, 2018, the account balance was down to less than $5,000." *Id.* Mr. Mulkey allegedly "voiced objection to the allocation of Plan expenses to the ESOP participants, but to no avail." *Id.* Defendant Moore and Mr. Mulkey, along with their respective legal counsel, subsequently discussed whether an updated valuation of the ESOP Stock price was required as of the distribution date. *Id.* ¶ 152. On July 25, 2018, Mr. Mulkey's attorney wrote in an e-mail to Defendant Moore,

> Our understanding is that the ESOP distribution process will involve distributing all of the shares in the Trust to the participants at a certain date, e.g., September 30, and then having the participants make an election at that time as to whether they want their shares cashed out immediately or, on the other hand, if they want to keep the shares subject to the 60-day put right on the one year anniversary of the distribution. If our understanding above is correct, the distribution to

5

> participants followed by an immediate redemption (for those who elect cash) are
> not party in interest transactions as the Bank will be redeeming directly from the
> participants, not the Trust, and as such, will not require an updated valuation to
> the date of distribution. If our understanding on the structure of the ESOP
> termination is not correct, Mike will not require an updated valuation. Please
> confirm our understanding of how the ESOP termination is to be handled.

*Id.* (cleaned up). The anticipated merger between VCB and Atlantic Bay Mortgage Group was

still awaiting regulatory approval at that time.

On August 13, however, the Holding Company withdrew from its proposed merger

agreement with Atlantic Bay Mortgage Group because of difficulties obtaining regulatory

approval. *Id.* ¶ 153. On August 21, Defendant Moore provided ESOP distribution election forms

to ESOP Plan Participants, including Plaintiff Moore and other members of the proposed

Plaintiff class, offering them the option to cash-out their ESOP Stock at $34.65 per share or to

elect in-kind distributions of the Holding Company's stock. *See id.* ¶¶ 155–58. Defendant Moore

also included a cover letter on VCB letterhead stating:

> At this time, the Bank intends to maintain its previous strategy of staying
> independent and servicing small business and retail customers. We did not seek
> this opportunity . . . and at this time are not considering any other . . . transactions.
> However, we are an attractive target because of our performance and unsolicited
> offers cannot be prevented in our industry where consolidation continues.

*Id.* ¶ 154 (cleaned up). Plaintiff Moore alleges that Defendant Moore's statement that "'[w]e did

not seek this opportunity'" was a reference to the Holding Company and VCB's "failed Atlantic

Bay Mortgage merger" and his statement that the Holding Company and VCB were "'not

considering any other transactions'" meant they were not actively considering any offers to

merge with another bank, even if they could not rule out "'unsolicited offers'" to consolidate. *Id.*

She also alleges those statements were "fraudulent" because Defendant Moore and the other

Defendants knew VCB and the Holding Company would soon "conduct[] a solicited bid auction

process" seeking offers to merge with another bank. *See id.* ¶¶ 156, 158. Defendants further

knew that those solicited offers "would undoubtedly come in at a higher valuation that the paltry $34.65 per share foisted upon ESOP Plan participants who elected cash [pay-outs] instead of Stock." *Id.* ¶ 156. In other words, Defendant Moore's statements were intended to, and did, lead ESOP Plan participants to believe that $34.65 per share was a fair valuation of ESOP Stock price and that there were no mergers planned that would "undoubtedly" increase the soon-to-be "undervalued" stock price. *See id.* ¶¶ 155–58.

Shortly after Defendant Moore sent his "letter to ESOP Plan participants on August 21, 2018, the Holding Company, VCB, and the individual Defendants conducted a solicited bid auction process" that brought in "13 or 14 offers from different merger contenders." *Id.* ¶ 158. On May 13, 2019, the Holding Company announced that it would merge with Blue Ridge Bankshares, Inc., which was the "winning bidder" in the solicited auction process. *Id.* This merger was finalized on December 15, 2019. *Id.* Plaintiff Moore alleges that the auction process "was considered and planned many months before," *id.*, meaning "Defendant Moore and the other Defendants knew that the Holding Company and VCB would soon be on the auction block for sale to the highest bidder," *id.* ¶ 160, when he reassured ESOP Plan participants that "the Bank intend[ed] to maintain its previous strategy of staying independent," *id.* ¶ 155, and would not solicit other opportunities to merge. *See generally id.* ¶¶ 155–60.

Distributions of ESOP funds to VCB employees who elected to cash out ESOP Stock at $34.65 per share started on August 22, 2018, and "[a]s election forms came in, Defendant Schick transferred sufficient funds from the Holding Company to the ESOP trust account to cash out the Plan participants." *Id*. ¶ 161. Plaintiff Moore alleges that there "were 15 separate transfers," each of which was a "prohibited transaction" under ERISA because "such transaction was between a party in interest and the ESOP and was not based on a contemporaneous valuation of the Stock."

*Id.* Each of those 15 transfers facilitated multiple "participant Stock redemption transaction[s]," which were also "prohibited transactions" under ERISA because they were undervalued at $34.65 per share and "not based on a contemporaneous valuation of the Stock." *Id.* "These transactions represented at least 50 prohibited transactions in all." *Id.*

Moreover, rather than obtain a loan to finance the ESOP termination redemption obligations, which Defendant Moore had explored in March 2018, *id.* ¶ 163, another approach came under consideration in August 2018 to make a secret "private offering of the ESOP stock to certain, officers, directors, and former directors of the Holding Company and VCB," *id.* ¶ 164. The minutes of the VCB Board meeting on August 16, 2018, just a few days before Defendant Moore sent his letter to ESOP Plan participants, "state that 'insider transactions' were approved to provide a line of credit from VCB to certain officers and directors 'to be used for business and personal use.'" *Id.* ¶ 165. Plaintiff Moore alleges that, "[u]pon information and belief, the purpose of these lines of credit was to provide a source of cash for these individuals to purchase ESOP shares in a private offering at a fraudulently low purchase price per share given these individuals' insider knowledge of a forthcoming solicited bid merger process that was sure to generate a higher Stock valuation." *Id.* On September 5, 2018, Defendant Moore sent an email with the subject line, "Board Approval Considerations for Private Offering," to the rest of the Holding Company Board that read as follows:

> I'm moving forward with the subscription agreement for the replacement stock that ESOP participants are redeeming. We are up to close to $1.5 million so far and I suspect the amount will be up to $2 million by the end of the month. I'm not sure of the interest of the various Board members with this subscription and whether we will be over or under subscribed. Please let me know if you would like to participate in this offering and if so what amount you would like to purchase so I can see if where [sic] we are regarding allocating the redeemed shares. At least two directors need to abstain to do option 2 that was sent in a previous email regarding approving the offering and the value.

*Id.* ¶ 166. The private offering was approved by the Holding Company's Board on September 18.

*Id.* ¶ 167. On September 24, "Defendant Moore transmitted a subscription agreement by e-mail to Defendants Crowder, Holzwarth, Sedwick, and Sisk." *Id.* ¶ 168. On October 8, Defendant Schick emailed the Holding Company's stock transfer agent, Eddie Tobbler, instructing him "to transfer shares from the ESOP to the accounts of four individuals who had purchased shares in the private offering as of that date." *Id.* ¶ 169 (emphasis omitted) ("The instructions indicate Defendant Sisk had purchased 21,645 shares, Defendant Holzwarth had purchased 21,645 shares, Defendant Crowder had purchased 1,000 shares, and Defendant Moore had purchased 5,722 shares, 'leaving a total of 98,616 shares in the VCB-ESOP account.'"). Plaintiff Moore alleges that "Defendants Sisk, Holzwarth, Crowder, and Moore purchased these shares of Stock at a price of $34.65 per share, knowing that their value would soon increase substantially when the unannounced merger process was completed and consummated." *Id.*

On October 17, Defendant Moore notified Mr. Mulkey that his services were no longer needed because 100% of the ESOP assets had been distributed. *Id.* ¶ 170. Plaintiff Moore alleges, "[u]pon information and belief," that Mr. Mulkey and his attorney "were not aware that the distribution procedures they had agreed to had not been followed, or of the private offering of the ESOP stock." *Id.* ¶ 171. Twelve ESOP Plan participants elected to take in-kind stock distributions, leaving the option to cash out at a much higher price after a merger, rather than cashing out at $34.65 per share. *Id.* ¶ 173. Of those, nine were senior officers at VCB, including Defendants Crowder, Moore, Schick, and Stone. *Id.* Plaintiff Moore alleges that they "did so with access to inside information about forthcoming merger plans not available to rank-and-file VCB employees and ESOP Plan participants," including herself and other members of the proposed Plaintiff class. *See id.* On November 1, 2018, Defendant Schick notified Mr. Tobbler

that an additional investor had purchased shares from the paid-out distributions. *Id.* ¶ 174. That investor was Defendant Sedwick, who purchased 2,000 shares. *Id.*

A "definitive merger agreement with Blue Ridge Bankshares, Inc. was announced on May 14, 2019 with merger consideration in excess of $58.00 per share," *id.* ¶ 175, far more than the $34.65 per share that was offered to ESOP Plan participants who elected to cash out their stock. By purchasing the shares of participants who elected the cash-out option, "[t]hese Defendants nearly doubled their money," *id.*, "at the expense of ESOP participants" who were unaware of "such insider information" when electing a cash-out distribution, *id.* ¶ 176, and who "were purposefully led to believe the Bank would remain independent for the foreseeable future," *id.* In sum, "Defendants Sisk, Holzwarth, Crowder, Moore, and Sedwick profited at the expense of VCB employees and ESOP participants in 2018 by purchasing ESOP stock at a stale valuation of $34.65 per share when they had insider information about a planned merger auction process that would yield a much higher valuation." *Id.* ¶ 176.

The Amended Complaint, as with the Original Complaint, alleges one count against all Defendants for breach of ERISA fiduciary duties, *id.* ¶¶ 178–95, and a second count against all Defendants for engaging in prohibited transactions under ERISA, *id.* ¶¶ 196–201. Count I more specifically alleges that Defendants Stone, Hodge, and Sedwick (the "Trustee Defendants"):

> (i) failed to follow procedures necessary to determine the fair market value of Holding Company Stock distributed from and sold to the ESOP, (ii) caused the ESOP to pay more than adequate consideration for the repurchase of Holding Company Stock, (iii) failed to discharge their duties with respect to the ESOP solely in the interest of the Plan participants and for the exclusive purpose providing benefits to such participants, and (iv) engaged in self-dealing to enrich themselves at the expense of ESOP participants.

*Id.* ¶ 187 (emphasis omitted). It further alleges that the Trustee Defendants "had a fiduciary duty to ensure that any transactions between the Holding Company and/or VCB . . . were fair and

reasonable, and to ensure that the ESOP paid no more than fair market value for Holding

Company Stock," *id.* ¶ 188, and they breached those fiduciary duties by

> (a) intentionally concealing material financial information regarding the condition
> of the Holding Company for the purpose of establishing an inflated price for their
> ESOP transactions in 2007 and 2008; (b) knowingly and fraudulently causing the
> ESOP to repurchase Holding Company Stock at inflated prices; (c) actively
> concealing their fraud and ERISA violations by various means . . . ; and (d)
> approving ESOP loans to finance the acquisition of Holding Company's Stock
> that unnecessarily saddled the ESOP participants with debt.

*Id.* ¶ 189. Count I further alleges that those Defendants serving as Directors and/or Officers of

the Holding Company or VCB "breached their ERISA fiduciary duties by (a) approving ESOP

transactions for the purpose of profiting from such transactions at the expense of the ESOP

participants; and (b) unnecessarily saddling the ESOP participants with debt that decimated their

retirement benefits." *Id.* ¶ 190. Lastly, Count I alleges that all "Defendants entered into numerous

ESOP transactions after 2008, including without limitation in 2018, in connection with the

termination of the ESOP, the final distributions of Stock and cash therefrom, and the sale of

Stock held by the ESOP to themselves at a fraudulently low purchase price" in violation of their

fiduciary duties under ERISA. *Id.* ¶ 194.

Count II alleges that all "Defendants entered into numerous ESOP transactions in 2007

and 2008 that were prohibited transactions under ERISA, including multiple Stock repurchase

transactions at prices that exceeded adequate consideration and non-exempt loan transactions."

*Id.* ¶ 198. It further alleges that any compensation received by the Holding Company, VCB, or

the individual defendants in connection with the 2007 and 2008 loans was a prohibited

transaction that was "ongoing from 2007 through 2016, when the final contribution was made to

the ESOP to retire the Loans." *Id.* ¶ 199. Lastly, Count II alleges that all "Defendants entered

into numerous ESOP transactions prohibited under ERISA after 2008, including without

limitation in 2018, in connection with the termination of the ESOP, the final distributions of

Stock and cash therefrom, and the sale of Stock held by the ESOP to themselves at a fraudulently

low price." *Id.* ¶ 200.

**

Plaintiff Moore moved to amend her putative class-action complaint in August 2021.

Defendants oppose the motion on three grounds. *See generally* Defs.' Br. 10–18, ECF No. 69.

First, Defendants contend that leave to amend is futile because Plaintiff Moore raises "no

plausible allegations" that Defendant Sedwick, Defendant Schick, or any of the Director

Defendants (Crowder, Holzworth, Sisk, and Moore) "acted as a fiduciary [under ERISA] with

respect to [Plaintiff] Moore's new claims." *Id.* at 6. Next, Defendants argue that the Amended

Complaint fails to satisfy Rule 8's pleading standard because of Plaintiff Moore's

undifferentiated allegations against "Defendants." *Id.* at 10–12. Lastly, Defendants assert that the

amendments would be "plainly prejudicial" at this stage in the litigation. *Id.* at 12–14.

II. Standard of Review

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, "a party may amend its

pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P.

15(a)(2). Leave should be freely given "when justice so requires." *Id.* "Indeed, leave to amend a

pleading should be denied only when 'the amendment would be prejudicial to the opposing

party, there has been bad faith on the part of the moving party, or the amendment would be

futile.'" *Moon v. BMX Techs., Inc.*, 956 F. Supp. 2d 711, 714 (W.D. Va. 2013) (quoting *Edwards

v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)); *see also Gevara v. Bennett*, 472 F.

App'x 187, 187–88 (4th Cir. 2012) (applying the same standard to a motion for leave to amend

putative class-action complaint). "Prejudice is the weightiest factor, [and] the absence thereof,

12

'though not alone determinative, will normally warrant granting leave to amend.'" *Oliver v. Dep't of Public Safety & Corr. Servs.*, 350 F. Supp. 3d 340, 346 (D. Md. 2018) (quoting *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). "An amendment is futile when the proposed amended complaint does not state a claim" upon which relief can be granted, *id* (citing *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)), and therefore would not "defeat a motion to dismiss under Rule 12(b)(6)," *id.* at 355. *See, e.g.*, *Gevara*, 472 F. App'x at 187–88 (holding that a pro se prisoner's motion to amend putative class-action complaint against various corrections officials was futile because "a pro se prisoner may not litigate the interests of other prisoners in a class action" (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)). To survive under Rule 12(b)(6), a complaint must contain well-pleaded factual content, accepted as true and viewed in the plaintiff's favor, "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).

A "court determining whether to grant a motion to amend" that would add parties to the action "must consider both the general principles of the amendment provided by Rule 15(a) and also the more specific joinder provisions of Rule 20(a)." *Hinson v. Nw. Fin. S.C., Inc.*, 239 F.3d 611, 618 (4th Cir. 2001). As relevant here, Rule 20(a)(2) provides that persons

> may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2)(A)–(B). "The requirements for permissive joinder are liberally construed in the interest of convenience and judicial economy in a manner that will secure the just, speedy, and inexpensive determination of the action." *Dillon v. BMO Harris Bank, N.A.*, 16 F. Supp. 3d 605, 615 (M.D.N.C. 2014) (quotation marks omitted). "The 'transaction or occurrence' test" in

particular "is designed to permit all reasonably related claims for relief by or against different

parties to be tried in a single proceeding[,] . . . . thereby preventing multiple lawsuits." *Advamtel,*

*LLC v. AT&T Corp.*, 105 F. Supp. 2d 507, 514 (E.D. Va. 2000) (citing *Saval v. BL Ltd.*, 710 F.2d

1027, 1031 (4th Cir. 1983)). This determination is made on a case-by-case basis, *id.* at 513, and

typically permits joinder so long as all the claims against different parties arise out of events that

"have a 'logical relation to one another,'" *Tinsley v. Streich*, 143 F. Supp. 3d 450, 459 (W.D. Va.

2015) (quoting *Stephens v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, 807 F. Supp.

2d 375, 379 (D. Md. 2011)).

## III. Discussion

A.    *Fiduciary Capacity of the Director Defendants, Defendant Sedwick & Defendant Schick*

Defendants first argue that Plaintiff Moore failed to allege facts supporting a reasonable

inference that Defendant Sedwick, Defendant Schick, and the Director Defendants (Crowder,

Holzworth, Sisk, and Moore) acted in a fiduciary capacity with respect to the new claims. Under

ERISA,

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any
> discretionary authority or discretionary control respecting management of such
> plan or exercises any authority or control respecting management or disposition of
> its assets, (ii) he renders investment advice for a fee or other compensation, direct
> or indirect, with respect to any moneys or other property of such plan, or has any
> authority or responsibility to do so, or (iii) he has any discretionary authority or
> discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). The test for whether one is an ERISA fiduciary is a "functional" one,

requiring courts to "examine the conduct at issue when determining whether an individual is an

ERISA fiduciary." *Moore*, 2020 WL 3490224, at *9 (quoting *Moon v. BMX Techs., Inc.*, 577 F.

App'x 224, 229–30 (4th Cir. 2014)). "Yet ERISA does not 'characterize a fiduciary as one who

exercises *entirely* discretionary authority or control. Rather, one is a fiduciary to the extent he

exercises *any* discretionary authority or control.'" *Id.* (quoting *Firestone Tire & Rubber Co. v.*

14

*Bruch*, 489 U.S. 101, 113 (1989)). Thus, "an individual or entity can still be found liable as a de facto fiduciary if it lacks formal power to control or manage a plan yet exercises informally the requisite discretionary control over the plan management and administration." *Moon*, 577 F. App'x at 229–30 (internal quotation marks omitted). Nevertheless, a person who performs only ministerial functions, such as answering questions about plan benefits, is not a fiduciary. *Adams v. Brink's Co.*, 372 F. Supp. 2d 854, 904 (W.D. Va. 2005). Courts have an "obligation to liberally construe fiduciary status under ERISA." *Dawson-Murdock v. Nat'l Counseling Grp., Inc.*, 931 F.3d 269, 278 (4th Cir. 2019); *see also Custer v. Sweeny*, 89 F.3d 1156, 1161 (4th Cir. 1996) ("[T]he concept of a fiduciary under ERISA is broader than the common law concept of a trustee.").

The Court finds that the well-pleaded factual allegations in the Amended Complaint, accepted as true and viewed in Plaintiff Moore's favor, support a reasonable inference that Defendant Sedwick, Defendant Schick, and the Director Defendants each acted as an ERISA fiduciary. Notably, Judge Conrad addressed the issue of fiduciary capacity when denying the Original Defendants' motion to dismiss the Original Complaint. *See Moore*, 2020 WL 3490224, at *9–10. At that time, Defendants argued that the factual allegations in the Original Complaint did not support a reasonable inference that either Defendants Spicer or VCB acted as ERISA fiduciaries. *Id.* at *9. Judge Conrad disagreed, concluding that Plaintiff Moore had pled "several non-conclusory facts about Spicer's and VCB's roles with respect to the Plan." *Id.* He then cited Plaintiff Moore's allegations "that VCB was 'controlled by the same people who controlled the ESOP,' and that Spicer helped 'set up' the loans at issue," the ESOP was "administered by the Board of Directors of the Holding Company and the Board of Directors of VCB," "VCB had discretion to make stock bonus contributions to supplement the money purchase contribution,"

15

and "VCB's President and CEO wrote Moore a letter on VCB letterhead explaining why there was 'nothing inappropriate' about the 2007 loan, referred to the ESOP as 'our' plan, and noted that 'the company could redeem the shares' as one way to pay its participants." *Id.* (quoting Compl. ¶¶ 7–11, 44–45, 71–72). Judge Conrad concluded that these factual allegations, combined with Spicer's "senior job titles, including as a director, within VCB and the Holding Company," supported a reasonable inference "that Spicer and VCB exercised some 'discretionary authority or control' over the plan, whether formally or informally." *Id.* at *9–10. Thus, it was "plausible that they were fiduciaries of the ESOP with respect to the breaches alleged by [Plaintiff] Moore" in her Original Complaint. *Id.* at *10.

Here, Plaintiff Moore similarly alleges in her Amended Complaint that each Director Defendant (Crowder, Holzworth, Sisk, and Moore) exercised discretionary authority and control over the management or administration of the ESOP as well as management or disposition of ESOP assets. Am. Compl. ¶¶ 33–38. More specifically, she alleges that "[t]he Plan was administered by the Board of Directors of the Holding Company and the Board of Directors of VCB," *id.* ¶ 51, and that "[t]he Holding Company's Board of Directors was authorized to appoint, and did appoint, Defendants Stone, Hodge, and Sedwick to serve as the trustees of the ESOP," *id.* ¶ 52. Additionally, "the [Holding Company] Board appointed Michael Mulkey to serve as the independent trustee to oversee the final valuations of ESOP stock and the administration of the Plan termination." *Id.* ¶ 52. She further alleges that "the Holding Company Board met and approved a termination of the ESOP" in September 2016, *id.* ¶ 143; announced a merger of Holding Company and Atlantic Bay Mortgage Group in July 2017, ¶ 147; and approved of the private offering in September 2018, *id.* ¶¶ 17, 163–69. Moreover, Plaintiff Moore alleges that each of these Defendants held senior job titles as directors of the Holding

Company and/or VCB. *See id.* ¶¶ 34–36, 38. And, Plaintiff Moore alleges that Defendant Moore exercised control over the valuation and distribution of plan assets, suggesting that he maintained requisite level of control to constitute an ERISA fiduciary of the ESOP. *See id.* ¶¶ 151–54 (alleging that Defendant Moore sent ESOP election forms and letter on VCB letterhead that was intended to induce ESOP participants to cash-out at the $34.65 per share valuation in August 2018); *see also Dawson-Murdock*, 931 F.3d at 281 ("[T]he Supreme Court and our Court have both recognized that conveying information about plan benefits to a beneficiary in order to assist plan-related decisions can constitute fiduciary activity." (quoting *Varsity Corp. v. Howe*, 516 U.S. 489, 502 (1996)).

"Drawing all reasonable inferences in Plaintiff Moore's favor, the [C]ourt [finds] that these allegations make it plausible that [each Director Defendant] exercised some 'discretionary authority or control' over the Plan, whether formally or informally." *Moore*, 2020 WL 3490224, at *9; *see also* 29 C.F.R. § 2509.75-8 D-4 ("Members of the board of directors [who] exercise discretionary authority or discretionary control respecting management of such plan [] are . . . fiduciaries with respect to the plan."). These allegations demonstrate that the Holding Company Board had authority to delegate to VCB employees the authority to take discretionary action with respect to the ESOP, Am. Compl. ¶ 51, to appoint trustees, *id.* ¶ 52; to maintain the power to terminate the ESOP, *id.* ¶ 143; to select an independent trustee to assist with the termination processes, *id.* ¶ 52; and to disregard those proposed processes, *see id.* ¶¶ 152–71. These allegations, combined with each Director Defendant's senior title(s), support a reasonable inference that the Director Defendants acted as ERISA fiduciaries with respect to the ESOP, and thus the Court will allow the claims against them to proceed at this stage. *See Moore*, 2020 WL 3490224, at *9–10.

The factual allegations against Defendant Sedwick similarly support a reasonable inference that he acted as an ERISA fiduciary with respect to the ESOP. Defendant Sedwick "was a trustee of the ESOP until November 21, 2016," and served as trustee "at all relevant times." *Id.* ¶ 33. "The Trustees had full discretion to invest the ESOP contributions and dividends allocated to the ESOP participant accounts." *Id.* ¶ 57. Plaintiff Moore also alleges that the trustees were responsible for selecting an independent appraiser for annual valuations "and for accepting or rejecting the appraisal following a good faith review of the appraisal." *Id.* ¶ 64; *see also id.* ¶ 116 (alleging "the Defendant Trustees did not rely on an independent valuation to determine Stock value for purposes of establishing a purchase price for the shares repurchased with the proceeds of the 2008 ESOP Loan transaction, as required under ERISA"). Further, the trustees were responsible for reporting the valuation to ESOP participants via an annual ESOP statement. *Id.* ¶ 68; *see also Dawson-Murdock*, 931 F.3d at 281. Additionally, "if there was sufficient cash allocated to ESOP participant accounts, the Trustees were permitted to satisfy the repurchase obligation on behalf of the Holding Company by using such cash to repurchase the shares and recirculate them to active ESOP participants." *Id.* ¶ 85. Plaintiff Moore also alleges that "the ESOP Trustees paid $4,999.05 using contributions intended to fund [her] retirement to acquire Stock worth only $1,740.52." *Id.* ¶ 135.

These factual allegations allow the Court to draw a reasonable inference that Defendant Sedwick, and the other trustees, acted as ERISA fiduciaries with respect to the plan. *See* 29 C.F.R. § 2509.75-8 D-3 ("[A] plan administrator or trustee of a plan must, b[y] the very nature of his position, have 'discretionary authority or discretionary responsibility in the administration of the plan' . . . . Persons who hold such positions will therefore be fiduciaries."). The Amended Complaint plausibly alleges that the Trustees exercised the requisite discretion over the ESOP by

making investment decisions, selecting independent appraisers, deciding to accept or reject annual appraisals, communicating those appraisals to ESOP participants, and exercising authority to repurchase shares from employees electing the cash-out option. Although it is not entirely clear that the Trustees maintained the same degree of discretion beyond 2016, Plaintiff Moore asserts claims for ongoing violations of ERISA fiduciary duties and prohibited transactions under ERISA extending from 2006 until at least 2019 that collectively resulted in the decimation of her and other proposed Plaintiff class members' retirement benefits. As such, the allegations in the Amended Complaint support a reasonable inference that Defendant Sedwick exercised the requisite control over the ESOP during that period, and the Court will allow the claims against him to proceed at this stage in the litigation.

Likewise, the facts describing Defendant Schick's alleged responsibilities and conduct support a reasonable inference that she was an ERISA fiduciary with respect to the ESOP administration and termination. Defendant Schick is alleged to have been Senior Vice President of Human Resources at VCB "at all relevant times," and Corporate Secretary of both VCB and the Holding Company from 2008 until the Merger." Am. Compl. ¶ 37. In those roles, she had control over the administration of the ESOP, the ESOP bank account, and disposition of ESOP assets. *Id.* Additionally, the Holding Company and VCB Boards delegated to Schick and others "authority to take discretionary action in connection with the administration of the Plan and the disposition of the Plan assets," *id.* ¶ 51, and "[a]t all relevant times, Defendant Schick controlled the administration of the ESOP Account," *id.* ¶ 57. Further, when employees elected the cash-out option, "Defendant Schick transferred sufficient funds from the Holding Company to the ESOP trust account to cash out the Plan participants." *Id.* ¶ 161. Additionally, on October 8, 2018, Defendant Schick emailed Holding Company's stock transfer agent, Eddie Tobbler, and

instructed him "to transfer shares *from the ESOP* to the account of four individuals who had purchased shares in the private offering as of that date," *id.* ¶ 169, and she notified Mr. Tobbler when Defendant Sedwick also purchased shares via the private offering, *id.* ¶ 174. Finally, with inside knowledge of the potential merger that was "not available to rank-and-file VCB employees and ESOP Plan participants," Defendant Schick took a stock distribution from the ESOP, making a substantial amount of money. *Id.* ¶ 173.

Although some of the allegations against Defendant Schick could demonstrate the performance of ministerial tasks, *see* 29 C.F.R. § 2509.75-8 (listing processing of claims as an example of a ministerial task not sufficient to give rise to ERISA fiduciary status), rather than exercising discretionary control over the ESOP, taken together, the factual allegations describing Defendant Schick's role and responsibilities support a reasonable inference that she acted as an ERISA fiduciary with respect to the ESOP. Furthermore, while Schick did not serve as a director, her position as Corporate Secretary, combined with these allegations, allows the Court to draw the reasonable inference that Schick had the requisite discretion such that she was acting as an ERISA fiduciary with respect to the ESOP.

Accordingly, I find that Plaintiff Moore has pled facts, accepted as true and viewed in her favor, supporting a reasonable inference that the Defendant Sedwick, Defendant Schick, and the Director Defendants (Crowder, Holzworth, Sisk, and Moore) each acted as ERISA fiduciaries with respect to the ESOP under the liberal standard applicable at this stage in the case.

B.      *Undifferentiated Pleading of "Defendants"*

Defendants next argue that Plaintiff Moore has failed to allege facts with the requisite level of specificity, as she often attributes certain actions to "the Defendants" generally, rather than specifying which Defendant(s) is alleged to have been involved in what conduct. Defs.' Br.

20

10–12 (citing Fed. R. Civ. P. 8(a)). Rule 8(a) instructs that a "pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to [the] relief demanded against a defendant." *See* Fed. R. Civ. P. 8(a)(2)–(3). "[W]hile the complaint 'must contain sufficient facts to state a claim that is plausible on its face,' it nevertheless 'need only give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Wright v. North Carolina*, 787 F.3d 256, 263 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

Portions of the Amended Complaint do allege that "the Defendants" took certain actions even though some individual Defendants did not join the Holding Company or VCB until many years after those alleged events. *See, e.g.*, Am. Compl. ¶¶ 198, 34–35, 38 (alleging that all "Defendants entered into numerous ESOP transactions in 2007 and 2008 that were prohibited transactions under ERISA," *id.* ¶ 198, but that Defendants Crowder, Holzwarth, and Sisk each joined the Holding Company and/or VCB between 2014 and 2016, *see id.* ¶¶ 34–35, 38). Nonetheless, despite this lack of clarity, the Court is satisfied that the Amended Complaint provides each Defendant with "fair notice of what the claim is and the grounds upon which it rests." *Wright*, 787 F.3d at 263.

In her Amended Complaint, Plaintiff Moore identifies the positions held by each individual Defendant, as well as the years during which they held those positions. *See, e.g.*, Am. Compl. ¶¶ 30–38. Further, the factual allegations make clear what each individual defendant is alleged to have done, distinguishing between the actions of the Trustee Defendants (Stone, Hodge, and Sedwick), the Director Defendants (Crowder, Holzworth, Sisk, and Moore), and certain actions taken by some Defendants individually. *See, e.g.*, *id.* ¶ 8 (alleging that "between 2006 and 2008, the ESOP's trustees authorized fraudulent cash distributions" and that the

trustees "authorized cash distributions from the ESOP to Defendant Spicer and the repurchase of

Spicer's Stock by the ESOP at . . . inflated values" despite having insider information that the

stock price would soon dwindle); *id.*¶ 95 (alleging that "[t]he Trustees engaged in such a

prohibited transaction" after describing the acquisition of the 2007 loan used to finance ESOP

cash-outs), *id.* ¶ 98 (alleging "Defendant Spicer. . . cashed out his ESOP account at a Stock

valuation both he and Defendant Stone knew was . . . inflated"); *id.* ¶ 142 (alleging Defendant

Spicer "took cash distributions from the ESOP at the . . . inflated valuation of $55.00 per share");

*id.* ¶¶ 154–57 (alleging that Defendant Moore sent his August 21, 2018 letter to induce plan

participants to cash-out their ESOP Stock shares at the lower pre-merger valuation); *id.* ¶ 161

(alleging Defendant Schick "transferred sufficient funds from the Holding Company to the ESOP

trust accounts to cash out Plan participants" thereby facilitating at least fifty "prohibited

transactions" under ERISA); *id.* ¶¶ 165–70, 174 (specifying the exact dollar amounts each

Defendant received from the line of credit from VCB and alleging that the Holding Company

Board approved a private stock offering whereby Defendants Crowder, Holzwarth, Sedwick, and

Sisk purchased shares at the $34.65 per share valuation despite insider knowledge of a potential

merger).

     The above-cited allegations, by way of example, do not merely state "labels and

conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007). Rather, these well-pleaded factual allegations, combined

with identification of the positions each defendant held and the period he or she held such

positions, sufficiently apprise Defendants of the actions each individual defendant is alleged to

have taken and the claims Plaintiff Moore asserts. *See EEOC v. Young & Assocs., Inc.*, No.

1:14cv68, 2015 WL 82894, at *2 (W.D. Va. Jan. 7, 2015) ("The Complaint here meets the

proper standards, by providing the defendant fair notice of the grounds for the plaintiff's claims and stating a claim for which relief can be granted. . . ."). A few isolated instances of generally pleading that "Defendants" took certain actions, while perhaps wanting in clarity, does not unfairly impact the Defendants' ability to discern the actions each is alleged to have taken and the claims asserted against them. Accordingly, I find that the Amended Complaint complies with the pleading requirements of Rule 8(a).

C.      *Prejudice*

Defendants next argue that permitting amendment at this stage in the litigation would be "plainly prejudicial." Defs.' Br. 12. They contend that Plaintiff Moore unduly delayed in moving to amend her pleading despite learning of these new allegations over a year prior to filing the instant motion to amend. *Id.* Defendants also assert that having to defend these new allegations against new defendants at this stage in the litigation would force the six Original Defendants "to incur tens of thousands of dollars in additional costs to re-review a significant portion of previously reviewed documents, gather new documents from additional custodians, and review those new documents for responsiveness and privilege based on completely new claims unrelated to those in the original complaint." *Id.* at 13. These arguments are not persuasive.

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006) (en banc). An amendment is prejudicial where it "raises a new legal theory that would require the gathering and analysis of facts not already considered by the defendant, and is offered shortly before or during trial." *Id.* (cleaned up). Delay on its own, however, "is an insufficient reason to deny" a motion to amend. *Id.* The "further a case has progressed . . . , the more likely it is that the amendment will prejudice the defendant or . . . a court will find bad faith on the plaintiff's part." *Id.* A district

court "has some latitude in determining whether a delay is prejudicial or the result of bad faith depending upon the particular facts and circumstances of the case." *RLI Ins. Co. v. Nexus Servs., Inc.*, No. 5:18cv66, 2019 WL 1880148, at *6 (W.D. Va. Apr. 26, 2019) (citing *Wildauer v. Frederick Cty.*, 993 F.2d 369, 372 (4th Cir. 1993)).

Here, the circumstances do not suggest that Plaintiff Moore unreasonably delayed filing the motion. Indeed, Plaintiff Moore explained in her reply brief that although she became aware of the potential new allegations "in the latter half of 2020," she did not possess sufficient corroborating documentation regarding those allegations until June 16, 2021, Pl.'s Reply 2, ECF No. 72, just two months before she filed her motion to amend and her 59-page proposed Amended Complaint. This delay was reasonable to allow Plaintiff Moore time to obtain information that her counsel believed would provide sufficient corroboration to support the motion for leave to amend. *See, e.g.*, *RLI Ins. Co.*, 2019 WL 1880148, at *6 (plaintiff's two-month delay in moving to amend complaint to add new alter-ego claims after receiving deposition testimony that it believed supported the new claims was not prejudicial or the product of bad faith where plaintiff "acted within a reasonable time to seek leave to amend" and defendants did "not point to any information that convincingly suggests [plaintiff's] timing [was] the product of bad faith").

Moreover, no prejudice would result from allowing the proposed amendments here. The joint Discovery Plan provides that discovery is to be completed in two stages. The current stage, "Phase I discovery," is limited to the issue of whether Plaintiff Moore's allegation are time-barred. Disc. Plan 2–4, ECF No. 51. "Phase II discovery" is the stage at which discovery on all other issues occurs. *Id.* at 4. As of the filing of Plaintiff Moore's motion to amend, the case was still in "Phase I discovery." Pl.'s Br. 3–4. As Plaintiff Moore observes in her brief, her new

allegations—which describe events or occurrences taking place in 2015 to 2018—are not likely to be contested on timeliness grounds, and thus the bulk of discovery on these claims would likely occur during "Phase II discovery," which has not started. Moreover, the case has not been formally certified as a class action, Fed. R. Civ. P. 23(c), and is yet to be scheduled for trial.

Accordingly, I find that granting leave to amend would not be prejudicial at this stage in the case. *See RLI Ins. Co.*, 2019 WL 1880148, at *6 ("I do not find that a delay of two months was excessive or that it has caused prejudice to [Defendants]. This relatively short delay ought not override federal judicial policy of resolving cases on their merits.").

D.      *Rule 20(a)*

Defendants do not raise any objections to their being joined as parties to this action under Rule 20(a), and I find that the additional defendants are properly joined consistent with the Rule's "transaction or occurrence" test. Here, each of Plaintiff Moore's claims involves a common overarching theme—namely, the Defendants mismanagement of the ESOP in violation of ERISA. The allegations and claims assert breaches of fiduciary duties and a series of prohibited transactions by Defendants at various points ranging from 2006 until at least 2019 that collectively resulted in the decimation of ESOP participants' retirement funds. Thus, the claims "aris[e] out of the same . . . series of transactions or occurrences." Fed. R. Civ. P. 20(a)(2)(A). Further, Plaintiff Moore seeks relief against all Defendants jointly, severally, or in the alternative[.]" Fed. R. Civ. P. 20(a)(2)(A); *see* Am. Compl. ¶ 202. And, because the Court will be tasked with determining whether each defendant acted as an ERISA fiduciary, breached fiduciary duties, and engaged in prohibited transactions, there exist "question[s] of law or fact common to all defendants [which] will arise in the action." Moreover, forcing Plaintiff Moore to bring these claims in a separate action would run afoul of Rule 20's "purpose of expediting 'final

determination of disputes, thereby preventing multiple lawsuits.'" *RLI Ins. Co.*, 2019 WL 1880148, at *7 (quoting *Saval*, 710 F.2d at 1031). Accordingly, I find that the new defendants are properly joined under Rule 20(a)(2).

IV. Conclusion & Order

For the foregoing reasons, Plaintiff's Motion to Amend, ECF No. 61, is hereby **GRANTED.** The proposed Amended Complaint, ECF No. 65, is now the operative complaint. The Clerk is directed to **file under seal** the proposed Amended Complaint, ECF No. 65, as the Amended Complaint. Additionally, the Clerk is directed to file **on the public docket** the redacted proposed Amended Complaint, ECF No. 68-1. Plaintiff shall serve the Amended Complaint on any new Defendants. The existing Defendants and any new Defendants shall respond to the Amended Complaint within the times allowed under the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4, 5, 15(a)(3).

It is **SO ORDERED.**

The clerk shall deliver a copy of the Memorandum Opinion & Order to the parties.


ENTER: March 30, 2022

Joel C. Hoppe
United States Magistrate Judge