# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA

CHARLOTTESVILLE DIVISION

| | |
|---|---|
| JANICE A. MOORE,<br><br>          *Plaintiff*,<br><br>v.<br><br>VIRGINIA COMMUNITY BANKSHARES, INC., *et al.*,<br><br>          *Defendants*. | CASE NO. 3:19-cv-45<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

  Plaintiff Janice A. Moore is a former employee of Virginia Community Bank and former participant in its Employee Stock Ownership Plan (ESOP), which was terminated effective December 31, 2016. Defendants Stone, Hodge, and Sedwick served as the ESOP's trustees in the 2006-to-2008-timeframe at issue in this motion. Plaintiff asserts that Defendants breached their fiduciary duties and engaged in transactions prohibited by ERISA.

  Defendants move to dismiss Plaintiff's prohibited transaction and fiduciary breach claims arising on or after August 24, 2018 for lack of Article III and statutory standing. Dkt. 100. As Plaintiff has alleged enough facts to support both Article III and statutory standing at this stage of litigation, Defendants' motion will be denied.

## Background

  Plaintiff is a former employee of Virginia Community Bank ("VCB") and former participant in the Virginia Community Bankshares, Inc. Employee Stock Ownership Plan (the

1

"ESOP" or "plan"), which was terminated effective December 31, 2016. Dkt. 75 ("Amend. Compl.") ¶¶ 27, 48; Dkt. 78 ("Answer") ¶¶ 27, 48; Dkt. 92 (Ex. A) (Janice Moore ESOP Account Statements); *Id.* (Ex. B) (Board Resolution Terminating the ESOP, at 2). Virginia Community Bankshares, Inc. (the "Holding Company") sponsored the ESOP.[1] Amend. Compl. ¶ 1; Answer ¶ 1. VCB was a wholly owned subsidiary of the Holding Company and a participating employer in the ESOP. *Id.* Messrs. Stone, Hodge, and Sedwick, in the 2006-to-2008-timeframe relevant to this motion, served as the ESOP's trustees. Amend. Compl. ¶ 52; Answer ¶ 52.

After the ESOP's termination, as a prerequisite to a final distribution of the assets, the Holding Company applied to the Internal Revenue Service for a final determination letter regarding the ESOP's tax-qualified status. Amend. Compl. ¶ 148; Answer ¶ 148. On December 4, 2017, the IRS issued a favorable determination letter. Amend. Compl. ¶ 148; Answer ¶ 148.

The ESOP's independent trustee Michael Mulkey, following receipt of the IRS' letter, determined that a valuation of Holding Company stock as of December 31, 2017 should provide the basis for ESOP final distributions. Amend. Compl. ¶ 149; Answer ¶ 149; *see also* Dkt. 101 (Ex. C) at 2 (November 15, 2016, Board Resolution Appointing Michael Mulkey as Independent Trustee). Mercer Capital Management, Inc. completed that valuation in July 2018, valuing shares at $34.65 per share, and Mulkey approved the valuation. Amend. Compl. ¶ 150; Answer ¶ 150.[2]

---

[1] On December 15, 2019, the Holding Company and Blue Ridge Bankshares, Inc. merged, leaving Blue Ridge Bankshares, Inc. as the only existing corporation. Amend. Compl. ¶ 2; Answer ¶ 2; Dkt. 29. And VCB merged with Blue Ridge Bank, N.A., a wholly owned subsidiary of Blue Ridge Bankshares, Inc. *Id.* Thus, the Holding Company and VCB no longer exist as legal entities.

[2] There are no allegations that this was an inaccurate valuation. *See generally* Amend. Compl.

While serving as VCB's CEO, on August 21, 2018, Preston Moore sent ESOP participants a letter providing instructions on steps to elect and receive the final ESOP funds' distribution. Amend. Compl. ¶ 154.[3] Between August 24 and October 17, 2018, the Holding Company made fourteen cash transfers to the ESOP. Amend. Compl. ¶ 161; Dkt. 101-1 ("Schick Decl.") ¶ 2; Dkt. 101 (Ex. A) (Deposit Tickets for Transfers from Holding Company to ESOP). Plaintiff asserts that ERISA prohibited each of these transfers. Amend. Compl. ¶ 161.

The ESOP also distributed cash, stock, or both to participants during that time frame, according to their elections. Schick Decl. ¶ 3. Participant distributions first occurred on August 24, 2018, in which nine participants, including Plaintiff, received a distribution of their entire ESOP account. Schick Decl. ¶ 3; Dkt. 101 (Ex. B) at 2 (Plaintiff's Termination Distribution Election Form and Check). All remaining ESOP participants received their ESOP account distributions between August 28 and October 17, 2018. Schick Decl. ¶ 3. Some, like Plaintiff, received the assets in cash, while others became owner of their shares, and still others received a combination of cash and stock ownership. *Id.* All ESOP assets were distributed by October 17, 2018. Amend. Compl. ¶ 170; Answer ¶ 170. Plaintiff asserts that ERISA prohibited all the cash distributions. Amend. Compl. ¶ 200.[4]

---

[3] Plaintiff asserts that this letter misrepresented VCB's intention to remain independent after VCB merged with Blue Ridge in 2019, constituting a separate fiduciary breach, but this claim is not subject to the motion at issue. Dkt. 101 at 8 n.5 (citing Am. Compl. ¶ 160).

[4] Defendants assert that "Ms. Moore does not allege that any stock distributions to participants constituted prohibited transactions or otherwise violated ERISA," Dkt. 101 at 5 n.7, but her Amended Complaint asserts otherwise. There, she contends:

> The factual allegations also establish that Defendants entered into numerous ESOP transactions prohibited under ERISA after 2008, including without limitation in 2018, in connection with the termination of the ESOP, the final distributions of Stock and cash therefrom, and the sale of Stock held by the ESOP to themselves at a fraudulently low purchase price.

3

About a month later, on September 18, 2018, the Holding Company Board of Directors (the "Board") met "to discuss 'the interest in exploring a capital raise through the offering and issuance of up to 57,720 shares of the Company's common stock,'" and "[t]he private offering was approved." Amend. Compl. ¶ 167. The proposed private offering, valuing the Holding Company shares at $34.65, was meant "to replenish the capital of the Company and the Bank, as applicable, utilized in the repurchase of Common Stock by the Company in connection with the termination of the ESOP." Dkt. 101 (Ex. D) at 2 (September 18, 2018, Board Resolution Authorizing Equity Offering). Plaintiff alleges that on September 24, 2018, Defendant Preston Moore "transmitted a subscription agreement by e-mail to Defendants Crowder, Holzwarth, Sedwick, and Sisk," and they each purchased shares under the private offering at the $34.65 valuation. Amend. Compl. ¶¶ 168, 169, 174; *see also* Schick Decl. ¶ 5 (explaining each participating Defendant committed to purchase shares pursuant to this private offering by returning signed subscription agreements on or after September 24, 2018).

On August 12, 2019, Plaintiff filed a complaint alleging two counts of violation of ERISA. On December 9, 2022, Defendants moved to dismiss, asserting that Plaintiff lacked standing to bring the claim. The motion, having been fully briefed and argued, is ripe for decision.

**Standard of Review**

When a party attacks the subject matter jurisdiction of the court under Rule 12(b)(1) of the Federal Rules of Civil Procedure, the court generally must first determine that it has jurisdiction as a threshold matter. *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431–32 (2007) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89

---

Amend. Compl. ¶ 200.

4

(1998)). A plaintiff "has the burden of proving that subject matter jurisdiction exists." *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). Where, as here, a defendant challenges the sufficiency of a plaintiff's allegations to establish subject matter jurisdiction, the court must accept the truth of the plaintiff's allegations at this stage, but still, it is the plaintiff's burden to establish that the allegations are sufficient to support subject matter jurisdiction. *See, e.g.*, *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A court should "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Evans v. B.F. Perkins Co., a Div. of Standex Intern. Corp.*, 166 F.3d 642, 647 (4th Cir. 1999) (internal citation omitted). The moving party's motion to dismiss should be granted when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (internal citation omitted).

When a party brings a factual challenge to Article III standing, "[a] trial court may [] go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations, without converting the motion to a summary judgment proceeding." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal citations and quotations omitted). And "courts may consider affidavits and other extrinsic information to determine whether subject matter jurisdiction exists." *Saval v. BL Ltd.*, 710 F.2d 1027, 1029 n.2 (4th Cir. 1983) (internal citations omitted); *Mowery v. Nat'l Geospatial-Intel. Agency*, 42 F.4th 428, 433–34 (4th Cir. 2022).

Standing is a threshold jurisdictional injury, and to establish standing, a plaintiff must demonstrate that she has "(1) suffered an injury in fact, (2) that is fairly traceable to the

challenged conduct of the defendant, and (3) that it is likely to be redressed by a favorable decision." *Spokeo v. Robbins*, 578 U.S. 330, 338 (2016). This applies to claims brought under ERISA. *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620–21 (2020). Further, a plaintiff must establish standing "for each claim" and "each form of relief," the plaintiff seeks. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006). Redressability requires the plaintiff to establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (citation and internal quotation marks omitted), and "[t]o determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021).

## Analysis

Plaintiff asserts that each transfer that occurred from August 24 to October 17, 2018 from the Holding Company to the ESOP was a transaction between a party in interest and the ESOP. Amend. Compl. ¶ 161. She contends that each of these cash distributions was a prohibited transaction under ERISA because the distributions should have been made based on a "contemporaneous" valuation instead of based on the December 31, 2017 value. *Id.* And she asserts that the private offering[5] was a prohibited transaction and fiduciary breach because Defendants Crowder, Holzwarth, Moore, Sedwick, and Sisk, as Board members, were parties in

---

[5] Defendants note that "[w]hile Ms. Moore suggests that this private offering 'constituted securities fraud,' she does not allege that she was a purchaser or seller of the securities in the private offering. In any event. Ms. Moore only alleges claims under ERISA." Dkt. 101 at 6 n.9 (citing Amend. Compl. ¶ 164).

interest. *Id.* ¶¶164–69.[6] Further, Plaintiff claims that these prohibited transactions were in violation of ERISA §§ 404 and 406, 29 U.S.C. §§ 1104, 1106. Amend. Compl. ¶¶ 178–201.

Under ERISA § 404(a), "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of[] providing benefits to participants and beneficiaries; and [] defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1). Under ERISA § 406(a), entitled "Transactions between a plan and a party in interest," "[a] fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect— (A) sale or exchange, or leasing, of any property between the plan and a party in interest . . . [or] (D) transfer to, or use by or *for the benefit* of, a party in interest, of *any* assets of the plan." 29 U.S.C. § 1106(a)(1)(A) and (D) (emphasis added). And under ERISA § 406(b), entitled "Transactions between a plan and a fiduciary," a fiduciary:

> shall not (1) deal with the assets of the plan in his own interest or for his own account, (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of the participants and beneficiaries, or (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b).

During the 2018 timeframe, Plaintiff alleged that Defendants failed to discharge their duties with respect to the plan solely in the interest of the plan participants and for the exclusive benefit of providing benefits, in violation of § 404(a)(1)(A) of ERISA. Amend. Compl. ¶¶ 180, 187. They failed to discharge their duties with respect to the plan solely in the interest of the plan participants, in violation of § 404(a)(1)(B) of ERISA. *Id.* ¶¶ 181, 187. Defendants violated §

---

[6] Her claims against Defendants Crowder, Holzwarth, and Sisk concern only their role with respect to the private offering. Amend. Compl. ¶¶ 165, 168–69, 176.

403(c)(1) of ERISA by causing the ESOP assets to inure to the benefit of the Bank instead of for the exclusive purpose of providing benefits to the participants. *Id*. ¶¶ 182, 187. They failed to follow procedures to determine the fair market value of Holding Company Stock. *Id*. ¶ 187. Further, Defendants engaged in self-dealing to enrich themselves at the expense of ESOP participants. *Id*. ¶ 187. Defendants who were directors and officers breached their fiduciary duties by approving ESOP transactions for the purpose of profiting from such transactions. *Id.* ¶ 190. Defendants engaged in fraud and insider trading by withholding a forthcoming merger plan from ESOP participants in late 2018 and conducting a secret sale of shares of Holding Company Stock held by the ESOP to themselves in a private placement to enrich themselves at the expense of the ESOP participants. *Id*. ¶ 192. And they entered into transactions with the ESOP in 2018 in connection with the termination of the ESOP, the final distributions of Stock and cash therefrom, and the sale of ESOP Stock to themselves at a fraudulently low purchase price. *Id*. ¶ 194; *see also id.* ¶ 200 (asserting in Count II that in 2018 Defendants engaged in "numerous" prohibited transactions, including the ESOP's termination, the final distributions of Stock and cash from the ESOP, and the sale of Stock held by the ESOP to themselves at what she contends is a "fraudulently low purchase price.").

      Defendants argue that Plaintiff lacks Article III standing to bring these claims. In response, Plaintiff argues that Defendants' standing-based arguments fail "because they are based on the incorrect premise that Ms. Moore was not individually and personally harmed by Defendants' conduct. She was, and if she prevails, will be entitled to greater benefits than she received in 2018." Dkt. 109 at 2–3. Defendants also contend that Plaintiff has not shown she has statutory standing to pursue her claims. The Court disagrees. For the following reasons, the

8

Court finds that Plaintiff has alleged enough facts to support that she has Article III and statutory standing.

### A. Article III Standing

#### 1. Injury-in-Fact

The Supreme Court has held that a plaintiff lacks standing to pursue fiduciary breach claims brought under ERISA because the defendants' alleged mismanagement of the benefits plan had not personally harmed the plaintiff. *Thole*, 140 S. Ct. at 1619, 1622 ("[I]n any event, the plaintiffs' complaint did not plausibly and clearly claim that the alleged mismanagement of the plan substantially increased the risk that the plan and the employer would fail and be unable to pay the plaintiffs' future pension benefits. It is true that the plaintiffs' complaint alleged that the plan was underfunded for a period of time. But a bare allegation of plan underfunding does not itself demonstrate a substantially increased risk that the plan and the employer would both fail.") (internal citation omitted). In *Thole*, the plan was harmed, and the plaintiffs' claims were brought derivatively "on behalf of" the plan, pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), but that did not affect the Article III standing analysis. *Id.* at 1620 ("In arguing for standing, [plaintiffs] stress that ERISA affords the Secretary of Labor, fiduciaries, beneficiaries, and participants . . . a general cause of action to sue for restoration of plan losses and other equitable relief. *See* ERISA §§ 502(a)(2), (3), 29 U.S.C. §§1132(a)(2), (3). But the cause of action does not affect the Article III standing analysis.").

Defendants argue that "there is no conceivable injury in fact that Ms. Moore could have suffered based on the alleged wrongdoing that occurred after August 24, 2018," because she received a distribution of her ESOP assets on August 24, 2018, "which reflected the value of the 4,755 shares in her account times the $34.65 per share calculated by Mercer and approved by

9

Mr. Mulkey, along with the cash in her account." Dkt. 101 at 11 (citing *id.* (Ex. A)).[7] So after August 24, 2018, she "no longer held any interest in the ESOP, nor was she an ESOP participant." *Id*. They argue that even if Plaintiff proves the Holding Company's transfers of cash from the ESOP after August 24, 2018 or the ESOP assets distribution to participants after August 24, 2018 were prohibited transactions, she cannot establish any personal harm caused to her by those alleged breaches. *Id.*

Defendants argue the same regarding the private offering. "Assuming a private offering involving directors of VCB somehow violated ERISA, [Plaintiff] cannot have been injured by the Defendants' purchase of Holding Company shares because those transactions all occurred after she received her distribution and no longer held any Holding Company shares in the ESOP." *Id.* Defendants also argue that Plaintiff lacks standing "to challenge any of the alleged prohibited transactions involving the transfer of cash from the Holding Company to the ESOP on August 24, 2018, and the distributions from the ESOP to herself and to other participants on that same date." *Id.* at 13.

---

[7] Defendants argue that all of Plaintiff's claims discussed in their motion, except one, discussed later, are "based on discrete fiduciary breaches or prohibited transactions that occurred *after* she received her final distribution from the Plan." Dkt. 101 at 10. They thus assert that "[s]he cannot have been injured by any of that purported wrongdoing, and in fact does not even allege any personal injury to herself." *Id.* at 10–11. Without injury, she would lack standing. *Id.* at 11. Defendant also cites to *Laabs v. Faith Techs., Inc.*, 2021 WL 9440647, at *3 (E.D. Wis. Sept. 30, 2021), *R&R adopted in relevant part*, 2022 WL 3594054 (E.D. Wis. Aug. 23, 2022), *order recommending dismissal in full upon motion for partial reconsideration*, *Laabs v. Faith Techs., Inc.*, No. 1:20-cv-01534 (E.D. Wis. Nov. 9, 2022) (Dkt. 51), to support that Plaintiff lacks an injury-in-fact. Dkt. 101 at 11–12. But this case involved a plaintiff who was not a plan participant at the time of an alleged prohibited transaction. *Id.* ("Because the plaintiff was not a Plan participant in 2017, she did not suffer any particularized injury to her Plan account from the transaction. Therefore, the plaintiff lacks standing to pursue the prohibited transaction claim."). Thus, this differs from the case at hand. And for reasons discussed below, Plaintiff has alleged enough facts to support injury-in-fact for Article III standing purposes.

But Plaintiff emphasizes the ESOP is a defined-contribution pension plan, rather than a defined-benefit pension plan, which Defendants fail to acknowledge. Dkt. 109 at 14. And the *Thole* Court specifically limited its holding to defined-benefit plans: "[O]f decisive importance to this case, the plaintiffs' retirement plan is a defined-benefit plan, not a defined-contribution plan," and "participants in a defined-benefit plan are not similarly situated to the beneficiaries of a private trust or to the participants in a defined-contribution plan." *Thole*, 140 S. Ct. at 1618, 1619 (internal citations omitted). Courts within the Fourth Circuit have also noted this distinction. *See Jones v. Coca-Cola Consol. Inc.*, No. 3:20-cv-00654, 2021 WL 1226551, at *3–4 (W.D.N.C. Mar. 31, 2021) ("with a defined-contribution plan, where future benefit payments *would* be affected by the outcome of a lawsuit, courts are more likely to find an injury-in-fact sufficient for Article III standing.") (emphasis in original).

Plaintiff argues that if her benefit under the ESOP would be greater than the benefit she received on August 24, 2018, but for Defendants' actions, she has suffered an injury-in-fact sufficient for Article III standing. Dkt. 109 at 12. She contends that, while she "could not sue Defendants for their violations of ERISA in 2018 if she had received a full distribution of her ESOP account in 2016, long before the violations occurred," she "was a participant in 2018 and was 'concretely harmed' by Defendants' breach of their fiduciary duties to the ESOP participants at that time." *Id.* And the Supreme Court has recognized Congress adopted the ERISA § 406 prohibited transaction provisions to prevent plans from engaging in transactions that benefit parties at the expense of plan participants. *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241–42 (2000); *see also C.I.R. v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993) ("Congress' goal was to bar categorically a transaction that was likely to injure the pension plan.") (internal citation omitted).

11

Plaintiff alleged that Defendants breached their fiduciary duty to ESOP participants by choosing to use the ESOP stock for their personal benefit instead of following the independent trustee's distribution procedure. She argues that she "has individually suffered a 'concrete' and 'particularized' injury because the amount she received in cash for the Stock in her ESOP account was not based on the contemporaneous valuation to which she was entitled under ERISA, as well as the terms of the Plan document itself," and "[i]f it is established that Ms. Moore's stock had a higher value than $34.65 on August 24, 2018, she has suffered a concrete financial injury from Defendants' actions." Dkt. 109 at 13; Amend Compl. ¶ 161.

She also alleged that the Holding Company, as the ESOP sponsor, offered and sold Plaintiff's ESOP stock in 2018 to the VCB's officers and directors in the private offering at the price of $34.65, and several took this deal. The stock was a plan asset and the Defendants who purchased the stock were parties in interest. So Plaintiff argues that "[t]his private offering violated both ERISA Section 406(a)(1), prohibiting party in interest transactions generally, and ERISA Section 406(b), prohibiting fiduciary self-dealing with plan assets." Dkt. 109 at 14. She asserts that the private offering benefited the ESOP's named fiduciary (the Holding Company) by letting it use plan assets to recoup costs to cash out the benefits, and it benefited the individual Defendants who acquired stock for their personal interests. *Id.*

ERISA is meant to ensure that a participant's funds in her individual account will be managed prudently by the plan fiduciary. 29 U.S.C. § 1104; *see also Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 297 (3d Cir. 2007), *cert. denied*, 552 U.S. 1243 (2008); *In re Mut. Funds Inv. Litig.*, 529 F.3d 207, 215 (4th Cir. 2008). The Third Circuit has noted that the full benefit to which a participant is entitled by a defined-contribution plan is the "value of [her] account unencumbered by any fiduciary impropriety. In other words, ERISA entitles individual-account-

plan participants not only to what *is* in their accounts but also to what *should be* there given the terms of the plan and ERISA's fiduciary obligation." *Graden*, 496 F.3d at 297. The Court finds that Plaintiff alleges enough facts to support such fiduciary impropriate, as she plausibly alleges that Defendants used an inappropriate valuation and engaged in self-dealing for their own enrichment. The Court must next consider whether Plaintiff was harmed by the fiduciary breaches in a concrete and individualized way.

Under ERISA § 403(c)(1), "assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose of providing benefits to participants in the plan and their beneficiaries . . . ." 29 U.S.C. § 1103(c)(1). There are limited exceptions, but these do not apply to a defined-contribution plan. *Id.* Plaintiff argues that this means none of the plan assets could revert to the Holding Company when the plan terminated.

Additionally, each employee's accrued benefit must be accounted for separately. 29 U.S.C. § 1054(b)(3)(B). Plaintiff received cash for her shares, in an amount she argues was probably less than that which she was entitled to receive, and "her Stock remained held in trust for the benefit of the ESOP participants and was required to be accounted for separately from the Stock of the other participants." Dkt. 109 at 16. She argues that "[b]y ignoring the clear instructions of their independent trustee to distribute the Stock (or redeem it using a contemporaneous valuation), Defendants painted themselves into a corner," because the Stock continued to be a Plan asset and any stock transaction remained subject to ERISA's fiduciary duties and prohibitions. *Id.* Moreover, Plaintiff and the other cash-receiving participants "remained the beneficial owners of their Stock." *Id.*

Plaintiff thus argues that she faced a concrete harm when the private offering enriched the Defendants at her expense, as well as the expense of other ESOP participants. *Id.* And § 409(a)

13

of ERISA requires that any losses and ill-gained profits from such fiduciary impropriety be returned to the plan. 29 U.S.C. § 1109(a).[8] Plaintiff suffered another constitutionally sufficient injury in fact in this manner as well.

The Court finds that Plaintiff has sufficiently alleged that the fiduciary breaches harmed her in a concrete and individualized way. Plaintiff alleged that Defendants breached their fiduciary duty to ESOP participants by choosing to use the ESOP stock for their personal benefit instead of following the independent trustee's distribution procedure.  The amount she received in cash for the Stock in her ESOP account was not based on the contemporaneous valuation to which she was entitled under ERISA, as well as the terms of the Plan document itself," and "[i]f it is established that Ms. Moore's stock had a higher value than $34.65 on August 24, 2018, she has suffered a concrete financial injury from Defendants' actions." Dkt. 109 at 13; Amend. Compl. ¶ 161.

She also alleged that the Holding Company, as the ESOP sponsor, offered and sold Plaintiff's ESOP stock in 2018 to the VCB's officers and directors in the private offering at the price of $34.65, and several took this deal. The stock was a plan asset and the Defendants who purchased the stock were parties in interest. So Plaintiff argues that "[t]his private offering violated both ERISA Section 406(a)(1), prohibiting party in interest transactions generally, and ERISA Section 406(b), prohibiting fiduciary self-dealing with plan assets." *Id.* at 14. She asserts that the private offering benefited the ESOP's named fiduciary (the Holding Company) by letting

---

[8] Plaintiff also distinguishes the situation from *Thole*, explaining that "[u]nlike the plaintiffs in *Thole*, each plan participant who was affected by the Defendants' fiduciary misconduct is entitled to an allocation of the funds returned to the Plan," and "Ms. Moore is such an affected participant." Dkt. 109 at 16.

it use plan assets to recoup costs to cash out the benefits, and it benefited the individual Defendants who acquired stock for their personal interests. *Id.*

Based on the facts alleged, Plaintiff has suffered two concrete injuries, supporting her Article III standing. First, she was entitled to receive a benefit based on the contemporaneous value of her stock as of August 24, 2018, but she did not. Second, she was a victim of fiduciary self-dealing. Prevailing in her case could entitle her to an ESOP benefit greater than that which she received in 2018.

### 2. Redressability

As discussed, Plaintiff has asserted claims under ERISA § 502(a)(2) and (3), 29 U.S.C. § 1132(a)(2) and (3). Amend. Compl. ¶ 23. Under § 502(a)(2), participants can sue for "appropriate relief" under § 409. Under § 502(a)(3), participants can sue for "other appropriate equitable relief." The § 502 "'catchall' provisions act as a safety net, offering appropriate equitable relief for injuries that § 502 does not elsewhere adequately remedy." *Varsity Corp v. Howe*, 516 U.S. 489, 512 (1996).

Defendants argue that, as a former participant, Plaintiff could not demonstrate that she has an injury that is redressable by this Court because she cannot show either 'a reasonable expectation of returning to covered employment or . . . a colorable claim to vested benefits.'" Dkt. 101 at 15 (citing *Firestone Tire Co. & Bruch*, 489 U.S. 101, 117 (1989) (internal citations and quotations omitted); *see also Dickerson v. Feldman*, 426 F. Supp. 2d 130, 135–36 (S.D.N.Y. 2006 ("Prior to commencement of this lawsuit, Plaintiff took himself outside the zone of interests protected by ERISA by cashing out of the Plan and thus becoming a non-participant.")).

But in suits brought pursuant to ERISA § 502(a)(2), those who bring suit do so on behalf of the plan and the plan takes legal title to any recovery. *Mass. Mut. Life Ins. Co. v. Russell*, 473

15

U.S. 134, 142, 142 n.9, 144 (1985) ("A fair contextual reading of the statute makes it abundantly clear that its draftsmen were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than with the rights of an individual beneficiary."). ERISA § 409(a) lays out remedies for a breach of a fiduciaries' duties under § 502(a)(2):

> Any person who is a fiduciary with respect to a plan who breaches *any* of the responsibilities, obligations, or duties imposed upon fiduciaries by this title shall be personally liable to make good to such plan *any* losses to the plan resulting from such breach, and to restore to such plan *any* profits of such fiduciary which have been made through the use of assets of the plan by the fiduciary, and shall be subject to such other equitable relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a) (emphasis added). As such, the recovery "inures to the benefit of its participants and beneficiaries." *Graden*, 496 F.3d at 295. And the "'benefits' are simply the money to which a person is entitled under an ERISA plan." *Id.* at 297.

Plaintiff seeks a two-fold remedy. Dkt. 109 at 18. She first wants someone to "confirm she received the correct value for the stock allocated to her account as of August 24, 2018." *Id.* She also wants "an accounting for profits." *Id.* The Fourth Circuit has described an accounting for profits as "the profit the [defendants] made using [plaintiff's] assets." *Pender v. Bank of Am. Corp.*, 788 F.3d 354, 364 (4th Cir. 2015). It is an equitable remedy available under § 502(a)(3) when a plaintiff "seek[s] profits generated using assets that belonged to them," and "Section 502(a)'s other subsections do not afford [her] any relief." *Id.* at 365.

Plaintiff has alleged enough to show, at this stage of litigation, that (1) she was harmed by Defendants' self-dealing, and (2) the injury can be redressed, based on ERISA's provisions, by providing Plaintiff her share of those profits. ERISA § 502(a)(2)'s remedy is to restore the plan to the position it would have been in but for the fiduciary duty breach. ERISA § 403(a) requires that the assets of a defined-contribution plan cannot revert to the employer. Instead, all

16

affected participants must receive the recovered funds. And Plaintiff alleges enough to show that this includes her and the other participants who received a 2018 distribution, "since each prohibited transaction involved shares of Stock they beneficially owned." Dkt. 109 at 18. After all, as discussed above, she has alleged that "the amount she received in cash for the Stock in her ESOP account was not based on the contemporaneous valuation to which she was entitled under ERISA, as well as the terms of the Plan document itself," and "[i]f it is established that Ms. Moore's stock had a higher value than $34.65 on August 24, 2018, she has suffered a concrete financial injury from Defendants' actions." Dkt. 109 at 13. She thus meets the redressability element of Article III standing.

### B. Statutory Standing

Defendants also argue that Plaintiff's claims challenging the actions that took place after she received a full distribution of her ESOP account should be dismissed because she lacks statutory standing. Dkt. 101 at 15. The Fourth Circuit has recognized that the statutory standing inquiry addresses "whether the plaintiff 'is a member of the class given authority by a statute to bring suit . . . .'" *CGM, LLC v. BellSouth Telecom., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (quoting *In re Mut. Funds Inv. Litig.*, 529 F.3d at 216). This is a question of statutory interpretation, and "whether the statutory language provides a clear answer, [the] analysis begins and ends with that language." *Id.* at 52–53 (quoting *Wilmington Shipping Co. v. New Eng. Life Ins. Co.*, 496 F.3d 326, 339 (4th Cir. 2007)).

Plaintiff brings her claims under ERISA § 502(a), 29 U.S.C. § 1132(a). Amend. Compl. ¶ 23. These provisions authorize suit by three sets of private parties to recover benefits due under a plan's terms or to obtain appropriate relief for a fiduciary breach: plan participants, beneficiaries, and fiduciaries. *See* 29 U.S.C. §§ 1132(a)(1), (a)(2), (a)(3). Plaintiff sues as an

17

ESOP participant. Amend. Compl. ¶ 27. The Supreme Court recognizes a claimant as a participant under ERISA if the claimant either has "a reasonable expectation of returning to covered employment" or "a colorable claim to vested benefits." *Firestone Tire & Rubber Co.*, 489 U.S. at 117 (internal citations and quotations omitted). Further, "even a former employee *who cashed out* his vested benefits in a plan would remain a 'participant,'" and have a claim if the following conditions are met:

> (1) the fiduciaries are 'chargeable with . . . any profit which would have accrued to the [plan] if there had been no breach of trust,' and (2) the participant has a claim that the profits would have increased the benefit to which he would have been entitled had the breach not occurred.

*In re Mut. Funds. Investment Litigation*, 529 F.3d at 215 (citing *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 253 n.4, 255–56, 256 n.6 (2008); *Harzewski v. Guidant Corp.*, 489 F.3d 799, 805–05 (7th Cir. 2007); *Graden*, 496 F.3d at 296–97; *Bridges v. Am. Elec. Power Co.*, 498 F.3d 442, 445 (6th Cir. 2007)). Thus, Plaintiff has alleged more than enough for statutory standing, as her allegations support a "colorable claim to vested benefits." *See Firestone Tire & Rubber Co.*, 489 U.S. at 117 (internal citations and quotations omitted). Other courts—including those cited by Defendants—have found that "[t]he dates on which each plaintiff ceased being a participant, and thus lost standing to assert claims relating to violations of ERISA that occurred after those dates, are the dates on which their benefits were annuitized." *Dupree v. Prudential Ins. Co. of America*, No. 99-8337-Civ.-JORDAN, 2007 WL 2263892, at *34 (S.D. Fla. Aug. 7, 2007). However, based on this precedent as well, Plaintiff would have 'participant' status for claims related to ERISA violations prior to August 24, 2018, and thus statutory standing.

## Conclusion

For the foregoing reasons, based on the facts alleged, Plaintiff has standing to bring her claims. Defendants' motion will be denied.

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this __30th__ day of March, 2023.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE