# EXHIBIT 1

CONFIDENTIAL

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT COURT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| JANICE A. MOORE, ON BEHALF OF HERSELF AND A CLASS OF ALL SIMILARLY SITUATED PARTICIPANTS IN THE VIRGINIA COMMUNITY BANKSHARES, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Plaintiff,<br><br>v.<br><br>BLUE RIDGE BANKSHARES, INC., SUCCESSOR BY MERGER OF VIRGINIA COMMUNITY BANKSHARES, INC.,<br><br>BLUE RIDGE BANK, NATIONAL ASSOCIATION, SUCCESSOR BY MERGER OF VIRGINIA COMMUNITY BANK,<br><br>A. PIERCE STONE,<br><br>JOHN A. HODGE,<br><br>H.B. SEDWICK, III,<br><br>THOMAS M. CROWDER,<br><br>ANDREW C. HOLZWARTH,<br><br>A. PRESTON MOORE, JR.,<br><br>AMY M. SCHICK, and<br><br>MARK W. SISK,<br><br>Defendants. | No. 3:19-cv-00045 |

**GREGORY K. BROWN REBUTTAL REPORT**
**TO EXPERT REPORT OF PAUL HORN**

May 1, 2023

**CONFIDENTIAL**

## Introduction

This rebuttal report sets forth my opinions for purposes of the above captioned litigation, namely, *Janice A. Moore, on behalf of herself and a class of all similarly situated participants in the Virginia Community Bankshares, Inc. Employee Stock Ownership Plan, Plaintiff v. Blue Ridge Bankshares, Inc., Successor by Merger of Virginia Community Bank, A. Pierce Stone, John A. Hodge, H.B. Sedwick, III, Thomas M. Crowder, Andrew C. Holzwarth, A. Preston Moore, Jr., Amy M. Schick, and Mark W. Sisk, Defendants,* in the United States District Court, for the Western District Court of Virginia, Charlottesville Division, Case No. No. 3:19-cv-00045 (the "Litigation"). This report discusses the Litigation's factual background and a summary of Plaintiffs' allegations and claims pleaded in the Litigation. Thereafter, I provide my opinions regarding the various fiduciary matters involved in the Litigation.

## Assignment and Compensation

Counsel for Defendants, Blue Ridge Bankshares, Inc., and Blue Ridge Bank, NA ("Blue Ridge") Morgan Lewis & Bockius LLP ("MLB") has retained me to provide rebuttal opinions to the expert report submitted by Mr. Paul Horn of WorkPlace Consultants, LLC (the "Horn Report") as an expert in the above captioned matter (the "Litigation") in light of my 47-year career in designing transactions similar to the transactions challenged in the Litigation and representing corporations, selling shareholders, and ERISA fiduciaries in similar transactions.

My compensation for this assignment is at the hourly rate of $875. My compensation is not contingent upon my conclusions or the outcome of the Litigation.

## Summary of Qualifications and Experience

My opinions expressed in this report are based on my over 47 years of practice as an employee benefits, ERISA, and executive compensation lawyer from 1976 to 2023. During this time, I have dedicated the majority of my law practice to working on ESOP transactions, day-to-day governance and plan administration issues, executive pay matters, governmental audits and investigations, refinancings, and ESOP company sales to third parties.

In particular, I have been involved in several hundred ESOP transactions, which include newly-formed and existing ESOPs, purchasing private company shares from shareholders and/or the sponsoring company, ESOP purchases of public company shares from the sponsoring company or on the open market (in some cases as part of a going private transaction), sales by ESOPs to third party purchasers in change of control transactions, refinancing of ESOP debt with banks and insurance company lenders, mergers of ESOP companies, tender offers by ESOPs to sponsoring company shareholders and ESOP terminations with the sponsoring company redeeming shares held by the ESOP. In these transactions, I have represented corporations and boards of directors, lenders, trustees, selling shareholders, independent fiduciaries and plan committees (among others) in a variety of transactional structures, ongoing administrative challenges involving ESOPs, and investigations of ESOP companies brought by the U.S. Department of Labor (DOL). I have acted as an expert witness in federal and state courts in matters involving the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), ESOP transactions, executive employment agreements, executive deferred compensation plans and tax-qualified retirement

CONFIDENTIAL

plans. My curriculum vitae is attached as Exhibit B, which describes, among other things, my expert testimony in the last four years, publications in the last ten years, academic work, and my leadership positions held in various professional organizations.

**Background**

The Virginia Community Bankshares, Inc. Employee Stock Ownership Plan (the "ESOP") was established effective as of January 1, 1983 (VCB028618, VCB023406-49 at VCB023439) by a predecessor entity to Virginia Community Bankshares, Inc. (the "Holding Company") for the benefit of employees of Virginia Community Bank, Inc. ("VCB"). The ESOP was designated to invest primarily in common stock issued by the Holding Company ("Holding Company Stock" or "Stock") (VCB023406-49 at VCB023439).

By agreement dated July 24, 2007, the ESOP borrowed $1,000,000 from VCB (VCB032679), pursuant to a line of credit authorizing up to $1,500,000, for the purpose of funding cash distributions from terminated ESOP participants in amounts equal to the fair market value of Holding Company Stock allocated to their individual accounts under the ESOP. Subsequently, the ESOP loan documents were amended as of November 1, 2008 to increase the line of credit from $1,500,000 to $2,000,000 (VCB034634), pursuant to which the ESOP borrowed an additional $1,000,000. During the period from 2007 through December 2016, VCB made tax-deductible contributions to the ESOP that were used in part to repay the ESOP indebtedness, including contributions above the mandatory 10% of compensation. VCB038684. The maturity date on the loan was extended from December 31, 2012, to December 31, 2017. VCB04115. Each year, as the loan principal was paid down, the shares purchased by the ESOP with the loan proceeds were released from a loan suspense account in accordance with the terms of the ESOP and regulations issued by the DOL and Internal Revenue Service ("IRS") and then allocated to the accounts of individual ESOP participants. The last ESOP contribution in December 2016 was used to make the final payment on the ESOP loan and release and allocate the remaining loan suspense account shares as of December 31, 2016. (VCB004027; Deposition of A. Preston Moore, January 17, 2023, 40:13-41:10).

At all relevant times (2006-2016) the ESOP Trustees (Stone, Hodge and Sedwick) engaged a valuation firm or firms to annually advise them of the fair market value of the Holding Company Stock held by the ESOP. In 2016, Pamela Stone succeeded Pierce Stone as a Trustee until her resignation as a Trustee in connection with the ESOP termination (VCB039852). The valuation firms were furnished financials and projections each year (Deposition of Amy Schick, January 23, 2023, 161:5-22, 171:19-21). The ESOP Trustees also engaged their own legal counsel, Troutman Sanders (VCB034710) who they consulted with from time to time (VCB026219, Deposition of A. Pierce Stone, March 23, 2023, 116:23). The fair market value appraisals received and approved by the ESOP Trustees were used for purposes of Stock purchases and sales and distributions to ESOP participants and for annual reporting on IRS Form 5500.

Davenport Financial Advisors, LLC ("Davenport") performed valuations of the Stock as of December 31, 2004 (MOORE_SDT-DAVENPORT001517), December 31, 2005 (VCB002622), and December 31, 2007 through 2015 (VCB029367, VCB029395, VCB029424, VCB029455, VCB009381, VCB026563, VCB026593, VCB034227, VCB034254, VCB015111).

**CONFIDENTIAL**

My understanding is that Davenport was unavailable to perform the Stock Valuation as of December 31, 2006. Deposition of A. Pierce Stone, March 23, 2023 182:11-16, 186:5-7.

Howe Barnes was engaged to perform the valuation as of December 31, 2006, and issued a letter dated March 19, 2007, to the ESOP Trustees expressing its conclusions of value. VCB026234-5. This letter indicated that Howe Barnes determined that the fair market value of the Stock held by the ESOP was $55 per share.

On September 20, 2016, the Board of Directors met and approved the termination of the ESOP, effective December 31, 2016 (VCB007389). Thereafter, upon the advice and the recommendation of the consulting firm, ESOP Services, Inc., the Holding Company and VCB engaged Michael Mulkey on November 17, 2017 as an independent trustee (the "Successor Trustee") for purposes of the ESOP termination, replacing the prior ESOP Trustees (VCB033984, VCB064653). The termination was announced to participants by a message from A. Preston Moore dated November 29, 2016, together with explaining materials. (VCB013856, VCB013858). Mr. Mulkey engaged his own independent valuation firm, Mercer Capital, LLC ("Mercer Capital") and his own legal counsel, Richard Mapp of Kaufman & Canoles, P.C.

In July 2017, the Holding Company and Atlantic Bay Mortgage Group ("Atlantic Bay") announced they would merge pending regulatory approval. The Holding Company also applied to the IRS for a final determination letter on the tax-qualified status of the ESOP and delayed distributions to ESOP participants until it received a favorable letter from the IRS on December 4, 2017. Upon receiving the letter and in light of the pending merger with Atlantic Bay, it is my understanding that Mr. Mulkey determined that distributions should be based on a valuation of the Stock as of December 31, 2017, and possibly updated with a "bring-down" letter and fairness opinion depending on the proximity of the anticipated merger closing date to the ESOP distribution date. In July 2018, Mercer Capital issued a valuation report concluding that the ESOP stock value as of December 31, 2017, was $34.65 per share (VCB045246).

On August 13, 2018, the Holding Company withdrew from its proposed merger agreement with Atlantic Bay because of difficulties in obtaining regulatory approval. (See Atlantic Bay Mortgage Group Virginia Community Bank terminate merger, S&P Global Market Intelligence, August 13, 2018). On August 21, 2018, ESOP participants were provided ESOP distribution election forms offering them the option to cash-out their ESOP stock at $34.65 per share or to elect in-kind distributions of Stock. (See, for example, VCB007227 and MOORE 001758-76). The cover letter to the election forms told ESOP participants of the Board's intent to stay independent, noting that the Board did not seek the Atlantic Bay opportunity and at the present time was not considering any other transactions but could still be subject to other unsolicited offers. Distributions were made to ESOP participants in accordance with their election during August through October 2018. Most participants elected to receive cash (or to rollover cash on a tax-deferred basis to an individual retirement account, as did Janice Moore), while 12 persons elected to receive Stock, including some of the individual Defendants in this Litigation. (VCB002588). The CEO of VCB at the time, had expected that more participants would elect stock distributions given the positive trend in the Stock's value. Deposition of A. Preston Moore, January 20, 2023, 43:16-21.

**CONFIDENTIAL**

Upon completion of the ESOP termination, Mr. Mulkey's services were terminated (VCB007227). A private offering of Stock to certain individuals was approved by the Board on September 18, 2018, and a subscription agreement was sent to potential investors beginning on September 24, 2018, at a price of $34.65 per share, the same price as the distribution value used for distributions to ESOP participants (VCB002047-87 at VCB002081).

On February 9, 2019, the Holding Company Board engaged Sandler O'Neill & Partners to conduct a search for merger partners (VCB067249). Thereafter, a definitive agreement of merger with Blue Ridge Bankshares, Inc. was announced on May 14, 2019, with merger consideration of at least $58.00 per share. After regulatory and shareholder approval, the merger was subsequently closed in December 2019. (Merger Completion Announcement).

### Allegations and Claims

The Complaint alleges one count against all Defendants for breach of ERISA fiduciary duties and a second count against all Defendants for engaging in prohibited transactions under ERISA.

Count I specifically alleges that Defendants (i) failed to follow procedures necessary to determine the fair market value of Holding Company Stock distributed from and sold to the ESOP, (ii) caused the ESOP to pay more than adequate consideration for the repurchase of Holding Company Stock, (iii) failed to discharge their duties with respect to the ESOP solely in the interests of the ESOP participants and for the exclusive purpose of providing benefits to such participants, and (iv) engaged in self-dealing to enrich themselves at the expense of ESOP participants.

Count II alleges that all Defendants entered into numerous ESOP transactions in 2007 and 2008 that were prohibited transactions at prices that exceeded adequate consideration and were non-exempt loan transactions. It further alleges that any compensation received by the Holding Company, VCB, or the individual Defendants in connection with the 2007 and 2008 loans was a prohibited transaction that was ongoing from 2007-2016, when the final contribution was made to the ESOP to retire the loans. Finally, Count II alleges that all Defendants entered into numerous ESOP transactions prohibited under ERISA after 2008, including, without limitation, in 2018, in connection with the ESOP termination, the final distribution of stock and cash from the ESOP and the sale of Stock held by the ESOP to themselves in the private offering capital raise.

### Opinions

Based on my review of pleadings, documents produced in this case, and deposition testimony (including as cited throughout this report and in Exhibit A), my knowledge and my experience in advising and counseling clients including, but not limited to, plan sponsors, boards of directors (and board committees), plan committees, ESOP trustees, and independent ERISA and ESOP fiduciaries, the following are my rebuttal opinions and observations with respect to the Horn Report:

#### Overall Record

1. My review of the record in this Litigation does not indicate to me that either the ESOP Trustees, the Holding Company, VCB or any of the other Defendants, (a) caused the ESOP to

CONFIDENTIAL

enter into a prohibited transaction, (b) hid any breach of fiduciary duty from the ESOP participants or their beneficiaries or the U.S. Department of Labor, (c) used his, her, their, or its position to enrich himself, itself or themselves, or (d) engaged Howe Barnes in order to manipulate a value to benefit any specific person or persons such as Ronald Spicer.

### The ESOP's Trustees

2. It was usual and customary in the 2007-2016 period for a relatively small employer such as the Holding Company and VCB to have individual, internal trustees of its ESOP, as opposed to an external trustee.  During this period, two of the three individual ESOP Trustees (Hodge and Sedwick) were not officers or employees of VCB or the Holding Company. Pamela Stone, upon replacing Pierce Stone as a Trustee in 2016, was also not an officer or employee of VCB or the Holding Company.  The use of a committee of three trustees, the majority of whom (and from 2011-2016, all of whom) were non-employee outside directors, mitigated any potential conflicts of interests until the internal Trustees were replaced in 2017 by Michael Mulkey, an external trustee.

### 2006 Annual Valuation Conducted by Howe Barnes

3. In considering a proposed transaction such as the 2007 and 2008 loans to the ESOP to fund repurchases of Stock from the account balances of terminated participants, it is usual and customary for the ESOP Trustee(s) to engage an independent financial advisor and independent law firm.  With respect to the 2007 ESOP loan, the ESOP Trustees had the benefit of the March 29, 2007, valuation opinion letter from Howe Barnes and consulted with Troutman Sanders as its independent law firm on matters concerning the ESOP loan. Deposition Transcript of A. Pierce Stone, March 23, 2023 175:11-176:25 With respect to the 2008 amendment of the ESOP Loan documents the Trustees had Troutman Sanders available to consult with. A. Pierce Stone, who was an officer and director of the Holding Company and VCB during this time frame, were very familiar with the operations and financials of the Holding Company and VCB, as were Hodge and Sedwick.

The December 31, 2006 Howe Barnes valuation letter to the ESOP Trustee considered earnings, projections, comparable market prices and recent subject company stock transactions in its valuation. The letter further indicated that Howe Barnes prepared a "supporting documentation report" that was available upon request.[1] These are the core elements that the Trustees needed to assess value. All of this is confirmed in the Expert Report dated March 31, 2023, and submitted by Andrew D. Richmond in the Litigation on behalf of Defendants (the "Richmond Report") . Thus, while the letter does not follow the "typical" appraisal report format with a table of contents and description of the employer and industry, as described in the Horn Report, it contained the core elements that the Trustees could rely on in establishing value. Moreover, during the 2006-2008 time frame at issue in this Litigation, in my experience, it was customary for valuation reports to be delivered in a "slide deck format" that did not follow the formal appraisal report format that Horn describes.  The format of the Howe Barnes valuation letter is consistent with the format that was customary during the relevant time frame.

---

[1] It is my understanding that the supporting documentation cannot be located and is thus not available to any party in this Litigation.

CONFIDENTIAL

While the Horn Report criticizes the December 31, 2006 value conclusion of Howe Barnes, I note that the Richmond Report concludes that such value conclusion was within a reasonable range of indicated values based on the methodologies disclosed in the December 2005 and 2007 valuation reports prepared by Davenport.

Further, the Richmond report (at page 17) points out that the global financial crisis began impacting banks and financial institutions by the end of 2007 such that the Dow Jones U.S. Select Regional Index decreased 26% and 34%, during 2007 and 2008, respectively. The declines in the Holding Company's value per share by the end of 2007 and 2008 were consistent with the declines in its Dow Jones Regional Bank Stock Price Index.

In sum, contrary to Horn's opinions, this record does not reflect that the Howe Barnes valuation report was "purposefully inflated." Horn Report at 15. The ESOP trustees engaged respected valuation and legal professionals to assist with the 2006 valuation, as is consistent with industry standards and practices. The Howe Barnes report reflected that Howes Barnes considered and analyzed VCB financial information, including its earnings, projections, comparable market prices and recent subject company stock transactions when forming the conclusions of value. The report contained the core information that the ESOP Trustees needed to vet its conclusions, and the report's format was consistent with industry standards and practices at the time. The Richmond Report, an independent assessment of the conclusion of value that Howe Barnes reached, indicates that Howe Barnes' value conclusion was within a reasonable range of values, and the subsequent decline in the price of Holding Company stock is consistent with economic conditions at the time.

### ESOP Loans: 2007-2008

4. The use of ESOP loan proceeds to make the large repurchases of Stock by the ESOP during 2007 and 2008 were necessary because the amount needed to fund those repurchases exceeded the amount of current tax-deductible contributions to the ESOP and accumulated ESOP liquidity to meet those obligations.[2] The Holding Company and VCB could have handled the excess repurchase obligations by redeeming those shares. However, such redemptions would have reduced the number of shares outstanding and potentially caused value per share to rise over time at a faster rate than aggregate equity value, a consequence that most ESOP companies prefer to avoid. (ESOP Economics, "Releveraging as a Tool for Managing ESOP Repurchase Obligations," 2017, at 2, available at https://www.esopeconomics.com/single-post/2014/10/06/releveraging-as-a-tool-for-managing-esop-repurchase-obligations) As an alternative, many ESOP companies cover the excess repurchase obligations with a loan from the company or an affiliate to the ESOP. The shares repurchased in this manner are placed in a loan "suspense account" and released as the loan is repaid through future contributions (and dividends) to the ESOP. This avoids reallocating a large number of shares to participants in a single year and is a way to manage benefit levels and

---

[2] Section 404(a) of the Internal Revenue Code limits the amount of tax-deductible contributions to an ESOP to 25% of aggregate participant compensation. If that limit is exceeded, an excise tax of 10% is imposed on the employer pursuant to Code Section 4972. The 10% of compensation VCB contribution to the ESOP for 2007 was $249,682.67, which implies aggregate participant compensation of $2,496,826; 25% of that aggregate compensation amount is $624,206.50, which is short of the $1,476,165 of repurchases in 2007, even when dividends of $122,551 are added in. VCB003360

CONFIDENTIAL

repurchase liability, while avoiding a reduction in the number of shares outstanding. This is consistent with the actions taken by the Holding Company, VCB and the ESOP Trustees.

5. The Horn Report criticizes the ESOP's use of loan proceeds to make intra-plan purchases of Stock from the accounts of terminated participants at appraised values from the immediately preceding December 31. In other words, Horn opines that the only way to structure the 2007 and 2008 loans was to distribute shares to participants, have the company redeem the shares, and then re-sell those shares to the ESOP in a leveraged transaction. In my experience, the intra-plan process used here is also used by some ESOPs to efficiently process cash redemptions and distribute cash to participants.

The diagram below illustrates how the intra-plan process worked here. The ESOP used the loan proceeds to acquire Stock from the accounts of terminated vested participants and cash-out those participants, with such Stock pledged as collateral for the ESOP loan. The Stock was then placed in a loan "suspense account" within the ESOP for release and allocation to ESOP participants' accounts in the future, as Company contributions (and dividends) paid to the ESOP are used to repay ESOP debt.

<u>Re-Leveraging Illustration</u>



Note: Ultimate source of funds for the loans in 2007 and 2008 was the Holding Company (VCB032682)

There is no legal authority that suggests this structure is improper. In substance, it yields the same result as a distribution-redemption-sale structure. In my experience, many plans use a similar intra-plan process for purposes of ESOP diversification elections and re-balancing and re-shuffling of account balances within an ESOP and in a unitized stock fund.[3] Its use here was consistent with industry standards and practice at the time.

---

[3] Through intra-plan transfers, ESOPs use cash in the plan to move employer stock from accounts of participants to other participants either through "rebalancing" or "reshuffling". "Rebalancing" is the periodic mandatory transfer of employer stock among participants' accounts with the result that all participants have the same proportion of employer stock to other investments. For example, if the ESOP Trust invested 70 percent in employer stock and 30 percent in other investments, after rebalancing, each participant's ESOP account would be invested 70 percent in

8

### Ronald Spicer Distribution

6. Even though the Horn Report maintains that Ronald Spicer was still employed by VCB through 2013 and not eligible for an ESOP distribution until that time, I have seen no evidence to support that contention (nor does Mr. Horn cite any evidence). A "Payroll Status Change" form submitted by Amy Schick to the VCB payroll department notes that Mr. Spicer had retired and subsequently, effective January 1, 2007, was employed at VCB in a part-time status (VCB062229). Ms. Schick further testified that Mr. Spicer retired in December of 2006, started working part-time in January of 2007, and ceased employment with VCB entirely later in 2007. (Schick Individual Dep. at 50:20-51:15). I also note that the Virginia Community Bankshares, Inc. 2007 Annual Report does not include Mr. Spicer's name as either an officer of VCB or an employee of VCB under "Employees As Of December 31, 2007" (VCB004818, VCB004841-42).

### ESOP Termination

7. It is usual and customary when terminating an ESOP to appoint an independent trustee of the ESOP to protect the best interests of ESOP participants and their beneficiaries and for that independent trustee to appoint its own valuation advisor and law firm. This is the process that the Holding Company and VCB took when Michael Mulkey was appointed as successor trustee (the "Successor Trustee") to the ESOP Trustees in 2017 (VCB064653-54, VCB064551). It is my understanding that Mr. Mulkey then engaged Mercer Capital as the ESOP's independent appraiser and Richard Mapp of Kaufman & Canoles as the legal advisor to the ESOP. Both Mercer Capital and Mr. Mapp are well-respected and experienced in the employee stock ownership community. Mercer Capital prepared the annual valuation of the Holding Company as of December 31, 2017, which value was ultimately used for purposes of cashing-out ESOP participants pursuant to the termination of the ESOP. It is my understanding that Mr. Mapp consulted with and advised Mr. Mulkey as needed in this process.

8. It is also usual and customary for the plan sponsor to apply for a determination letter from the IRS that the termination of the ESOP does not adversely affect its prior tax-qualified status under the Internal Revenue Code. While waiting for such determination letter to be issued by the IRS, it is also usual and customary to defer the final distributions to participants until that letter has arrived. It is my understanding that this process was followed and the IRS did issue the final determination letter in December 2017.

9. It is also usual and customary for a plan sponsor to defer ESOP distributions while a publicly-announced proposed merger awaits regulatory and shareholder approval in order to assure that ESOP participants receive the same merger proceeds as their non-ESOP shareholders of the plan sponsor. It is my understanding that this was the route taken by the Holding Company, VCB and the Successor Trustee while regulatory approval of the proposed merger of the Holding

---

employer stock and 30 percent in other investments. "Reshuffling" is the involuntary exchange of employer stock held in the plan account of one or more participants for cash or other assets allocated to the accounts of one or more other plan participants. When used, the accounts of former participants are divested of their employer securities, while the stock accounts of currently employed participants are increased. Unitized stock funds are used by public company 401(k) plans which permit employees to direct that a portion of their plan accounts be invested in company stock; as participants elect in and out of the fund, units are moved between accounts without shares leaving the plan.

CONFIDENTIAL

Company and Atlantic Bay was pending before the Holding Company withdrew from the proposed merger because of regulatory approval concerns.

10. Upon cessation of the pending Atlantic Bay merger, it was usual and customary for the ESOP plan sponsor to move forward with final distributions made to ESOP participants in accordance with their written directions at a share price approved by the Successor Trustee. This in fact was done in this matter, with distributions made to participants in the August through October 2018 time frame at $34.65 per share, the December 31, 2017 appraised price set forth in the Mercer Capital valuation report. All participants were given the option to receive cash or Stock, or to rollover their cash into an individual retirement account, which is the option elected by Janice Moore. (VCB002588). The Horn Report opines that participants electing a cash distribution should have received Stock first, with participants later putting the shares to the Holding Company pursuant to an updated valuation. Horn Report at 30-31. Had the cash distributions been structured in that manner, there is no evidence in the record that participants would have received anything more than the $34.65 per share of the December 31, 2017 value. Indeed, the Richmond Report concludes that the $34.65 value was a reasonable value for the cash distributions at the time they were made (at page 12).

### Department of Labor Investigation

11. It is noteworthy that while the ESOP termination process was pending, Janice Moore had frequent phone calls and correspondence with representatives of the DOL (MOORE000797, 000799, 000802, 000806, 000808, 000810) and that the DOL launched an investigation into the ESOP with a formal document request sent to the Holding Company and VCB (VCB027072, 001049). The requested documents were submitted to the DOL in 2018 and since that time the DOL has taken no action and has made no other inquiries. (VCB035912, 001048). In my experience with DOL investigations, investigators will aggressively pursue enforcement actions against ESOPs when the DOL believes ERISA violations have taken place.[4] Given this approach to investigations, a reasonable inference can be made here that the DOL did not believe that enforcement actions against the Holding Company or VCB were necessary because no wrongdoing had occurred.

### Blue Ridge Merger

12. In my experience advising company boards on their obligations to disclose pending merger opportunities with ESOP participants and trustees, a board does not disclose a potential merger unless it is under serious consideration. Serious consideration means that a *specific* proposal is being discussed for purposes of implementation by senior management or the board of directors, depending upon who had the authority to implement the proposal. Here, at the time that the final ESOP distributions took place, from August-October 2018, there was no merger under serious consideration that warranted disclosure to ESOP participants or the Successor Trustee. Prior to February 6, 2019, the Board had a strong sentiment to remain independent and had not engaged an investment banker to seek merger partners. (Deposition of Andrew C. Holzwarth, January 20, 2023, 42:6-18; VCB030521-47). The Board did not engage an investment banker until February

---

[4] The Department of Labor website for EBSA (Employee Benefit Services Administration) states that since 2005 EBSA has maintained an ESOP National Enforcement Project that identifies and corrects violations of ERISA in connection with ESOPs.

CONFIDENTIAL

6, 2019 (VCB067249). Prior to February 2019, no letter of intent or preliminary indication of interest existed between the Holding Company and Blue Ridge or any other potential merger partner. It was not until February 2019 (6 months after the ESOP was liquidated) that the Holding Company Board of Directors began to consider a potential merger (Deposition of Andrew C. Holzwarth, 84:13, 85:6-9) and not until 3 months later that the proposed merger with Blue Ridge was publicly announced, pending regulatory approval and shareholder approval thereof. (VCB067249). Regulatory approval was not assured upon announcement, especially in light of the Atlantic Bay merger failure. The merger closed in December 2019, more than a year after the final ESOP distributions in October 2018. Under these circumstances, there was no specific transaction under serious consideration at the time of the final ESOP liquidation and distribution process in August through October of 2018. The Holding Company Board of Directors had nothing to disclose to ESOP participants or the Successor Trustee besides mere speculation.

13. The Horn Report criticizes the Holding Company Board for not disclosing to the ESOP participants and Successor Trustee that a private placement of Holding Company shares was under consideration and approval at the same price as the price at which ESOP participants' account balances were being liquidated. It would not be usual or customary for a Board of Directors to disclose such private placement to participants where such private placement would in no way affect the amounts distributed to participants pursuant to the ESOP termination and, in fact, was being used in part to fund the cash distributions to ESOP participants.

I reserve the right to expand or modify these opinions as additional information becomes available.

May 1, 2023

*Gregory K Brown* (signature)

———————————————
Gregory K. Brown

Exhibit A

## Documents Considered

In conducting my analysis and forming my opinions in this case, I had access to the operative First Amended Class Action Complaint, all documents produced by the parties and third parties via access to Relativity, and all deposition transcripts and exhibits.

I reviewed, considered, and relied upon a number of those documents in reaching my opinions in this case, including as cited in my report and the following:

- 2001 Adoption Agreement and Plan Document (VCB028618)
- 2004 Valuation (MOORE_SDT-DAVEPORT001517)
- 2005 Annual Report (VCB002298)
- 2005 Valuation (VCB002622)
- 2006 Annual Report (VCB002327)
- 2006 Reconciliation Worksheet & Account Statements (VCB003322)
- 2006 Valuation (VCB026234)
- 2006 Valuation Engagement (VCB026239)
- 2006 Valuation Info Request (VCB026237)
- 2007 Annual Report (VCB004815)
- 2007 Loan Agreement and File Memo (VCB032679)
- 2007 Reconciliation Worksheet & Account Statements (VCB003353)
- 2007 Valuation (VCB029367)
- 2007.07.07 Email from W. Starke to P. Stone re ESOP Loan (VCB026219)
- 2007.07.13 Troutman Engagement Letter re ESOP Loan (VCB034710)
- 2008 Annual Report (VCB004655)
- 2008 ESOP Loan Document (VCB034634)
- 2008 Reconciliation Worksheet & Account Statements (VCB003414)
- 2008 Valuation (VCB029395)

CONFIDENTIAL

- 2008.02.28 Letter from Amy Schick to WyStar (VCB024043)
- 2008.03.12 Email Chain Between A. Schick & W. Starke (VCB026177)
- 2008.08.28 Email from W. Starke to A. Schick (VCB026209)
- 2008.11.01 First Amendment to Loan Agreement (VCB032645)
- 2009 Annual Report (VCB004693)
- 2009 Reconciliation Worksheet & Account Statements (VCB003485)
- 2009 Valuation (VCB029424)
- 2010 Annual Report (VCB004776)
- 2010 Valuation (VCB029455)
- 2011 Annual Report (VCB004730)
- 2011 Plan Adoption Agreement (VCB010888)
- 2011 Plan Document (VCB026287)
- 2011 Reconciliation Worksheet & Account Statements (VCB003613)
- 2011 Valuation (VCB009381)
- 2012 Annual Report (VCB004844)
- 2012 ESOP Loan Refinance (VCB041115)
- 2012 Reconciliation Worksheet & Account Statements (VCB003676)
- 2012 Valuation (VCB026563)
- 2013 Annual Report (VCB035188)
- 2013 Reconciliation Worksheet & Account Statements (VCB003760)
- 2013 Valuation (VCB026593)
- 2013.06.19 Letter from WyStar to A. Schick (VCB050672)
- 2013.06.28 Letter from P. Moore to Participants (VCB038684)
- 2014 Annual Report (VCB009997)

**CONFIDENTIAL**

- 2014 Reconciliation Worksheet & Account Statements (VCB003846)
- 2014 Valuation (VCB034227)
- 2015 Annual Report (VCB022784)
- 2015 Reconciliation Worksheet & Account Statements (VCB003936)
- 2015 Valuation (VCB034254)
- 2016 Annual Report (VCB023406)
- 2016 Reconciliation Worksheet & Account Statements (VCB004027)
- 2016 Valuation (VCB015111)
- 2016.09 Inquiry from Janice Moore (VCB029013)
- 2016.09.14 Response from Preston Moore (VCB000342)
- 2016.10.26 Email from Sedwick re ESOP Termination (VCB064651)
- 2016.11.15 Board Resolution re ESOP Trustees (VCB033984)
- 2016.11.29 Email from P. Moore Announcing ESOP Termination (VCB013856)
- 2017 Annual Report (VCB002088)
- 2017 Reconciliation Worksheet & Account Statements (VCB004118)
- 2017 Valuation (VCB045246)
- 2017.02.26 Inquiry from Janice Moore and Response (VCB022883)
- 2018 Annual Report (VCB002047)
- 2018 Valuation (VCB007265)
- Amy M. Schick Condensed 30(b)(6) Deposition Transcript, January 19, 2023
- Board Resolution Terminating the ESOP (VCB007389)
- March 30, 2022 District Court Decision in the Litigation
- Draft ESOP Termination Plan (VCB064645)
- First Amended Class Action Complaint for Violations of The Employee Retirement Income Security Act

**CONFIDENTIAL**

- Forms 5500 2006-2018 (MOORE000946)

- Holzwarth, Andrew C. Condensed 30(b)(6) Deposition Transcript, January 20, 2023

- Howe Barnes Engagement Letter (VCB026239)

- Howe Barnes Information Request (VCB026237)

- Howe Barnes Valuation Letter (VCB026234)

- Janice Moore Condensed Deposition Transcript, September 28, 2022

- Moore Distribution Election Form (VCB002588)

- Moore, Alfred Preston Condensed 30(b)(6) Deposition Transcript, January 17, 2023

- Mulkey Termination Letter (VCB007227)

- Pam Stone ESOP Trustee Resignation (VCB039852)

- Presentation Attached to P. Moore Email (VCB013858)

- Solicitation of M. Mulkey (VCB064653)

- Amy Schick Condensed Deposition Transcript, March 22, 2023

- Harry Benjamin Sedwick, III Deposition Transcript, March 17, 2023

- Payroll Status Change for Ronald S. Spicer, effective 1/1/07, VCB062229

- A Preston Moore, Jr. Deposition Transcript, March 24, 2023

- Review of Strategic Alternatives, July 17, 2018, VCB068295-068323

- Summary Plan Description for Virginia Community Bankshares, Inc. - Employee Stock Ownership Plan, January 2007 Edition, VCB000801-000828

- Summary Plan Description for Virginia Community Bankshares, Inc. – Employee Stock Ownership Plan, January 2012 Edition, VCB030521-030547

- Sandler O'Neill & Partners engagement letter Virginia Community Bankshares, Inc. Board of Directors dated February 6, 2019, VCB067249-067259

- John A. Hodge Deposition Transcript, March 2023

- Letter from Janice Moore to Margaret McClosky Shank, April 25, 2013, MOORE000795

- Letter from Janice Moore to Keith Graham, May 8, 2017, MOORE000797

- Letter from Janice Moore to Keith Graham, June 21, 2017, MOORE000799

- Letter from Janice Moore to Keith Graham, November 7, 2017, MOORE000802

- Letter from Janice Moore to Keith Graham, March 8, 2018, MOORE000806

- Letter from Janice Moore to Keith Graham, April 11, 2018, MOORE000808

- Letter from Janice Moore to Keith Graham, June 21, 2018, MOORE000810

- Letter from U.S. Department of Labor to Amy Schick, February 6, 2018, VCB027072

- Letter from Jonathan Boyles (Troutman Saunders) to U.S. Department of Labor enclosing requested documents, March 8, 2018, VCB035912

- Letter from Keith Graham to Amy Schick, May 15, 2018, VCB001049

- Letter from Jonathan Boyles to Keith Graham, June 13, 2018, VCB001048

- Expert Witness Report of Paul Horn, March 31, 2023

- Expert Report of Andrew D. Richmond, March 31, 2023

- Deposition Transcript for A. Pierce Stone, March 23, 2023

- ESOP Economics, "Releveraging as a Tool for Managing ESOP Repurchase Obligations", 2017, available at https://www.esopeconomics.com/single-post/2014/10/06/releveraging-as-a-tool-for-managing-esop-repurchase-obligations.

CONFIDENTIAL

Exhibit B

**Curriculum Vitae of**
**GREGORY K. BROWN, Partner**
**Polsinelli PC**
150 North Riverside Plaza, Suite 3000
Chicago, IL 60606-1599
(312) 463-6335
(312) 893-2033 (Fax)
gbrown@polsinelli.com

**Gregory K. Brown** focuses on the practice of Employee Benefits and Executive Compensation. He has experience in all aspects of employee benefits and executive compensation, including extensive work with employee stock ownership plans (ESOPs) and the Employee Retirement Income Security Act (ERISA); he is the author and co-author on numerous articles and is a frequent speaker on ESOPs and all areas of employee benefits and executive compensation. He has also served as an expert witness on various employee benefits and ESOP matters.

Greg is a member of the

American Bar Association,
The ESOP Association of America,
including its Legislative & Regulatory Advisory Committee,
The National Center for Employee Ownership,
Employee-Owned S Corporations of America,
including its Advisory Committee
and
American College of Employee Benefits Counsel

He is the emeritus Chair of the Subcommittee on ESOPs for the Employee Benefits Committee of the Section of Taxation of the American Bar Association; is a past member of The Board of Directors of The ESOP Association; is a past Chair of the ESOP Association Legislative & Regulatory Advisory Committee; is a past Chair of the Employee Benefits Section of the Illinois State Bar Association (past co-editor of the Employee Benefits Section); is a past Chairman of the Employee Benefits Committee of the Chicago Bar Association.

**Profiled:** is profiled in Marquis Who's Who in America (50th through 60th Ed.) and Who's Who in American Law (8th through 14th Ed.); is listed in The Best Lawyers in America (1995-2013); is listed in Chambers USA: America's Leading Lawyers for Business (2007-2014); is listed in Illinois Super Lawyers (2005-2013); recognized as one of "The Most Powerful Employment Attorneys in America (June 2012) by Human Resources Executive magazine; also recognized in 2009 through 2014 as one of the nation's "Top Employment Attorneys" by Human Resources Executive magazine.

**Education: J.D.,** University of Illinois (1976); B.S., University of Kentucky (1973).

**Bar Membership:** Illinois

**CONFIDENTIAL**

I have authored or co-authored the following publications during the last 10 years:

- Holland & Knight Legal Alerts

- Polsinelli Legal Alerts

- "ESOPs Tax Management Portfolio," Bloomberg BNA 354-9th (2017)

- "Fiduciary Lessons from DOL's Win in Employer Stock Case," Law 360, September 9, 2019

- "Division of Retirement Plan Assets Upon Divorce," Illinois Institute for Continuing Legal Education Family Law Handbook, 2023

- "Reaching an Optimal Level of Employee Ownership In a Profit Sharing Plan/401(k) Plan," Section 401(k) Plans and Employee Ownership, Fifth Edition, (Oakland, CA, NCEO 2008)

- "What The Matrimonial Lawyer Needs to Know About Non-ERISA Plans, Executive Compensation, and Other Related Plans," Journal of the American Academy of Matrimonial Lawyers, Vol. 26, page 601, 2014

- "Legal Update," ESOP Report, The ESOP Association, November 2011, March 2013, May 2014, April 2015, August 2016

- "TalkingPoint: Outlook for ESOPs in 2013," Financier Worldwide, April 2013

- "Moench Presumption Marches Forward" New York University Review of Employee Benefits and Executive Compensation 2013, Chapter 15, Matthew Bender & Company, Inc.

- Lexis Practice Advisor, ESOP Plan Design and Compliance

- "Don't Do That," National Center for Employee Ownership (Second Edition, April 2015)

- Lexis Practice Advisor, ESOP Plans in Corporate Transactions

**CONFIDENTIAL**

<u>Exhibit C</u>

| **Type of Testimony** | **Case** |
|---|---|
| I. <u>Trial Testimony</u> | *Martin Walsh, Secretary of Labor, United States Department of Labor v. Sharon L. Heritage, Nicholas L. Saakvitne, a Law Corporation, Brian J. Bowers, Dexter C. Kubota, Bowers + Kubota Consulting, Inc., and Bowers + Kubota Consulting, Inc. Employee Stock Ownership Plan* (the "ESOP") in the United States District Court, for the District of Hawaii, Case No. 1:18-cv-155-SUM-WRP ("*Bowers + Kubota*")<br><br>*Bush v GreatBanc Trust Company*, U.S. District Court of the Northern District of Illinois, Eastern Division, Case No. 1:19-cv-00738 |
| II. <u>Deposition Testimony</u> | *Hugler v. Veronica Mueller, Roger Mueller, et al.*, United States District Court for the Eastern District of Wisconsin, Milwaukee Division, Case No. 2:13-cv-01302<br><br>*Allen v. GreatBanc Trust Company*, United States District Court for the Northern District of Illinois, Eastern Division, Case No. 1:15-cv-03053<br><br>*Innis v. Bankers Trust Company of South Dakota*, United States District Court for the Southern District of Iowa, Central Division, Case No. 4:16-cv-00650-RGE-SBJ<br><br>*Brincefield, et al. v. Studdard, et al.*, United States District Court for the Eastern District of Virginia, Richmond Division, Case No. 3:17-cv-718-JAG<br><br>*Bowers + Kubota (see above)*<br><br>*Godfrey v. GreatBanc Trust Company*, U.S. District Court for the Northern District of Illinois, Eastern Division, Case No.1 1:18-cv-07918<br><br>*Rush v. GreatBanc Trust Company*, U.S. District Court of the Northern District of Illinois, Eastern Division, Case No. 1:19-cv-00738 |

Exhibit C Page 1