## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF VIRGINIA

Janice A. Moore, on behalf of herself and a
class of similarly situated participants in the
Virginia Community Bankshares, Inc.
Employee Stock Ownership Plan,

        Plaintiff,

    v.

Blue Ridge Bankshares, Inc., Successor by
Merger of Virginia Community Bankshares,
Inc., et al.,

        Defendants.

Case No. 3:19-cv-00045

## OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

**MORGAN, LEWIS & BOCKIUS LLP**
Jeremy P. Blumenfeld (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5000
215.963.5001 (fax)
jeremy.blumenfeld@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
Sean K. McMahan (*pro hac vice*)
1717 Main Street, Suite 3200
Dallas, TX 75201
214.466.4000
214.466.4001 (fax)
sean.mcmahan@morganlewis.com

**MORGAN, LEWIS & BOCKIUS LLP**
Deborah S. Davidson (*pro hac vice*)
110 North Wacker Drive
Chicago, IL 60606-1511
312.324.1159
312.324.1001 (fax)
deborah.davidson@morganlewis.com

*Attorneys for Defendants*

**MORGAN, LEWIS & BOCKIUS LLP**
Matthew J. Sharbaugh
Donald L. Havermann (*pro hac vice*)
Oluwaseun O. Familoni (*pro hac vice*)
Mathew J. McKenna (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
202.739.3000
202.739.3001 (fax)
matthew.sharbaugh@morganlewis.com
donald.havermann@morganlewis.com
shay.familoni@morganlewis.com
mathew.mckenna@morganlewis.com

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL
FACTS ............................................................................................................... 3

III.   ARGUMENT ..................................................................................................... 8

    A.    Standard Of Review And Plaintiff's Burden Of Proof. ........................... 8

    B.    Plaintiff's Failure To Proffer Evidence That Any Fiduciary Acted
         Disloyally Mandates Denial Of Her Summary Judgment Motion........................ 9

         1.    Plaintiff does not carry her burden of establishing that the
                Defendant trustees breached their duty of loyalty. .................................... 9

         2.    Plaintiff adduces no evidence the Holding Company acted
                disloyally........................................................................................... 14

    C.    Plaintiff Has Not Carried Her Burden Of Proving That Defendants
         Violated ERISA's Duty Of Prudence By Failing To Monitor The Loans........... 15

    D.    The Loans Complied With ERISA Section 408(b)(3) And Thus Were Not
         Prohibited By ERISA Section 406(a)(1)(B). ....................................................... 19

         1.    The loans were used to acquire qualifying employer securities. ............. 20

         2.    ERISA Section 408(e) is irrelevant because the benefit payments
                did not involve a prohibited transaction.................................................. 22

         3.    The contemporaneous valuation requirement did not apply to the
                loans. ................................................................................................ 23

    E.    Plaintiff Provides No Evidence That The 2018 Benefit Distributions
         Caused A Loss To The ESOP And The Court Should Deny Her Motion
         On This Claim................................................................................................. 25

         1.    Plaintiff's failure to prove a loss to the ESOP mandates judgment
                in Defendants' favor on all claims post-dating August 24, 2018. ........... 26

          2.    The $58 merger price from December 12, 2019, is not a
                contemporaneous value for Plaintiff's distribution that occurred on
                August 24, 2018. ................................................................................. 27

    F.    Plaintiff Proffers No Evidence That The Capital Raise Violated ERISA Or
         That She Has Article III Standing To Challenge It............................................. 29

          1.    The capital raise did not involve ESOP assets and therefore does
                not implicate ERISA's prohibited transaction provisions. ...................... 29

         2.    Plaintiff has not established that any Defendant who participated in
                the capital raise acted in a fiduciary capacity. ........................................ 31

-i-

## <u>TABLE OF CONTENTS</u>
(continued)

**Page**

3.    Plaintiff lacks Article III standing to challenge her benefit distribution and the capital raise. ........................................................... 33

IV.    CONCLUSION ............................................................................................................ 35

# <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Allen v. Credit Suisse Sec. (USA) LLC*,
　895 F.3d 214 ...........................................................................................................32

*Allen v. Wells Fargo & Co.*,
　967 F.3d 767 (8th Cir. 2020) ..................................................................................10

*Brotherston v. Putnam Invests., LLC*,
　907 F.3d 17 (1st Cir. 2018) ....................................................................................10

*Brundle v. Wilmington Tr., N.A.*,
　919 F.3d 763 (4th Cir. 2019) ..................................................................................23

*Burke v. Boeing Co.*,
　42 F.4th 716 (7th Cir. 2022) ..............................................................................32, 33

*Caltagirone v. N.Y. Cmty. Bancorp*,
　257 F. App'x 470 (2d Cir. 2007) .........................................................................34, 35

*Cline v. Indus. Maint. Eng'g & Contracting Co.*,
　200 F.3d 1223 (9th Cir. 2000) ................................................................................14

*Crawford v. Lamantia*,
　34 F.3d 28 (1st Cir. 1994) ......................................................................................15

*David v. Alphin*,
　817 F. Supp. 2d 764 (W.D.N.C. 2011), *aff'd*, 704 F.3d 327 (4th Cir. 2013)...........................16

*Dearing v. IQVIA Inc.*,
　2021 WL 4291171 (M.D.N.C. Sept. 21, 2021)...........................................................8

*DiFelice v. U.S. Airways*,
　497 F.3d 410 (4th Cir. 2007) ..................................................................................17

*Edmonson v. Lincoln Nat'l Life Ins. Co.*,
　725 F.3d 406 (3d Cir. 2013)....................................................................................30

*EEOC v. Jackson Nat'l Life Ins. Co.*,
　2023 WL 2727736 (D. Colo. Mar. 31, 2023) ..........................................................28

*Ellis v. Fidelity Mgmt. Tr. Co.*,
　883 F.3d 1 (1st Cir. 2018).........................................................................................8

*Elmore v. Cone Mills Corp.*,
　23 F.3d 855 (4th Cir. 1994) ...............................................................................9, 27

*In re Fidelity ERISA Float Litig.*,
   829 F.3d 55 (1st Cir. 2016)................................................................29, 30, 31

*Flanigan v. Gen. Elec. Co.*,
   242 F.3d 78 (2d Cir. 2001)........................................................................14, 17

*Gordon v. CIGNA Corp.*,
   890 F.3d 463 (4th Cir. 2018) .........................................................................30

*Harzewski v. Guidant Corp.*,
   489 F.3d 799 (7th Cir. 2007) .........................................................................34

*In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*,
   661 F. Supp. 2d 861 (S.D. Ohio 2009) ..........................................................32

*Hughes Aircraft Co. v. Jacobson*,
   525 U.S. 432 (1999)........................................................................................11

*JKC Holding Co. v. Wash. Sports Ventures, Inc.*,
   264 F.3d 459 (4th Cir. 2001) ...........................................................................8

*LeBlanc v. Cahill*,
   153 F.3d 134 (4th Cir. 1998) ......................................................................8, 22

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................................33

*McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*,
   268 F.R.D. 670 (W.D. Wash. 2010) ..........................................................11, 23

*Miller v. Gaylor*,
   2021 WL 5979530 (W.D. Va. Dec. 17, 2021) ..............................................16

*Pegram v. Herdrich*,
   530 U.S. 211 (2000)........................................................................................32

*Reetz v. Aon Hewitt Inv. Consulting, Inc.*,
   2023 WL 4552593 (4th Cir. July 17, 2023)........................................8, 10, 14

*Sims v. BB&T Corp.*,
   2018 WL 3128996 (M.D.N.C. June 26, 2018) ...............................................9, 34

*Smith v. Sydnor*,
   2000 WL 33687953 (E.D. Va. Aug. 25, 2000)..............................................9, 26

*Stanton v. Gulf Oil Corp.*,
   792 F.2d 432 (4th Cir. 1986) .........................................................................35

*Tatum v. RJR Pension Inv. Comm.*,
   761 F.3d 346 (4th Cir. 2014) ........................................................................9, 28

*Tibble v. Edison Int'l*,
   575 U.S. 523 (2015)......................................................................................16

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021).................................................................................34

*Walsh v. Bowers*,
   561 F. Supp. 3d 973 (D. Haw. 2021) ...........................................................18

*Walsh v. Principal Life Ins. Co.*,
   266 F.R.D. 232 (S.D. Iowa 2010).................................................................32

*White v. Chevron Corp.*,
   2017 WL 2352137 (May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018) .................16, 17

**Federal Statutes**

ERISA Section 403(c)(1); 29 U.S.C. § 1103(c)(1) ........................................................31

ERISA Section 404(a); 29 U.S.C. § 1104(a) ........................................................16

ERISA Section 404(a)(1)(D); 29 U.S.C. § 1104(a)(1)(D)........................................11

ERISA Section 406; 29 U.S.C. § 1106 ........................................................2, 16, 9, 23

ERISA Section 406(a); 29 U.S.C. § 1106(a) ........................................................9, 22, 25

ERISA Section 406(a)(1)(A); 29 U.S.C. § 1106(a)(1)(A)......................................*passim*

ERISA Section 406(a)(1)(B); 29 U.S.C. § 1106(a)(1)(B) ........................................2, 19

ERISA Section 406(b); 29 U.S.C. § 1106(b)........................................................25, 32

ERISA Section 406(b)(1); 29 U.S.C. § 1106(b)(1) ........................................29

ERISA Section 407(a); 29 U.S.C. § 1107(a) ........................................................21

ERISA Section 407(a)(2); 29 U.S.C. § 1107(a)(2)........................................20, 21

ERISA Section 408; 29 U.S.C. § 1108 ........................................................9, 19

ERISA Section 408(b)(3); 29 U.S.C. § 1108(b)(3) ........................................2, 19, 20

ERISA Section 408(e); 29 U.S.C. § 1108(e) ........................................................22, 23

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 56(a) ...................................................................................................8

**Other Authorities**

26 C.F.R. § 54.4975-11(c), (d)(2) ...............................................................................18

29 C.F.R. § 2510.3-18(b) ............................................................................................23

29 C.F.R. § 2550.407a-2(b) .........................................................................................21

29 C.F.R. § 2550.408b-3 ..............................................................................................19

29 C.F.R. § 2550.408b-3(d)(1) .....................................................................................20

29 C.F.R. § 2550.408b-3(j) ...........................................................................................12

29 C.F.R. § 2550.408e(a) ..............................................................................................23

*Black's Law Dictionary* (11th ed. 2019) ....................................................................29

https://www.esopassociation.org/articles/department-labor-agrees-notice-and-
        comment-rulemaking-adequate-consideration-exemption (last visited July 27,
        2023) ...............................................................................................................23

https://www.nceo.org/articles/employee-ownership-by-the-numbers#1 (last
        visited July 27, 2023) .....................................................................................14

William W. Story, *A Treatise on the Law of Sales of Personal Property* § 1 (1853)....................29

## I.     INTRODUCTION

The Virginia Community Bankshares, Inc. Employee Stock Ownership Plan ("ESOP") offered employees of Virginia Community Bank ("VCB") the opportunity to save for retirement by investing in the stock of Virginia Community Bankshares, Inc. (the "Holding Company"), at *zero* cost to the employees. Plaintiff Janice Moore alleges that Defendants violated the Employee Retirement Income Security Act ("ERISA") by mismanaging the ESOP. Discovery is complete and the parties have filed competing summary judgment motions. Plaintiff's Memorandum in Support of Her Motion for Summary Judgment ("Memorandum") fails to offer the necessary evidence to support her claims, asks the Court to make unwarranted inferences, and provides little or no supporting legal authority. The Court should deny that motion and, as explained in greater detail in Defendants' Memorandum in Support of Summary Judgment ("Defendants' MSJ"), grant judgment in Defendants' favor on all claims because there are no disputes of material fact for trial.[1]

Plaintiff moves for summary judgment on five distinct claims. The first involves her allegation that in 2007 and 2008, the ESOP's trustees breached their fiduciary duty of loyalty when they caused the ESOP to take loans from the Holding Company to fund distributions to numerous participants (none of whom are Defendants) who were owed more than $2 million, an obligation the ESOP lacked cash to satisfy. This claim fails. Plaintiff adduces no evidence suggesting the trustees or any other Defendant acted in self-interest when they authorized the loans, a fundamental element for establishing a breach of the duty of loyalty. Instead, the evidence shows the trustees consulted with legal counsel on ways to fund the ESOP's obligations and that the loans were consistent with the terms of ERISA and the ESOP.

---

[1] The Court held there are fact disputes with respect to the argument that Defendants engaged in fraud or concealment, which might render timely Plaintiff's claims arising before August 12, 2013. ECF 131. Because those claims fail on the merits, there is no need for a trial to assess timeliness. If the Court denies Defendants' MSJ, then a trial on timeliness grounds will be necessary.

Second, Plaintiff seeks judgment on her contention that Defendants breached their fiduciary duty of prudence because they did not monitor the loans and ultimately forgive them. This claim fails for a host of reasons. Plaintiff never asserted that claim in her First Amended Complaint ("Complaint"), and she cannot amend her Complaint at this stage to add new claims. Moreover, ERISA does not impose any duty to monitor an alleged prohibited transaction, nor does it require a plan sponsor to forgive an ESOP loan. And Plaintiff bases this claim entirely on impermissible hindsight, namely her contention that the value of Holding Company shares decreased after 2007. A fiduciary's actions are never judged in hindsight.

Third, Plaintiff moves for summary judgment on her claim that the loans violated ERISA Section 406(a)(1)(B), which prohibits loans between the ESOP and the Holding Company. The loans satisfied ERISA Section 408(b)(3) and therefore were not prohibited by Section 406. Plaintiff primarily argues that the loans were not used to "acquire" Holding Company stock, as required by a regulation interpreting Section 408(b)(3), because the transactions involved the intraplan purchase of shares. She premises this argument on her counsel's interpretation of the word "acquire," untethered to any legal authority. The evidence establishes that the trustees consulted with Wallace M. Starke, a now-retired partner at the law firm Troutman Sanders, prior to taking the loans. Mr. Starke prepared loan documents for the trustees which stated, *inter alia,* that the ESOP could take a loan from the Holding Company and then use the loan proceeds for "the **acquisition** of Stock" "by means of intraplan Stock **acquisitions** to raise cash to make ESOP distributions in cash rather than Stock." That is precisely what occurred.

Fourth, Plaintiff argues that benefit distributions in 2018 involving the Holding Company's purchase of shares from the ESOP and subsequent distribution of cash to participants violated ERISA Section 406(a)(1)(A), which prohibits the sale of stock from the ESOP to the Holding

Company. The Court should deny Plaintiff's motion on this claim because—she has not adduced an iota of evidence that the purported violation caused any loss to her ESOP account, or the account of any other putative class member, requiring judgment in *Defendants'* favor.

Fifth, Plaintiff contends that a capital raise in November 2018 violated ERISA's prohibited transaction provisions. The capital raise involved members of the Holding Company's Board of Directors ("Board") purchasing Holding Company stock as a means of replenishing the capital expended in connection with the benefit distributions. Plaintiff alleges Defendants misused "plan assets" because the Board members purchased shares allocated to the ESOP *prior to* their sale to the Holding Company. Plaintiff again provides no legal authority for this argument, which is contrary to ordinary notions of property rights. Once Plaintiff received cash for her shares, she no longer had any ownership interest in those shares. This claim also fails as a matter of law.

## II. RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS[2]

4.      Partially disputed. Mr. Crowder was CFO and COO of VCB from on or about July 17, 2014, through the merger. He was appointed to the Holding Company's Board on November 1, 2018, and served in that role until the merger. ECF 171-78 at ¶ 1; ECF 171-69.

7.      Partially disputed. Ms. Schick had various ministerial roles associated with the ESOP but was not its named administrator. ECF 171-7 at VCB028742. She wrote checks from the ESOP checking account but did so at the direction of the ESOP trustees. Ex. A to Declaration of Sean K. McMahan ("McMahan Decl."), Amy Schick Individual Deposition at 33:3-18 ("when distributions were requested I would work up the distribution, and I would go to Mr. Stone for

---

[2] Defendants utilize the numbering format from Plaintiff's Memorandum. Plaintiff asserts various factual statements that are incorrect but not material, and Defendants do not dispute those for purposes of this opposition but reserve their right to do so at trial. Defendants also incorporate into their response their Statement of Undisputed Facts from their summary judgment brief, ECF 171 at 3-18. Defendants dispute any of Plaintiff's facts that are inconsistent with their statement.

approval that this is the distribution for whoever, and he signed off on it")

11.     The first two sentences purport to paraphrase or quote portions of ERISA, 29 U.S.C. §§ 1001, *et seq.* They are not statements of fact.

18a.     Defendants dispute Plaintiff's statement that the trustees "invested" ESOP assets by "incurr[ing] $1 million in debt." The trustees engaged in intraplan purchases of Holding Company stock and then distributed cash to the participants who had requested a distribution. ECF 171-33 ¶ 21.

18d.     Defendants deny that the trustees "invested" ESOP assets by "incur[ing] an additional $1 million in debt." The trustees engaged in intraplan purchases of Holding Company stock and distributed cash to participants who requested a cash distribution. ECF 171-33 ¶ 21.

18(f).     Disputed that the trustees "assigned" the cost basis. That number was calculated by WyStar, the ESOP's recordkeeper, which determined the blended cost basis of the shares purchased by the ESOP in 2007 and in 2008 was $44.50 per share. Ex. B to McMahan Decl., Preston Moore 30(b)(6) Deposition at 105:16-106:6.

18(h).     Undisputed, but Plaintiff's accounting in paragraphs 12-18 of her Memorandum is incomplete. As of December 31, 2008, there were 111,830.8528 shares allocated to participant accounts and 43,409.1472 unallocated shares held in the suspense account. Ex. C to Declaration of Amy Schick ("Schick Decl"), 2008 Reconciliation Worksheet and Account Statements at VCB003415, VCB003483. As the loans were repaid, shares were released from the suspense account and allocated to participant accounts. ECF 171 at 10. The number of shares allocated to participant accounts grew by nearly 40% between 2008 and 2016. Ex. C at VCB003415, VCB003483. To illustrate, as of December 31, 2008, Plaintiff's ESOP account held 4,528.0140 shares. ECF 171-4 at MOORE001254. In 2014, she elected to take a diversification distribution

equal to the value of 1,364 shares from her ESOP account. *Id.* at MOORE01260. In 2015, Plaintiff took another diversification distribution equal to the value of 406.1294 shares from her account. *Id.* at MOORE01261. By December 31, 2017, her account held 4,755.9437 shares. *Id.* at MOORE01263. Had she not taken two diversification distributions, she would have had 6,526.0731 shares, equivalent to an increase in shares of approximately 44%.

20.    Undisputed that Howe Barnes Hoefer & Arnette ("Howe Barnes"), an independent valuation company, valued Holding Company stock at $55 per share as of December 31, 2006. ECF 171-35 at VCB026235. Undisputed that Mr. Stone, one of the ESOP trustees, reviewed and approved that valuation. ECF 171-33 ¶ 5.

21.    Defendants dispute the third sentence. Mr. Stone consulted with Mr. Starke, an attorney at Troutman Sanders who advised the trustees on ESOP compliance issues, regarding options for paying benefits owed to the ESOP participants. ECF 171-33 ¶¶ 13-17. Per the document Plaintiff cited in support, Mr. Stone reported these discussions to the Board. ECF 167-6.

24.    Disputed. Mr. Spicer's W-2 does not indicate the date his employment terminated. ECF 144-4. Mr. Spicer retired from full-time employment at VCB effective December 31, 2006. 171-2 ¶ 6. He returned to work part-time at VCB from January 1, 2007, through July 2007, but had fully retired prior to receiving a distribution.  Schick Decl. ¶ 3.

25.    Defendants dispute the third sentence as a hypothetical, not a statement of fact.

26.    Partially disputed. In 2008, seven ESOP participants elected cash distributions at the $39.15 per share value.[3] ECF 171 at 11, ECF 171-10 at VCB003415. The ESOP's total obligation for 2008 was $1,110,526.89. ECF 171 at 11. After consulting with counsel, the trustees

---

[3] Defendants' MSJ stated two participants took distributions at the December 31, 2007, valuation. ECF 92 at 6. That was incorrect. Seven participants took cash distributions at the $39.15 valuation. The total distribution reported in Defendants' MSJ ($1,110,527) was accurate.

increased the ESOP's line of credit to $2 million and took an additional $1 million disbursement. *Id.* 24,149 shares were added to the ESOP's suspense account. *Id.*

28.     Partially disputed. The cost basis was not "assigned" as Plaintiff contends, it was based on a calculation performed by WyStar. Ex. B at 105:16-106:6.

29-30. Defendants dispute that Plaintiff accurately characterizes the email discussed in these two paragraphs, which is a written document that speaks for itself. The email states that Mr. Starke floated the idea of "charging the loan off in the best interest of the *company*." ECF 167-7. It further states that Mr. Potter and Mr. Moore "talked about increasing the % contributed to the plan to offset the impact to participants and make more money available for principal payments." *Id.* Thereafter, the Holding Company increased its annual contributions from 10% to 13% of each participant's compensation so that the ESOP could repay the loans more quickly. ECF 171-47 ¶ 4.

34.     Defendants dispute the statement in the second sentence, which reflects Plaintiff's inaccurate characterization of evidence. Mr. Starke did not advise Mr. Potter that the Holding Company should forgive the loan; he explained that was an option the Holding Company could consider "in the interest of the company." ECF 167-7.  Billy Cannon is not a Defendant.

48.     Defendants dispute that "the Holding Company did not actually redeem" any Stock until "late November 2018." To make distributions to ESOP participants requesting cash, the Holding Company made fourteen cash transfers between August and October 2018 to the ESOP and purchased the shares allocated to those participants' accounts. ECF 171-11; ECF 171-47 ¶ 26. This is consistent with Plaintiff's allegations that the ESOP sold shares to the Holding Company in conjunction with the benefit distributions that occurred between in 2018. *See* Mem. at 27.

50.     Defendants dispute that "the Board" approved the offering. Per the minutes that Plaintiff cites, the Board delegated authority to approve the offering to a Special Committee consisting of Pamela Stone and Gregory Wolfrey. *See also* ECF 171-70.

51.     Undisputed, but incomplete. *See* Defendants' SOF, ECF 171 at 14-16.

53.     Defendants dispute the third sentence. That is not a statement of fact but reflects Plaintiff's unsupported legal conclusion. The ESOP had been terminated effective December 31, 2016, and as of October 17, 2018, all participants had received their vested benefits either in cash or stock. 171-11 at VCB057301; 171-47 ¶ 29. For participants who elected cash distributions, the Holding Company purchased the shares formerly allocated to their accounts.  171-47 ¶ 26; 171-48 at VCB062776 (if cash distribution option is selected, "the company will pay me for my stock").

54.      Undisputed, but incomplete. *See* Defendants' SOF, ECF 171 at 14-16.

55.     Undisputed, but incomplete. *See* Defendants' SOF, ECF 171 at 14-16.

56.     The first sentence is disputed. Defendants purchased shares from the Holding Company. *See* ECF 171-81 at VCB045855 ("I hereby irrevocably subscribe to purchase from the Company"); *see also* ECF 171-85; 171-55; 171-57. The second sentence, that the Holding Company sold "plan assets," is Plaintiff's unsupported legal conclusion, not a fact.

57.     Undisputed, but by way of further response, the Defendants who were on the Board at the time of the capital raise believed the capital raise involved newly issued shares of Holding Company stock, which are corporate assets, so they did not believe there was a need to consult Mr. Mulkey. ECF 171-47 ¶ 36; 171-67 ¶ 15; 171-84 ¶ 9.

59.     Disputed. The evidence that Plaintiff cites, a "Review of Strategic Alternatives" prepared by Sandler O'Neill & Partners, L.P., does not support the contention that it was "delivered

. . . to VCB" on July 17, 2018. *See* ECF 110.1. Instead, this document was delivered only to Mr. Crowder and Mr. Moore on or around that date. ECF 171-83.

60.    Disputed. In August 2018, Mr. Crowder was not a Board member of either the Holding Company or VCB. ECF 171-69.

64.    Disputed as noted in response to statement of fact 60. *Id.*

## III.   ARGUMENT

### A.   Standard Of Review And Plaintiff's Burden Of Proof.

The Court should "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because Plaintiff has the burden of proof on each of her claims, she must show that the undisputed facts establish every element of those claims. *LeBlanc v. Cahill*, 153 F.3d 134, 148 (4th Cir. 1998). Permissible inferences to be drawn from the underlying facts "must be viewed in the light most favorable to the party opposing the motion." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

A plaintiff alleging a breach of the duty of loyalty bears the burden of showing a fiduciary failed to act in the best interests of the participants *and* that the breach caused a loss. *Dearing v. IQVIA Inc.*, 2021 WL 4291171, at *3 (M.D.N.C. Sept. 21, 2021). To establish disloyalty under ERISA, a plaintiff must prove the fiduciary placed "its own interests ahead of those of the Plan beneficiary." *Ellis v. Fidelity Mgmt. Tr. Co.*, 883 F.3d 1, 5 (1st Cir. 2018) (citation omitted). That said, "an accompanying benefit to the fiduciary is not impermissible—it more simply 'require[s] . . . that the fiduciary not place its own interests ahead of those of the Plan beneficiary.'" *Id.*; *accord Reetz v. Aon Hewitt Inv. Consulting, Inc.*, 2023 WL 4552593, at *7-8 (4th Cir. July 17, 2023) (the duty of loyalty does not "mean that a fiduciary acts disloyally where the proposed action aligns with its own interest"). To prove that a loss occurred, Plaintiff must establish "there is a difference

8

between the current value of the Plan as compared to what the Plan would have been worth had the breach not occurred." *Sims v. BB&T Corp.*, 2018 WL 3128996, at *5 (M.D.N.C. June 26, 2018). If Plaintiff proves each of those elements, then Defendants must establish that the violation did not cause the loss. *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 363 (4th Cir. 2014).

ERISA Section 406(a) prohibits certain transactions between a plan and a party in interest or plan fiduciary. 29 U.S.C. § 1106. ERISA Section 408 provides exemptions from Section 406(a)'s prohibited transaction provisions. 29 U.S.C. § 1108. Plaintiff bears the burden of establishing that a prohibited transaction occurred and, again, that it caused a loss to the ESOP. *Elmore v. Cone Mills Corp.*, 23 F.3d 855, 864 (4th Cir. 1994); *Smith v. Sydnor*, 2000 WL 33687953, at *19 (E.D. Va. Aug. 25, 2000) ("Plaintiff may obtain relief only for the loss caused by the prohibited transaction."). If she proves those elements, Defendants then bear the burden of establishing a Section 408 exemption to the prohibited transaction. *Elmore*, 23 F.3d at 864.

### B.   Plaintiff's Failure To Proffer Evidence That Any Fiduciary Acted Disloyally Mandates Denial Of Her Summary Judgment Motion.

Plaintiff argues that Defendants breached the duty of loyalty because the loans in 2007 and 2008 only "benefitted two parties," Mr. Spicer and the Holding Company. Mem. at 19. Plaintiff points to two "facts" in support. First, she says the trustee Defendants "forc[ed] the ESOP to assume the Holding Company's obligation to purchase Stock from ESOP participants who elected cash." *Id.* at 20. Second, she says the Holding Company "furthered its own interests by making tax-deductible contributions to the ESOP" because the ESOP used those contributions to repay the loans. *Id.* at 20-21. Neither of these purported facts supports a disloyalty claim.

#### 1.   *Plaintiff does not carry her burden of establishing that the Defendant trustees breached their duty of loyalty.*

Plaintiff's original complaint alleged the Defendants breached the duty of loyalty in 2007 by withholding negative financial information from Howe Barnes for the purpose of inflating the

value of Holding Company stock so that Mr. Stone, an ESOP trustee, could take a distribution from the ESOP at the inflated value. That conspiracy theory made for compelling reading, but discovery revealed it *was not true*, so Plaintiff abandoned it. She now contends the trustees—professionals with decades of experience—intentionally violated their duty of loyalty to benefit a single employee, Mr. Spicer, by obtaining an inflated valuation and then causing the ESOP to take a loan to pay Mr. Spicer his benefit.[4] This theory is illogical. Plaintiff has never explained *why* these individuals would commit violations subjecting them to personal financial liability to benefit a single ESOP participant. *Reetz*, 2023 WL 4552593, at *7 ("Being motivated by self-interest first requires the existence of self-interest.").

More importantly for current purposes, she does not introduce *any evidence* suggesting that the trustee Defendants put their interests ahead of those of the ESOP's participants, as she must. *See Brotherston v. Putnam Invests., LLC*, 907 F.3d 17, 40 (1st Cir. 2018) ("in reviewing ERISA duty of loyalty claims, we have asked whether the fiduciary's 'operative motive was to further its own interests'"). For instance, she proffers no evidence that the trustees benefited from the loans. *See generally* Mem. Indeed, Mr. Stone was the only trustee who also participated in the ESOP, and Plaintiff does not argue he took a distribution in 2007 or 2008.[5] She also alleges the loans harmed the ESOP participants, and thus asks the Court to infer that Mr. Stone knowingly violated his duties to benefit a single ESOP participant, and that he knowingly acted *against his own interests as an ESOP participant.* That defies common sense.

---

[4] Mr. Spicer is no longer a Defendant, and Plaintiff abandoned any claim alleging the 2007 distribution he received violated ERISA. ECF 171 at 24-25.

[5] ERISA permits "[p]ersons who serve as fiduciaries [to] also act in other capacities, even capacities that conflict with the individual's fiduciary duties." *Allen v. Wells Fargo & Co.*, 967 F.3d 767, 776 (8th Cir. 2020) (citations omitted). Thus, "the fact that some fiduciaries also hold high-ranking positions in the company is insufficient to create a plausible inference that [the fiduciaries] failed to act loyally due to conflicts of interest." *Id.* (citations omitted).

Plaintiff's theory of disloyalty myopically focuses on which entity, the ESOP or Holding Company, was bound by the "put option." *See* Mem. at 20. But the put option is germane only when a participant requests a distribution in *stock* and then subsequently elects to sell that stock to the sponsor or the ESOP. ECF 171-7 at VCB028750, § 15.2(a).[6] In 2007 and 2008, six and seven participants, respectively, requested a distribution in *cash*, not stock, as they were permitted to do by the ESOP. ECF 171-8 at VCB000817 (participants may "direct that a distribution be made entirely in cash"). This resulted in the ESOP utilizing the loans for intraplan purchases of stock, followed by distribution of cash to the participants.[7] ECF 171-33 ¶ 21. As discussed below, that is the process envisioned by the legal advice provided to the trustees. *Infra* at 20. Administering the ESOP in compliance with its terms and consistent with legal advice on the issue is hardly a disloyal act. On the other hand, Plaintiff's suggestion that Defendants should have forced numerous participants to take a distribution in shares, contrary to the ESOP's terms, would have been a breach of fiduciary duty. 29 U.S.C. § 1104(a)(1)(D) (an ERISA fiduciary must "discharge his duties" "in accordance with the documents and instruments governing the plan"); *see also McCluskey v. Trs. of Red Dot Corp. Emp. Stock Ownership Plan & Tr.*, 268 F.R.D. 670, 672 (W.D. Wash. 2010) (ERISA class action alleging defendants breached their fiduciary duties by amending plan and forcing ESOP participants to take cash distribution over five-year period instead of a

---

[6] "[I]n the event *Stock* distributed from the Fund to a Participant . . . is not readily tradable on an established securities market . . . at the time of the distribution, the Plan Sponsor agrees to cause the Employer . . . to purchase such *Stock*" (emphasis added).

[7] Decisions on how to structure benefit plans are settlor functions that are not subject to ERISA's fiduciary duties. *E.g.*, *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444-45 (1999) ("ERISA's fiduciary duty requirement simply is not implicated where Hughes, acting as the Plan's settlor, makes a decision regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated."). Thus, any claim that Defendants breached their duties by failing to amend the ESOP documents to force participants to accept shares instead of cash fails as a matter of law. *Id.* at 445.

single lump sum payment as permitted by plan in effect when participants retired). Plaintiff's Memorandum does not even fully and accurately inform the Court of the pertinent language regarding the put option. The regulation states:

> The put option must permit a participant to put the security to the employer. Under no circumstances may the put option bind the ESOP. **However, it may grant the ESOP an option to assume the rights and obligations of the employer at the time that the put option is exercised.**

29 CFR § 2550.408b-3(j) (emphasis added). The ESOP documents also permit the ESOP to assume the put obligation. ECF 171-8 at VCB000817. Plaintiff misleadingly omits the bolded language, which provides that even in her hypothetical world the outcome could have been the same, i.e., distributing shares and then having the ESOP assume the put obligation and take a loan to fund benefit payments.

Plaintiff also proffers no evidence that Defendants placed Mr. Spicer's interests ahead of those of ESOP participants. Of course, Mr. Spicer *was an ESOP participant*. Moreover, the trustees used the loans to fund benefits due to numerous ESOP participants, not just Mr. Spicer. ECF 171-33 ¶¶ 11-21. The trustees consulted with counsel prior to taking the loans and believed those loans to be both permissible and in the interests of the participants. *Id*. ¶ 15. Six individuals requested a cash distribution in 2007, and seven more did so in 2008. *Id*. ¶¶ 11, 24. The ESOP did not have sufficient cash to fund all those distributions, so Mr. Stone consulted with Mr. Starke, the trustees' counsel, regarding permissible methods for satisfying the ESOP's obligation to these participants. *Id*. ¶¶ 13-14, 17. Mr. Starke then prepared loan documents for the trustees which stated the ESOP could take a loan from the Holding Company, and then use the loan proceeds for "the acquisition of Stock on a leveraged basis" "***by means of intraplan Stock acquisitions to raise cash to make ESOP distributions in cash rather than Stock***." ECF 171-39 at VCB028784 (emphasis added).

These facts support only one inference—the trustees believed they were acting solely in the interests of the participants. Indeed, the loans plainly *were* in the interests of the participants. Those loans enabled numerous participants, not just Mr. Spicer, to receive the benefits owed by the ESOP. The loans also ensured that Holding Company stock remained in the ESOP for future distribution to participants. ECF 171-31 at 206:13-20. This latter point is important. Plaintiff argues that "contributions that should have been invested to fund retirement benefits were instead applied to loan payments." Mem. at 19. But the loans resulted in 44,000 shares of additional stock being allocated to the accounts of the ESOP's participants. Ex. C at VCB003360; VCB003415. Had Defendants forced the participants to accept a stock distribution and put the shares to the Holding Company as Plaintiff argues (in contravention of the ESOP's terms), there would have been 44,000 fewer shares for allocation to participant accounts. *Id*. Plaintiff may have preferred a different approach, but she has no evidence that Defendants acted disloyally.

Plaintiff (again) proffers no evidence to support her contention that the trustees did not "evaluate whether assuming this repurchase obligation was in the best interest of the ESOP participants" or "even allowable in the first place." Mem. at 20. The fact that the trustees consulted with counsel prior to taking the loans shows that the latter proposition is ludicrous. Moreover, the documents Mr. Starke drafted provide that the loans (1) could be used for the intraplan acquisition of Holding Company stock to fund benefit distributions to participants; and (2) were "in the best interests of and for the primary benefit of the participants of the ESOP." ECF 171-39.

In addition to this record evidence, Defendants' expert Gregory Brown, who has decades of experience in several hundred ESOP transactions, opined that the trustees' decision was consistent with that followed by other ESOP fiduciaries. ECF 171-4 at 7. Mr. Brown explained that in his "experience, the intra-plan process used here is also used by some ESOPs to efficiently

process cash redemptions and distribute cash to participants." *Id.* at 8. "In substance, it yields the same result as [the] distribution-redemption-sale structure" that Plaintiff prefers, and "[i]ts use here was consistent with industry standards and practice at the time." *Id.*

> **2.    *Plaintiff adduces no evidence the Holding Company acted disloyally.***

Plaintiff provides no evidentiary support for her argument that the Holding Company breached its duty of loyalty with respect to the ESOP. Mem. at 20-21. At the outset, while the Holding Company was a party in interest as defined in ERISA, it was not acting in a fiduciary capacity when it made the loans to the ESOP. Instead, it was disposing of Holding Company assets, which does not implicate ERISA's fiduciary duties. *See Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001) ("a corporate business decision" is a settlor function, not a fiduciary one); *Reetz*, 2023 WL 4552593, at *5 ("Fiduciary status under ERISA 'is not an all-or-nothing concept.'") (citations omitted); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1234 (9th Cir. 2000) (affirming dismissal of prohibited transaction claim alleging misuse of employer contributions because contributions are corporate assets until paid to the plan, meaning there are no attached fiduciary duties, and "this is true even where the employer is also a fiduciary of the plan"). Plaintiff bases her disloyalty claim against the Holding Company on nothing more than the unremarkable fact that VCB made annual contributions on behalf of employees that were then used in part to repay the loan. *Id.* There are more than 3,000 leveraged ESOPs in the United States, meaning every one of those ESOPs took a loan to acquire the shares of its sponsor.[8] Every one of those ESOPs is likewise obligated to repay the loan. With limited exceptions, every one of those

---

[8] https://www.nceo.org/articles/employee-ownership-by-the-numbers#1 (last visited July 27, 2023). As the NCEO explained, you can determine if an ESOP took a loan to purchase stock "if the plan's Form 5500 filing uses the pension benefit code 2P," *id.*, like the ESOP's 5500s did here.

ESOPs uses contributions from the ESOP sponsor to repay the loan, just like here.[9] In *Crawford v. Lamantia*, 34 F.3d 28 (1st Cir. 1994), the court explained:

> Each quarter, ADL [the plan sponsor] agreed to make cash contributions to the ESOP in an amount sufficient to defray the principal and interest payments due ADL on the ESOP loan. The ESOP, in turn, agreed to return the contribution immediately to ADL in repayment of its note. Meanwhile, a proportionate number of the New Shares held in the suspense account as collateral would be freed and allocated by formula to the individual accounts of participating ADL employees. **In effect, ADL was agreeing to repay the loan it was making to the ESOP to fund the purchase of the New Shares, with the employees ultimately reaping the benefits**.

*Id.* at 30 (emphasis added). That is like what happened here. The Holding Company made a loan to the ESOP which the ESOP used to make intraplan purchases of Holding Company shares. The cash was then distributed to participants who had requested a cash distribution. Over time, the ESOP used Holding Company contributions to repay the loans, and as the loans were repaid, shares were released from the suspense account and allocated to the ESOP participants. In this manner, ESOP participants were able to invest in Holding Company stock that would not have been available to them had the Holding Company redeemed it directly from the participants and not done a loan, as Plaintiff argues it should have. ECF 171-31 at 206:13-20. The fact that the ESOP repaid the Holding Company for the loans the ESOP received cannot support the inference that the Holding Company acted disloyally. If it did, then hundreds, if not thousands, of other ESOP fiduciaries also breached their duty of loyalty.

### C.   Plaintiff Has Not Carried Her Burden Of Proving That Defendants Violated ERISA's Duty Of Prudence By Failing To Monitor The Loans.

Plaintiff argues that Defendants "continuously" breached their duty of prudence between 2007 and 2016 because the loans were an "investment in" Holding Company shares. Mem. at 21.

---

[9] *E.g.*, *ESOPS: Current Twists and Turns*, Roger C. Siske and Michael R. Maryn (2004) (a leveraged ESOP "acquires stock with the proceeds of a loan that is usually made or guaranteed by the employer" and "the loan is repaid by the ESOP each year with employer cash contributions (and, in certain instances, dividends)").

Plaintiff's Amended Complaint does not allege any such breach, and her Memorandum does not identify the precise violation associated with this claim. As best Defendants can discern, Plaintiff contends the loans were imprudent because the shares released from suspense were allocated at a cost basis of $44.50 per share when the value of Holding Company stock was less than that, and Defendants should have "corrected" the loan, presumably by forgiving it. *Id.* The Court should deny judgment on this claim for several independently sufficient reasons.

First, the Complaint does not allege that Defendants breached ERISA Section 404(a)'s duty of prudence by failing to monitor the loans, and "[a] plaintiff cannot use a summary judgment response to amend or correct a complaint." *Miller v. Gaylor*, 2021 WL 5979530, at *3 n.7 (W.D. Va. Dec. 17, 2021). Instead, Plaintiff alleges the loans were prohibited transactions under ERISA Section 406. *E.g.*, *id.* ¶ 94. ERISA does not impose any duty to monitor a prohibited transaction because there is no such thing as a continuing prohibited transaction—they are one-time events— nor is there a duty to correct a prohibited transaction.[10] *E.g.*, *David v. Alphin*, 817 F. Supp. 2d 764, 779 (W.D.N.C. 2011) (ERISA "makes actionable a plan fiduciary's decision to engage in a prohibited transaction" but "does not make actionable a fiduciary's failure to undo what has been done"), *aff'd*, 704 F.3d 327, 340-41 (4th Cir. 2013) (ERISA does not impose duty to correct a prohibited transaction); *White v. Chevron Corp.*, 2017 WL 2352137 at *22 (May 31, 2017) ("there is no such thing as a continuing prohibited transaction—as the plain meaning of 'transaction' is that it is a point-in-time event"), *aff'd*, 752 F. App'x 453 (9th Cir. 2018). That is particularly true here since Mr. Starke advised Defendants the loans were permissible.

_____

[10] This claim is barred by ERISA's statute of repose to the extent it challenges any actions that occurred prior to August 2013, including the decision to refinance the loans. *Tibble v. Edison Int'l*, 575 U.S. 523, 530 (2015) (breach of the duty to monitor claim is timely "so long as the alleged breach of the continuing duty occurred within six years of suit").

Second, Plaintiff offers no authority suggesting that an ESOP loan is an "investment" with a corresponding fiduciary duty to monitor. That is because there is none. Nor does she identify which fiduciary violated this new duty she attempts to create by not forgiving the loans. *See generally* Mem. She alleges only that in 2012, Defendant Moore was alerted to the "imprudence of this investment" by Mr. Starke and that certain Board members subsequently approved a resolution to extend the maturity date of the loans. *Id.* at 21-22. She does not argue those Board members (other than Mr. Moore) had any discussions with Mr. Starke about the loans. *See id*. This is all moot. Although Plaintiff elides this fact, the loans were made by the Holding Company, ECF 171-41; 171-44, and as the lender, only the Holding Company could forgive the loans. Plaintiff has not identified any evidence suggesting otherwise. The decision to forgive (or not) the loans involved corporate assets of the Holding Company and was thus a *settlor* decision that did not implicate any fiduciary obligations. *Flanigan*, 242 F.3d at 88.

Third, Plaintiff bases this claim on hindsight. She apparently contends the loans were imprudent because the stock's fair market value between 2009 and 2016 was less than the $44.50 cost basis of the shares in the suspense account.[11] Mem. at 21. An ERISA fiduciary's actions are never judged in hindsight, and Plaintiff is simply alleging that in 2007 and 2008 the trustees failed to predict that Holding Company stock would decline in value. *DiFelice v. U.S. Airways*, 497 F.3d 410, 424 (4th Cir. 2007) ("whether a fiduciary's actions are prudent cannot be measured in hindsight"; rejecting argument that defendants violated ERISA by continuing to offer sponsor

---

[11] Plaintiff contends that Defendants "assign[ed] the $44.50 value" and that it "was not based on any valuation at all." Mem. at 21. But her own Memorandum belies this argument. In her statement of facts, Plaintiff admits that $44.50 was "calculated by averaging the $55 paid to recycle Mr. Spicer's 20,739 shares in 2007 and the $39.15 paid to recycle the remaining 24,149 shares cashed out in 2008." Br. at 9 ¶ 28. And WyStar performed this calculation, not Defendants. Ex. B at 105:16-106:6.

stock as a plan investment despite "undisputed knowledge of [company's] uncertain financial condition"). At the same time, "an investment's diminution" alone cannot "demonstrate a violation of ERISA's fiduciary duties." *Id.* Yet the decline in the stock's value is all that Plaintiff identifies. Mem. at 21 (identifying stock value as of December 31 of each year).

Fourth, Plaintiff argues that Defendant Moore became aware of the loans' "imprudence" in 2012 because employees were "buying shares at $44.50 while the value has slipped to $14 per share." Mem. at 9, 21-22. The fact that the cost basis of the released shares exceeded the per-share value does not make the loans imprudent. Every ESOP loan must be repaid utilizing formulas set forth in Internal Revenue Service regulations. *See* 26 C.F.R. § 54.4975-11(c), (d)(2). This means that in every instance where a company's stock value decreases following a loan, the cost basis of the shares released from suspense and allocated to participants' accounts would exceed the then-current market price. Plaintiff's theory, if adopted, would render each of these loans an "imprudent investment," and there is no authority supporting this extreme result. *See, e.g.*, *Walsh v. Bowers*, 561 F. Supp. 3d 973, 984 (D. Haw. 2021) (case brought by Department of Labor challenging per-share value of an ESOP transaction funded by a loan but did not challenging the legality of the loan, even though the stock price dropped significantly post-transaction).

Fifth and finally, Plaintiff argues Defendants were "motivated by greed" because the Holding Company did not forgive the $1.25 million that remained on the loans in 2012, and instead extended the maturity date. Mem. at 22. She identifies no evidence that supports her rhetoric. *See id.* And she ignores the fact that, in 2012, VCB increased its employer contributions from 10% of each employee's compensation to 13% of compensation, ECF 171-47 ¶ 4, which (she admits) resulted in $664,190.57 in entirely voluntary contributions. Mem. at 5 ¶ 15. VCB contributed more than the ESOP required so that the loans would be repaid more quickly, ECF 171-47 ¶ 4, the exact

opposite of an entity "motivated by greed." Plaintiff also ignores the fact that Defendants Crowder, Moore, Schick, and Stone were ESOP participants. ECF 171 ¶ 25; 171-2 ¶ 13; 171-78 ¶ 7; 171-33 ¶ 29. If, as Plaintiff contends, the loans harmed participants, then those Defendants would have benefited by forgiving the loans, not extending them.

**D.**     **The Loans Complied With ERISA Section 408(b)(3) And Thus Were Not Prohibited By ERISA Section 406(a)(1)(B).**

Plaintiff also moves for judgment on her claim that the loans violated ERISA Section 406(a)(1)(B), which bars fiduciaries from causing a plan to engage in a transaction that "constitutes a direct or indirect lending of money or other extension of credit between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(B). The Holding Company made the loans to the ESOP and is a party in interest, so the loans fall within the ambit of Section 406(a)(1)(B). However, the loans were not prohibited because they satisfy ERISA Section 408(b)(3), 29 U.S.C. § 1108(b)(3).

ERISA Section 408(b)(3) provides that the "prohibitions in section [406] of this title shall not apply" to an ESOP loan that is (1) primarily for the benefit of participants; and (2) at a reasonable interest rate.[12] 29 U.S.C. § 1108(b)(3). The statute imposes no other requirements. DOL regulations contained in 29 C.F.R. § 2550.408b-3, "Loans to Employee Stock Ownership Plans," however, purport to impose several additional requirements for an ESOP loan to satisfy the statutory exemption. The loans plainly satisfy both the statute and the regulations. Plaintiff makes several contrary arguments, all of which are factually or legally flawed (or both), and the Court should deny Plaintiff's summary judgment motion on this claim.

---

[12] Plaintiff's Memorandum includes a section titled "The Primary Benefit Requirement." Mem. at 23. However, she does not argue that Defendants violated this regulatory requirement, other than contending that Defendants did not use the loans to "acquire" Holding Company stock. *See id.*

### 1.     *The loans were used to acquire qualifying employer securities.*

The regulations that Plaintiff points to state that, to satisfy Section 408(b)(3), loan proceeds "must be used . . . [t]o acquire qualifying employer securities." 29 C.F.R. § 2550.408b-3(d)(1). Based solely on her preferred definition of the word "acquire," Plaintiff argues Defendants did not satisfy the regulations because the loans were used to "repurchase shares *already owned* by the ESOP." Mem. at 23 (emphasis is Plaintiff's). She is wrong.

As noted, the loan documents prepared by Mr. Starke, the trustees' legal counsel at the time, provided that permissible loan purposes included "engag[ing] in the ***acquisition*** of Stock on a leveraged basis" "***by means of intraplan Stock acquisitions to raise cash to make ESOP distributions in cash rather than Stock***." ECF 171-39 at VCB028784 (emphasis added). In other words, the trustees could use loan proceeds to cause the ESOP to make intraplan purchases—an "acquisition" according to the loan documents—of Holding Company stock, and then distribute the loan proceeds to the participants. That is precisely what happened here: (1) the ESOP took loans in 2007 and 2008; (2) the ESOP used the loan proceeds, which were ESOP assets, for intraplan purchases of Holding Company stock allocated to the accounts of individuals who requested cash; and (3) the ESOP then distributed the cash from the loans to the numerous participants who requested cash distributions, while placing the stock in a suspense account. The practice of utilizing a loan to make intraplan acquisitions followed by distributions is consistent with that followed by other ESOP fiduciaries at the time. ECF 171-4 at 7.

This is also consistent with the regulations that Plaintiff argues apply here, as well as those she does not identify. For example, ERISA Section 407(a)(2) states a plan "may not acquire any qualifying employer security . . . if immediately after such acquisition the aggregate fair market value of employer securities and employer real property held by the plan exceeds 10 percent of the

fair market value of the assets of the plan."[13] 29 U.S.C. § 1107(a)(2). In turn, 29 C.F.R. § 2550.407a-2(b) explains that "[f]or purposes of section 407(a) of [ERISA], an acquisition by a plan of qualifying employer securities . . . shall include, but not be limited to, ***an acquisition*** . . . ***by the exchange of plan assets***. . . .") (emphasis added). That is what happened here. The ESOP acquired Holding Company shares by exchanging the loan proceeds, which became plan assets after receipt by the ESOP, for those shares.

Finally, the documents that Mr. Starke prepared in 2007 and 2008 are consistent with advice provided a decade later by different attorneys at Troutman. In April 2017, Jonathan Boyles, a partner at Troutman Pepper (the successor to Troutman Sanders), prepared a letter for VCB that responded to a complaint from Plaintiff about the decline in value of her ESOP account. ECF 171-59; 171-47 ¶ 6. The letter explained that the ESOP "[could] obtain a loan to satisfy the distribution obligation, which will allow shares to remain in the Plan and be available for re-distribution to other Plan participants," and "[t]here is nothing inappropriate about this decision. Such loans are authorized by federal law and the Plan document." ECF 171-59 at VCB026252-53. Plaintiff ignores all this evidence and offers no contrary evidence or authority. Instead, she asks the Court to conclude that ERISA prohibited the loans solely because ***she says*** the word "acquire" means "to acquire new qualifying employer securities," not intraplan acquisitions. Mem. at 23. Weighed against her *ipse dixit* is the fact that the trustees followed a sound process and made a reasoned decision after consulting with counsel, and Defendants' expert Mr. Brown offered an unrebutted opinion that these loans were consistent with the practices of other ESOP fiduciaries.[14]

---

[13] ESOPs are intended to invest in sponsor stock and thus are not subject to the 10% ownership limitation set forth in Section 407(a). *See* 29 U.S.C. § 1107(b)(1).

[14] Plaintiff argues in a footnote that Mr. Starke "observed the absurdity of the Defendants' actions" when he testified "how can anyone acquire something they already own." Mem. at 23. That misrepresents Mr. Starke's testimony. First, he testified that he did not recall the purpose of the

### 2.    *ERISA Section 408(e) is irrelevant because the benefit payments did not involve a prohibited transaction.*

Plaintiff argues she "has alleged, in detail, that the ESOP participants paid more than adequate consideration for the Stock held as collateral for the ESOP Loan," and (she contends) the loans therefore did not satisfy ERISA Section 408(e). Mem. at 23-24. That provision provides an exemption for a plan's acquisition of employer securities from a party in interest. *See* 29 U.S.C. § 1106(a), 29 U.S.C. § 1108(e). Plaintiff's argument is both wrong and irrelevant.

First, Plaintiff is wrong because she has an *evidentiary* burden at this stage, not a pleading one. *LeBlanc*, 153 F.3d at 148. Merely alleging, even "in detail," that the ESOP paid more than adequate consideration will not suffice. Plaintiff cites no evidence for this point, and it isn't clear what she means—is she arguing that the $55 valuation in 2006 exceeded adequate consideration, even though she has no evidence that is the case, or something else altogether? Plaintiff is not moving for judgment on her claim that $55 was inflated, *see* Mem. at 8 n.2, and as explained in Defendants' MSJ, the admissible evidence shows that it was not. ECF 171 at 20-21.

Second, Plaintiff's argument is irrelevant because Defendants do not rely on Section 408(e), nor do they need to. That provision "exempts from the prohibitions of section 406(a) and 406(b)(1) and (2) of [ERISA] any acquisition or sale by a plan of qualifying employer securities."

---

loans. Ex. G to Declaration of Wallace Starke ("Starke Decl."), Wallace Starke Dep. at 47:4-11. Second, he was not responding to a question about "Defendants' actions," he was asked the hypothetical question of whether he understood "in 2012 that an ESOP trust cannot acquire an asset it already owns?" *Id*. at 48:3-13. Third, Mr. Starke testified that he knew an ESOP loan "must be an acquisition loan," *Id*. at 46:19-25, 27:1-2, and he ***drafted*** the loan documents stating that the ESOP could use the loan to "acquire" stock "by means of intraplan Stock acquisitions to raise cash to make ESOP distributions in cash rather than Stock." ECF 171-39 at VCB028784. Fourth, Mr. Starke clarified that he was thinking only of legal title, not intraplan transfers, when he answered Plaintiff's hypothetical question. Starke Decl. ¶ 13. He further clarified that he understood at the time he advised the ESOP trustees that an ESOP *can* acquire stock to which it already holds legal title via such an intraplan transfer, because the former ESOP participant ceases to have a beneficial ownership interest in the shares. *Id*.

29 CFR § 2550.408e(a). In other words, the exemption in Section 408(e) is relevant if a Defendant caused the ESOP to engage in a transaction that constituted the "sale" of Holding Company stock between the *plan* and a *party in interest* in violation of ERISA Section 406. That did not occur here because the ESOP did not acquire Holding Company stock from a "party in interest." Instead, the ESOP acquired stock through an *intraplan* purchase of Holding Company shares using ESOP assets. *Supra* at 20. Neither the Holding Company nor any other party in interest was involved.

### 3.    *The contemporaneous valuation requirement did not apply to the loans.*

Plaintiff also alleges the loans did not satisfy 29 C.F.R. Section 2510.3-18(b), a *proposed* regulation providing "guidance" on the "adequate consideration" requirement set forth in ERISA Section 408(e). [15] *Brundle v. Wilmington Tr., N.A.*, 919 F.3d 763, 770 (4th Cir. 2019). She concludes that a "quick look" at the Howe Barnes valuation letter "confirms that Defendants did not obtain an independent valuation contemporaneously with the date of the 2007 Loan" and that "no independent valuation was conducted *at all* when the additional $1 million in debt was added to the Loan in 2008." Mem. at 25 (emphasis added). These arguments are inconsistent with Plaintiff's Complaint and her Memorandum and, once again, are irrelevant.

First, the proposed regulation that Plaintiff relies on is irrelevant. That regulation provides "guidance" for determining if ERISA Section 408(e) provides an exemption for a plan's purchase of sponsor stock from a party in interest. *Brundle*, 919 F.3d at 770. But as discussed above,

---

[15] It is true that courts occasionally look to these regulations for "guidance" on the adequate consideration requirement. *Brundle*, 919 F.3d at 770. But these regulations are not binding, nor could they be since they have never actually been issued. The DOL obviously understands this is the case. https://www.esopassociation.org/articles/department-labor-agrees-notice-and-comment-rulemaking-adequate-consideration-exemption (last visited July 27, 2023) ("In a major victory for Employee Stock Ownership Plans (ESOPs), the U.S. Department of Labor has committed to move forward with a public notice and comment rulemaking on a key regulation the community has sought since ESOPs were first created in 1974. The regulation will clearly define Adequate Consideration under Section 408(e) of the Employee Retirement Income Security Act of 1974 (ERISA)."). This development moots Plaintiff's reliance on the DOL's proposed regulations.

Defendants do not rely on 408(e) because the intraplan purchases of shares did not involve a party in interest, meaning no prohibited transaction occurred and no exemption is necessary. *Supra* at 20. To the extent Plaintiff is arguing that Defendants were required to obtain a "contemporaneous" valuation prior to every benefit distribution (separate from the annual December 31 valuations), she provides no legal authority supporting that conclusion, and it would be inconsistent with the ESOP's terms. *See* Ex. D to Schick Decl., 2011 Plan Document at VCB026378, § 15.9 (stating that "other than benefit distributions," all valuations of Holding Company stock for purposes of a transaction between the ESOP and a "Disqualified Person" shall be based on the value "as of the date of the transaction").

Second, Davenport performed the December 31, 2007, valuation and valued Holding Company shares at $39.15. ECF 171-42 at VCB029384. That $39.15 was used to cash out the seven participants who requested a distribution in 2008. Plaintiff states that an undisputed material fact is that the $44.50 cost basis for the loan repayments was calculated by averaging the $55 paid for shares in 2007 (Howe Barnes valuation) and the $39.15 paid for shares in 2008 (Davenport valuation). Mem. at 9. Thus, her contention that "no independent valuation was conducted at all" in connection with the 2008 loan is contrary to her own admissions and must be rejected.

Third, Plaintiff makes no effort to explain how the 2007 valuation fails to comply with the proposed regulation. She simply regurgitates select excerpts of the regulation, then concludes that a "quick look" confirms the valuation was deficient. Mem. at 25. That is not sufficient at the summary judgment stage. Defendant assumes that she is arguing that Howe Barnes did not value stock as of July 2007, but again that was not required.

Fourth and finally, Plaintiff contends that both the Holding Company and the ESOP trustees were ERISA fiduciaries, and the loans and repayments were "self-dealing prohibited

transactions" under ERISA Section 406(b). Mem. at 26. Plaintiff's Complaint does not allege the loans violated Section 406(b), *see generally* ECF 75, and she cannot add this new claim through her Memorandum. *Supra* at 16. Moreover, in approving the loans, the Holding Company acted in a non-fiduciary capacity, so 406(b) is not implicated. *Supra* at 14. Plaintiff's theory also would apply to every ESOP that uses sponsor contributions to repay a loan, which means *every leveraged ESOP* violates ERISA per Plaintiff. *Supra* at 14. Finally, consistent with her approach throughout this litigation, Plaintiff fails to provide any legal authority for this argument. *See id.*

### E. Plaintiff Provides No Evidence That The 2018 Benefit Distributions Caused A Loss To The ESOP And The Court Should Deny Her Motion On This Claim.

Plaintiff next moves for judgment on her allegation that the 2018 cash distributions to participants violated ERISA Section 406(a)(1)(A), which prohibits the *sale* of "any property between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(A). Specifically, she contends that instead of distributing shares to the participants and having participants put those shares to the Holding Company at $34.65 per share, Defendants transferred cash to the ESOP to fund benefit distributions, and "the cash was then exchanged for the ESOP Stock and distributed to participants." Mem. at 27. Although the two processes are slightly different, the outcome is the same—the participants who requested cash received the $34.65 per share price approved by the independent trustee, Mr. Mulkey, based on the December 31, 2017, Mercer valuation, and the Holding Company purchased the shares. ECF 171-47 ¶ 26.

Plaintiff alleges these distributions violated Section 406(a) because the Holding Company purchased shares directly from the ESOP, and the value of Holding Company stock thus "needed to be determined as of the date" of each of the stock purchases by the Holding Company. Mem. at 27. Assuming everything Plaintiff says is true, the Court must deny her summary judgment motion because she has not established that the alleged violation caused any loss to her ESOP account.

1. ***Plaintiff's failure to prove a loss to the ESOP mandates judgment in Defendants' favor on all claims post-dating August 24, 2018.***

As the Court held, Plaintiff alleges a single *potential* loss/injury associated with the claim challenging her August 24, 2018, benefit distribution: "the amount she received in cash for the Stock in her ESOP account was not based on a contemporaneous valuation to which she was entitled under ERISA" and "***[i]f*** it is established that Ms. Moore's stock had a higher value than $34.65 on August 24, 2018, she has suffered a concrete financial injury" (emphasis added). ECF 131 at 14 (quoting ECF 109). Plaintiff does not even argue that Holding Company stock was worth more than $34.65 per share on August 24, 2018, much less provide any evidence suggesting that was the case. *See generally* Mem. This alone mandates denial of her motion on this claim because she offers no evidence of loss associated with this purported violation. *Sydnor* is illustrative.

The *Sydnor* plaintiff claimed the defendants violated ERISA Section 406(a)(1)(A) by causing the ESOP to sell its stock to the sponsor at $70 per share, when the stock was allegedly worth more than the $70 paid by the sponsor. 2000 WL 33687953, at *17. This is indistinguishable from Plaintiff's argument that the Holding Company purchased the ESOP's shares at $34.65 when the stock possibly was worth more than that. ECF 109 at 13. The court held plaintiffs failed to carry the burden of proving a loss to the plan and affirmed judgment in Defendants' favor because, like Plaintiff here, plaintiffs' expert had not attempted to value the stock as of the transaction date:

> Therefore, Plaintiffs failed to present any evidence that the preferred stock was in fact worth more than $70 per share for which it had been appraised. As a result, Plaintiffs failed to prove that the Plan suffered or what extent in terms of the amount of any damages. Therefore, no remedy of damages would be appropriate even if the Plaintiffs had otherwise met their burden.

*Sydnor*, 2000 WL 33687953, at *19. The same result applies here.

Further, the only admissible evidence establishes that $34.65 represented the fair market value of Holding Company stock in August 2018. Plaintiff's expert admitted he is not qualified to

opine on valuation issues and that he did not attempt to assess the accuracy of the $34.65 share price.[16] ECF 171 at 28-30. Defendants' valuation expert, Andrew Richmond, concluded the $34.65 price reflected fair market value. ECF 171-18 at 52. Plaintiff did not rebut Mr. Richmond's opinion, and the Court should deny Plaintiff's motion on this claim. *E.g.*, *Elmore*, 23 F.3d at 864.

## 2. *The $58 merger price from December 12, 2019, is not a contemporaneous value for Plaintiff's distribution that occurred on August 24, 2018.*

Plaintiff's reply may point to Mr. Horn's supposition that "[a]n updated valuation *likely* would have shown an increase in the share value had knowledge of the impending merger negotiations with Blue Ridge been properly shared." ECF 171-30 at 32 (emphasis added). He also contends that participants might have been entitled to the difference between the $34.65 they received and the $58 per share value from the December 12, 2019, merger. *Id.* at 33. Neither of these arguments is sufficient to prove a loss to Plaintiff's ESOP account.[17]

First, Mr. Horn's speculation that an updated valuation "likely" would have "shown an increase" is no evidence at all. That is simply the musings of an individual who repeatedly admitted he is unqualified to opine on any aspect of ESOP valuations. ECF 169 at 15. Relatedly, he performed no analysis showing how disclosure "of the *impending* merger negotiations with Blue Ridge" would impact Holding Company value. ECF 171-30 at 32 (emphasis added). Of course, in August 2018 Defendants could not share "merger negotiations" that had *not yet occurred* and *would not* for another six months. *E.g.*, Defendants' MSJ at 26-27. This highlights Mr. Horn's lack of qualification to address the adequacy of the $34.65 share price. Mr. Richmond—the only

---

[16] Plaintiff does not rely on Mr. Horn to argue that $34.65 was inaccurate, nor could she since he admitted he is unqualified to opine on valuation issues. ECF 171-32, Horn Dep. at 259:12-18, 264:2-6 ("Q: Just to confirm, you did not do any analysis to determine if the $34.65 share price that the participants received in the fall of 2018 was fair market value? A: Oh, no, no, no").

[17] Although Plaintiff has not made these arguments in her summary judgment motion, Defendants address them out of an abundance of caution in the event Plaintiff attempts to save this claim in her reply by relying on Mr. Horn. Defendants reserve their right to seek a sur-reply.

valuation expert in this case—explained that reasonable valuation principles reject using the prospect of a hypothetical future merger to determine fair market value, and Mr. Horn's proposed approach would have been inconsistent with the valuation methodology used by the appraisers who historically valued Holding Company stock. *See* ECF 171 at 30-31.

Second, Mr. Horn suggests that prudent fiduciaries would have "shared" the "incremental value from the merger" with the ESOP participants who sold their shares in 2018 because a definitive merger agreement was announced "only *nine months* after Plaintiff received her ESOP distribution.[18] ECF 171-30 at 33. He provides no support for this inadmissible legal opinion, and Plaintiff has identified none. The merger itself did not occur until December 12, 2019, almost *sixteen months* after Plaintiff received her distribution. By the plain meaning of the word, the May 13, 2019, merger announcement was not "contemporaneous" with Plaintiff's August 2018 distribution, and the December 12, 2019, merger consummation was even more remote in time.[19]

Plaintiff may argue that Defendants bear the burden of disproving a loss once she establishes a statutory violation. That is incorrect. The Fourth Circuit does apply a burden-shifting approach to loss causation. *Tatum*, 761 F.3d at 361-63. If Plaintiff proves both a violation *and* a loss, Defendants then bear the burden of proving that "the loss would have occurred regardless of the fiduciary's imprudence." *Id.* at 366. But Plaintiff must first prove that $34.65 did not reflect fair market value in August 2018, and she has not.

---

[18] Plaintiff does not seek this remedy in her Amended Complaint. *See generally* Am. Compl. Instead, as the Court recognized, the only purported loss relating to her benefit distribution is the failure to obtain an update to the December 31, 2017, Mercer valuation. She "cannot effectively amend the complaint to add a cause of action through her expert's testimony." *EEOC v. Jackson Nat'l Life Ins. Co.*, 2023 WL 2727736, at *4 (D. Colo. Mar. 31, 2023). Plaintiff also attempts to bridge this nine-month gap by pointing to distributions that occurred in October 2018. Plaintiff received her benefits in August 2018, not October.

[19] Merriman-Webster defines "contemporaneous" as "existing, occurring, or originating during the same time."

**F.    Plaintiff Proffers No Evidence That The Capital Raise Violated ERISA Or That She Has Article III Standing To Challenge It.**

Finally, Plaintiff moves for judgment on her claim that a capital raise in November 2018 violated ERISA Sections 406(a)(1)(A) and 406(b)(1). Mem. at 27-29. This claim is based on Plaintiff's misplaced contention that she retained a property interest in Holding Company shares that had been allocated to her ESOP account *even after* she received over $165,000 in cash in exchange for those shares. Again, she is wrong.

**1.    *The capital raise did not involve ESOP assets and therefore does not implicate ERISA's prohibited transaction provisions.***

To prevail on her prohibited transaction claims challenging the capital raise, Plaintiff must prove that the shares purchased by the Defendants in connection with the capital raise were "plan assets." *In re Fidelity ERISA Float Litig.*, 829 F.3d 55, 60 (1st Cir. 2016) (whether defendant exercises discretion or control over "plan assets," and is thus a fiduciary liable for prohibited transactions, is a "legal conclusion"). As a matter of law, she cannot. As discussed *supra*, Plaintiff contends the ESOP *sold* its shares to the Holding Company to fund the 2018 cash distributions, violating Section 406(a)'s prohibition of the "sale" of "any property between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(A); *see also* Mem. at 27 (arguing that "any sale" of "a plan asset between a plan and a party in interest is *per se* prohibited" and that Defendants violated this rule because Holding Company "cash was exchanged for the ESOP Stock"). The term "sale" means "[t]he transfer of property or title for a price." *Black's Law Dictionary* (11th ed. 2019).[20] Plaintiff nonetheless argues that those same shares remained "plan assets" because they were not

---

[20] *See also* William W. Story, *A Treatise on the Law of Sales of Personal Property* § 1 at 1 (1853) ("A sale is a transfer of the absolute title to property for a certain agreed price. It is a contract between two parties, one of whom acquires thereby a property in the thing sold, and the other parts with it for a valuable consideration.").

retired but stayed in the trust account. Mem. at 28. She provides no authority or evidence for this specious argument because there is none.

ERISA's fiduciary provisions reference "plan assets," but the statute does not define that phrase. *See Gordon v. CIGNA Corp.*, 890 F.3d 463, 470 (4th Cir. 2018). Guidance from the Fourth Circuit and DOL explain "that 'the assets of a plan generally are to be identified on the basis of ordinary notions of property rights under non-ERISA law.'" *Id.* at 472 (citation omitted). Under this analysis, an asset is a "plan asset" if "anything in the plan documents or elsewhere gave the plans an ownership interest" in the assets at issue. *Edmonson v. Lincoln Nat'l Life Ins. Co.*, 725 F.3d 406, 427 (3d Cir. 2013).

In 2018, most ESOP participants, including Plaintiff, elected to receive cash in lieu of Holding Company stock. ECF 171-3; 171-47 ¶ 26. Each of those individuals received payment equal to $34.65 times the number of shares allocated to their account. ECF 171-52. The Holding Company, via the distribution election form and ESOP documents, informed participants they no longer had any property interest in those shares after receiving cash, and no reasonable person would expect otherwise. *See* ECF 171 at 33-34. That is because those shares had been purchased by the Holding Company and the ESOP had been terminated. *See, e.g.*, *Fidelity*, 829 F.3d at 60-62 (noting that assets are not "transmuted" into plan assets when the parties have no reasonable expectations of an ownership interest in the assets, and no document gives them any expectation).

Moreover, Plaintiff accuses the Holding Company of engaging in prohibited transactions by *purchasing* the shares from the ESOP. *See supra* 25; Am Compl. ¶ 161. Plaintiff cannot reasonably expect to have received more than $165,000 in exchange for the Holding Company purchasing her shares *and* for those same shares to remain her property. *See* 171 at 34. Of note, Plaintiff concedes that the Holding Company could have *retired* the stock it purchased from the

ESOP in 2018, *see* 171-30 at 33, and that cannot have been the case if the ESOP had legal title to those shares. There is no practical difference to ESOP participants between the Holding Company retiring or selling shares formerly allocated to their accounts because those individuals had no property interest in that stock. In short, the capital raise did not involve plan assets and was not subject to ERISA's fiduciary obligations. *Fidelity*, 829 F.3d at 60-62 (affirming dismissal of prohibited transaction claims because cash received in exchange for mutual fund shares was not a plan asset).

An example highlights the fatal flaws in Plaintiff's argument. She contends that, following the distribution to Mr. Spicer, the shares allocated to his account were placed in the suspense account. Mem. at 8. Those shares were then released from the suspense account and allocated to other participants as the loans were repaid. Mem. at 19. But applying Plaintiff's theory of liability for the capital raise to Mr. Spicer's distribution, Mr. Spicer retained an ownership interest in those shares—even though he had already received a distribution exceeding $1 million—meaning that those shares should not have been allocated to any other participant's account but instead set aside for his future use. The same outcome would apply to every other participant who received a cash distribution in exchange for their shares between 2007 and 2016. That obviously is not how an ESOP works and is plainly contrary to ordinary notions of property rights.[21]

### 2. *Plaintiff has not established that any Defendant who participated in the capital raise acted in a fiduciary capacity.*

The Court also should deny Plaintiff's summary judgment motion regarding the capital raise because she has not established that the Defendants who participated in the capital raise acted

---

[21] This also disposes of Plaintiff's claim that Defendants violated Section 403(c)(1), 29 U.S.C. § 1103(c)(1), which states that "assets of the plan" shall not "inure to the benefit of the employer" but must be "held for the exclusive purpose of providing benefits to participants," Am. Compl. ¶ 182, 187, because the capital raise did not involve "assets of the plan."

in a fiduciary capacity. *In re Honda of Am. Mfg., Inc. ERISA Fees Litig.*, 661 F. Supp. 3d 861, 868 (S.D. Ohio 2009) ("self-dealing" claim under Section 406(b) requires proof "[D]efendants engaged in a 'transaction' prohibited by that section *while acting in a fiduciary capacity*"). Plaintiff claims each Defendant who participated in the capital raise was a fiduciary of the ESOP because he served as a member of the Holding Company's Board. But an individual, even a fiduciary named in the plan documents, is not a fiduciary for every purpose. *Burke v. Boeing Co.*, 42 F.4th 716, 725 (7th Cir. 2022) ("[f]iduciary status . . . depends not on formal titles but on '*functional* terms of control and authority over the plan'"). Defendants are only fiduciaries with respect to the capital raise if they exercised authority or control over plan assets in connection with the capital raise. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). Because the capital raise did not involve ESOP "assets," it does not implicate ERISA's fiduciary duties. Even if it did, no Defendant who purchased shares exercised any authority or control.

The exercise of "authority or control" requires "*actual* control" over the plan assets in question. *Walsh v. Principal Life Ins. Co.*, 266 F.R.D. 232, 250 (S.D. Iowa 2010). No Defendant who purchased shares had control over the decision for the Holding Company to enter into the capital raise. Plaintiff baldly asserts that "Defendants who served on the Board in 2018 exercised discretion over the disposition of Plan assets by authorizing these self-dealing transactions." Mem. at 29. That is not correct. The full Board delegated exclusive and ultimate authority to review and approve the capital raise to a Special Committee of the Board, composed of Pamela Stone and Gregory Wolfrey, who *did not* purchase shares in the capital raise and are not Defendants to this lawsuit. ECF 171-71; 171-72. Thus, no Defendant who participated in the capital raise authorized or controlled the "disposition" of any ESOP asset, and none was acting in a fiduciary capacity with respect to the capital raise. *Allen v. Credit Suisse Sec. (USA) LLC*, 895 F.3d 214, 224 (2d Cir. 2018

(defendants not fiduciaries when transactions initiated "at the discretion" of someone else); *see also Burke*, 42 F.4th at 726-27 (defendants did not have discretion over decisions that they delegated to another entity).

### 3.   *Plaintiff lacks Article III standing to challenge her benefit distribution and the capital raise.*

To satisfy the "irreducible constitutional minimum" of Article III standing, Plaintiff must *prove* she suffered an "injury in fact," i.e., "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiff fails this requirement for both her own benefit distribution, any other benefit distributions, and the capital raise.[22]

Plaintiff received her benefit distribution on August 24, 2018—a check for $165,701.42, the value of the 4,755 shares in her account times $34.65 per share, along with the cash in her account. ECF 171-3. The capital raise took place well *after* Plaintiff's benefit distribution and at a time when she no longer had any interest in the ESOP. As a matter of logic, a transaction that took place after she received a benefit distribution cannot have caused her an injury in fact.

Plaintiff previously argued she has Article III standing to challenge her own benefit distribution and the capital raise because she was entitled to a "contemporaneous" valuation, which *might* have entitled her to a larger benefit than she received on August 24, 2018, thus preserving her status as a "participant" in the ESOP. *See* ECF 131 at 14. But Plaintiff has adduced no evidence that the $34.65 per share she received was too little, because she has not shown that a "contemporaneous" valuation would have been any different. *See supra* at 26. And even if a

---

[22] The Court previously found that Plaintiff plausibly *alleged* an injury in fact based on her allegation and argument that she did not receive a "contemporaneous" valuation and therefore might be entitled to additional benefits. ECF 131 at 14. At this stage, she must proffer evidence, not allegations, to support standing and she has not.

statutory violation occurred, i.e., "an injury in law," that is not an "injury in fact" for Article III purposes. Instead, "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).[23] Because it is undisputed that on August 24, 2018, Plaintiff received the entire vested benefit owed to her, she no longer qualified as a participant after that date. This means that she lacks Article III standing (and statutory standing for that matter), and the Court lacks subject matter jurisdiction over Plaintiff's claim challenging her own benefit distribution and any actions that occurred after August 24, 2018.

Plaintiff also previously argued she has Article III standing to challenge the capital raise because the Defendants must disgorge their profits. ECF 131 at 13-14 (citing Plaintiff's argument that "ill-gained profits" from the capital raise must be returned). As discussed herein, the capital raise did not involve ESOP assets. And even if it did, Plaintiff no longer had an ESOP account in November 2018 and lacks Article III standing to pursue this claim.[24] For example, the Second Circuit explained that a former participant might retain statutory standing to sue as a "participant" "when it is alleged that the distribution she received was diminished because of fiduciary breaches that occurred during the time the employee was enrolled in the plan." *Caltagirone v. N.Y. Cmty.*

---

[23] This claim fails because Plaintiff has not shown a "loss," i.e., that "there is a difference between the current value of the Plan as compared to what the Plan would have been worth had the breach not occurred." *Sims*, 2018 WL 3128996, at *5. She lacks Article III standing for the same reason.

[24] Plaintiff previously suggested she suffered an injury in fact because, if Defendants had not sold the ESOP stock formerly allocated to her account in conjunction with the capital raise in November 2018, she would have received a larger benefit on August 24, 2018. *See* ECF 144 at 15. That is illogical. The use of stock after Plaintiff received her benefit distribution cannot have impacted the benefit she received. And disgorgement of Defendants' purportedly "ill-gotten" profits, the only remedy sought relating to the capital raise, is not a "benefit" offered by the ESOP, but a restitutionary remedy. *E.g.*, *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007) (ERISA plaintiffs arguing they have a claim to vested benefits must "show that they are claiming an amount of money to which they are entitled by the ***plan documents*** over what they received when they retired and received the money in their retirement accounts") (emphasis added).

*Bancorp*, 257 F. App'x 470, 474 (2d Cir. 2007). That is the "contemporaneous" valuation claim that Plaintiff asserts, but for which she fails to show that her benefit was "diminished because of fiduciary breaches" that occurred while she was an ESOP participant. *Id*. The Second Circuit then explained "[t]here is no reason in law or logic to extend this principle to a situation where, as here, the participant took a total distribution prior to the alleged fiduciary breaches," because a plaintiff in that circumstance "cannot show that they suffered any losses as a result of the alleged fiduciary breaches." *Id.*; *see also Stanton v. Gulf Oil Corp.*, 792 F.2d 432, 434-35 (4th Cir. 1986) (affirming that former participant lacked standing under ERISA to assert fiduciary breach claims based on actions that occurred after he ceased to participate in plan). That is true here too. At most, any claim for disgorgement of profits lies with the DOL or Mr. Mulkey, not Plaintiff, an outcome confirmed by Plaintiff's own argument. *See* Mem. at 28 (arguing that "[l]egal title to [shares formerly allocated to participants] was held by *Trustee Mulkey*" (emphasis added)). Assuming for argument's sake that Plaintiff's unpled theory that Mr. Mulkey owned the shares following benefit distributions is correct, and it is not, that means only that Mr. Mulkey would have standing to sue, not Plaintiff or any other ESOP participant who accepted a cash distribution in exchange for their ESOP shares.

## IV.    CONCLUSION

Defendants respectfully request that the Court deny Plaintiff's motion for summary judgment, grant Defendants' MSJ, and dismiss Plaintiff's claims with prejudice.

Dated: July 28, 2023

Respectfully submitted,

By: */s/ Matthew J. Sharbaugh*

**MORGAN, LEWIS & BOCKIUS LLP**
Matthew J. Sharbaugh
Donald L. Havermann (*pro hac vice*)
Oluwaseun O. Familoni (*pro hac vice*)
Mathew J. McKenna (*pro hac vice*)
1111 Pennsylvania Avenue, NW
Washington, DC 20004
202.739.3000
202.739.3001 (fax)
matthew.sharbaugh@morganlewis.com
donald.havermann@morganlewis.com
shay.familoni@morganlewis.com
mat.mckenna@morganlewis.com

Jeremy P. Blumenfeld (*pro hac vice*)
1701 Market Street
Philadelphia, PA 19103-2921
215.963.5000
215.963.5001 (fax)
jeremy.blumenfeld@morganlewis.com

Sean K. McMahan (*pro hac vice*)
1717 Main Street, Suite 3200
Dallas, TX 75201
214.466.4000
214.466.4001 (fax)
sean.mcmahan@morganlewis.com

Deborah S. Davidson (*pro hac vice*)
110 North Wacker Drive
Chicago, IL 60606-1511
312.324.1159
312.324.1001 (fax)
deborah.davidson@morganlewis.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 28, 2023, the foregoing document was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's ECF system.

*/s/ Matthew J. Sharbaugh*

Matthew J. Sharbaugh
