## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Charlottesville Division

| | |
|---|---|
| JANICE A. MOORE, ON BEHALF OF HERSELF AND A CLASS OF ALL SIMILARLY SITUATED PARTICIPANTS IN THE VIRGINIA COMMUNITY BANKSHARES, INC. EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Plaintiff,<br><br>v.<br><br><br>BLUE RIDGE BANKSHARES, INC., SUCCESSOR BY MERGER OF VIRGINIA COMMUNITY BANK, *et al.*,<br><br>Defendants. | <br><br><br><br><br><br><br><br>Case No. 3:19-cv-00045 |

---

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

---

## I.
### INTRODUCTION

This is a class action lawsuit seeking recovery for alleged violations of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1001 *et seq.* ("ERISA"). Specifically, Plaintiff has sought recovery on behalf of herself and others for alleged wrongful acts by Defendants concerning the Virginia Community Bankshares, Inc. Employee Stock Ownership Plan (the "ESOP" or the "Plan").[1] Plaintiff has sought to represent a class of similarly situated former Plan participants and beneficiaries whom she believes to have suffered similar damages to her own. The Plaintiff and the members of the class she seeks to represent were all former employees (or their beneficiaries) of

---

[1] Capitalized terms not otherwise defined herein shall have the same meaning as in the Settlement Agreement ("Agreement").

Virginia Community Bank, Inc and were participants in the ESOP. The Defendants in this matter are Blue Ridge Bankshares, Inc., Successor by Merger of Virginia Community Bankshares, Inc., Blue Ridge Bank, N.A., Successor by Merger of Virginia Community Bank, John Hodge, H.B. Sedwick III, A. Pierce Stone, Thomas Crowder, Andrew Holzwarth, A. Preston Moore, Jr., Amy Schick and Mark Sisk (collectively, "Defendants"). Plaintiff's Complaint alleges that, from 2007 until final distributions from ESOP were completed in 2018, the Defendants individually or collectively breached their fiduciary duties established by ERISA, and engaged in transactions prohibited by ERISA, and that the Plan participants suffered significant losses in the value of their ESOP retirement benefits and suffered harms for which they are entitled to equitable remedies. The Defendants deny these allegations and deny any liability for the above, or for any other acts or omissions concerning the ESOP, its administration, or its winddown.

As explained more fully below, after over four years of litigation, the Parties have negotiated a settlement agreement ("Agreement") that will resolve the claims of Plaintiff and the Class Members. By this Unopposed Motion, Plaintiff seeks certification, for settlement purposes only, of a settlement class pursuant to Federal Rule of Civil Procedure 23(b)(1).

The Class that Plaintiff asks this Court to preliminarily certify is:

All VCB employees, excluding Defendants, who were vested participants in the ESOP between January 1, 2007, and December 31, 2018, including any former employee who had not received a full distribution of his or her ESOP account as of January 1, 2007, with the exception of former employees who received a full distribution of their ESOP accounts during the 2007 Plan year (the "Class")

The Gross Settlement Amount that will be paid pursuant to the Agreement is $6,000,000.00[2], inclusive of attorneys' fees, costs, expenses, a court-approved service award for the Plaintiff, and settlement administration fees and expenses. The Agreement fully discloses all terms and is filed as

---

[2] To be paid by Defendant Blue Ridge Bankshares, Inc.

Exhibit 1 to the Motion for Preliminary Class Action Settlement Approval. The Parties reached the Agreement after mediating this matter before The Hon. Joel Hoppe, U.S. Magistrate Judge for the Western District of Virginia.

Plaintiff believes the Agreement is fair, reasonable, and adequate, and that it satisfies all criteria for settlement approval under binding Fourth Circuit precedent.

## II.
### ISSUES PRESENTED

By this Unopposed Motion, Plaintiff asks the Court to: (1) preliminarily and conditionally (for settlement purposes only) certify a proposed settlement class pursuant to Rule 23(b)(1) and (e) of the Federal Rules of Civil Procedure; (2) appoint Janice A. Moore as Class Representative for the Settlement Class and the Krudys Law Firm, PLC; Marie Carter, PLC; and Butler Curwood PLC as Class Counsel for the Settlement Class; (3) approve the proposed Notice of Class Action Settlement ("Notice") attached as Exhibit A to the Settlement Agreement; (4) set a date by which Plaintiff must file a motion for final settlement approval and award of attorneys' fee, expenses, and/or costs; (5) schedule the Fairness Hearing; and (6) authorize and approve the establishment of a Qualified Settlement Fund ("QSF") related to this Agreement.

## III.
### SUMMARY OF FACTS AND PROCEDURAL HISTORY

Janice Moore filed this case on behalf of herself and others similarly situated, on August 12, 2019, alleging that the Defendants violated ERISA through a series of loan obligations undertaken by the ESOP trustees in 2007 and 2008 to fund payments to retiring Plan participants. [ECF 1]. On September 25, 2019, the Defendants moved to dismiss the Complaint arguing that Plaintiff's claim was time barred by ERISA's statute of repose. [ECF 15]. Following oral argument, on January 21, 2020, the late Hon. Glen E. Conrad took the Defendant's motion under advisement and ordered that additional documentation be entered into the record and for additional briefing. [ECF 27]. On June

26, 2020, the Court denied Defendants' Motion to Dismiss. [ECF 45]. Following that Order, the parties continued to engage in the discovery process and in March of 2021 mediated with the assistance of a private mediator but were unable to resolve this dispute. On April 22, 2021, this matter was transferred to the Hon. Senior United States District Judge Norman K Moon. [ECF 54].[3] In August of 2021, Ms. Moore sought leave to amend the Complaint to allege that attendant to the Plan winddown the Defendants engaged in several more prohibited transactions in the 2018-time range in . [ECF 61]. The Defendants opposed the Motion, arguing it was futile. [ECF 69]. Following significant briefing, on March 30, 2022, the Court allowed the Amendment and the Amended Complaint became the operative Complaint. [ECF 73]. The Defendants timely filed their Answer on June 6, 2022. [ECF 78].

On August 25, 2022, a Joint Pretrial Order was entered and trial was set for October 11-20, 2023 along with myriad other deadlines for key matters including dispositive motions, expert disclosures, and class certification. Following the July 10, 2022, death of former Defendant Ronald Spicer, the Defendants successfully moved to dismiss him from the case on October 25, 2022. [ECF 90]. The following day, October 26, 2022, the Defendants moved for Summary Judgment on Plaintiff's original claims based on the Statute of Repose issue. [ECF 91]. On December 9, 2022, Plaintiff filed her Motion for Class Certification. [ECF 98]. That same day, the Defendants filed a motion under Rule 12(b)(1) asserting that Plaintiff's claims associated with the Plan winddown were barred for a lack of standing. [ECF 100]. Following full briefing on each motion[4], on March 30, 2023, the Court denied Defendants' Motion for Summary Judgment and denied its Rule 12(b)(1) Motion to Dismiss. [ECF's 129-132]. The Court did not rule on class certification at that time. Finally, also on that day, Judge Moon effected the transfer of this matter to your Honor. [ECF 133].

---

[3] Unfortunately, Judge Conrad passed away about one month later, in late May of 2021.
[4] The Court also heard oral argument as to the Rule 12(b)(1) Motion and Defendants' Partial Motion for Summary Judgment.

On April 27, 2023, the Defendants filed a Motion for Reconsideration of the March 30th rulings. [ECF 137]. Following oral argument, the Court denied Defendants' Motion for Reconsideration. [ECF 158]. On June 29, 2023, the parties filed cross Motions for Summary Judgment. [ECF 166] for the Plaintiff and [ECF 170] for the Defendants. Additionally, the Defendants also moved that day for the exclusion of Plaintiff's expert. [ECF 168]. The parties successfully mediated the matter before the Hon. U.S. Magistrate Joel Hoppe on August 8, 2023, and reached a settlement in principle which was later canonized in a term sheet that served as the basis for the Settlement Agreement now before the Court. At the time of the Settlement Conference with Judge Hoppe, trial was roughly two months away and before the Court were dueling Summary Judgment Motions, Class Certification, and a Motion to Exclude Testimony.

As shown herein, the parties engaged in active motions practice for the duration of the litigation and diligently prepared for what was expected to be a multi-week trial where any verdict may well have been the subject of appeal. Additionally, over the past four years, the parties have engaged in significant written and deposition discovery, with the depositions coming since the allowance of the Amended Complaint.

The Agreement reached by the parties serves to resolve all claims against the Defendants with respect to the Plan. It provides meaningful recoveries for the Class of former Plan members and provides certainty to the Defendants and allows the Blue Ridge Defendants to move on from a time-consuming and expensive distraction they inherited several years ago by way of the merger.

## IV.
## SUMMARY OF SETTLEMENT TERMS

### A.     The Settlement Fund

The Parties have agreed to settlement of this matter for the Gross Settlement Amount of Six Million Dollars and Zero Cents ($6,000,000.00). Included in that amount is Class Counsel's attorneys' fees and out-of-pocket expenses, litigation costs, settlement administration fees and costs, and a

service award for the Plaintiff. The remaining funds shall constitute the Net Settlement Amount. The Net Settlement Amount shall be disbursed on a *pro rata* basis as determined by the Plan of Allocation set out in the Settlement Agreement. The Plan of Allocation formula was created by Plaintiff's counsel and has been reviewed by Defendants' counsel. The Plan of Allocation assumes each ESOP participant would receive an amount equal to the maximum amount such participant would have received in the event of full recovery for all damages sought at trial (the "best day" damages). Factors affecting the *pro rata* allocation to a Class Member will include the number of years the Class Member was an ESOP participant, contributions made to the Class Member's ESOP account applied to repay the allegedly prohibited ESOP loans, and the final distribution amount the Class Member received for his or her ESOP stock.

**B.      Individuals Included in the Proposed Settlement Classes and Settlement Deadlines**

The Parties have agreed that the proposed Class is comprised of:

All VCB employees, excluding Defendants, who were vested participants in the ESOP between January 1, 2007, and December 31, 2018, including any former employee who had not received a full distribution of his or her ESOP account as of January 1, 2007, with the exception of former employees who received a full distribution of their ESOP accounts during the 2007 Plan year.

**C.      Settlement Allocation**

After calculating the total Net Settlement Amount (the amount remaining after deducting attorneys' fees, costs, expenses, the service award, and administration fees and costs), each Class member will receive a *pro rata* share of that amount as determined by their individualized Allocation Score (i.e. their claim's percentage value of the whole class) as determined by the Plan of Allocation appended to the Settlement Agreement. The Plaintiff and all Class Members will receive their *pro rata* share of the respective settlement funds according to the process detailed in the Plan of Allocation. The Claims Administrator will be provided with a schedule of allocation amounts for Class Members calculated by Plaintiff's counsel pursuant to the formula described in the Plan of Allocation. Exact

numbers cannot be determined at this time as the quantum of administrative costs is as yet unknown. Nevertheless, Plaintiff's counsel estimates that the average net settlement amount to Class members will be a little over $30,000, with certain Class Members receiving considerably less or more based primarily on years of participation in the ESOP. The entirety of the $6,000,000 Settlement Fund will be disbursed and there will be no reversion of any kind to the Defendants.[5]

The Plan of Allocation includes loss calculations associated with (i) the ESOP loan transactions; (ii) the valuation of ESOP stock in 2018; (iii) gains realized by Defendants in connection with the sale of ESOP stock; and (iv) ESOP termination expenses deducted from the ESOP accounts. The ESOP loan transaction calculations assume that all funds applied to pay the ESOP loans were instead applied to purchase stock at the current fair market value, resulting in additional shares allocated to the Class Members's ESOP accounts. The calculations associated with stock valuation and gains realized by Defendants in connection with the sale of ESOP stock assume the Class Members received value of such stock realized by shareholders in connection with the Virginia Community Bank/Blue Ridge Bank merger. The calculations associated with ESOP expenses assume the cash deducted from a Class Member's account to pay such expenses, plus interest, is restored to the account.

## D.     Releases

Each Class Member will receive a comprehensive Notice of Settlement describing all facets of the settlement and directing them on who to contact to learn more if they have questions as well as to the settlement website if they wish to view additional pertinent documents. Additionally, the Notice also provides information concerning Class Members' right to elect to have their settlement proceeds

---

[5] The Settlement Agreement specifically provides that in the event a Class Member is deceased or cannot be located that their settlement funds be distributed to the beneficiary(s) as set out in the Plan. In the event a payment cannot be made to a particular Class Member, that individual's settlement allocation will go to *cy pres*. The parties have selected the AARP Foundation as the recipient of the *cy pres*, if any. In no event will settlement funds revert to the Defendants or be reallocated to other Class Members.

rolled over to an individual retirement account (IRA) as opposed to receiving a taxable cash payment. Finally, and importantly, the Notice also contains instructions on how object to the settlement should any Class Members choose to do so.

As more fully set out in the Settlement Agreement and in the Class Notice, in exchange for the Class Settlement, each Class Member will be deemed to have released any and all claims against the Defendants and the Released Parties related to the Plan and the acts or omissions of the Defendants and Released Parties in connection with the Plan. This release is properly and narrowly tailored to release only claims associated with the Plan and is no broader than necessary.

## E.      Service Award

In acknowledgement of the service she provided to the Settlement Class, and subject to court approval, Ms. Moore, the Plaintiff, will be paid a Service Award of $17,500.00 in addition to her proportional share of the Net Settlement Amount. It should be noted that Ms. Moore was not made aware of the Service Award or the amount of same during negotiations. It was only after the settlement in principle was agreed to that she learned that a Service Award of any amount would be requested. In the eyes of Plaintiff's counsel, Ms. Moore's assistance cannot be overstated. Had she not come forward and sought counsel when she did, it is quite likely that the claims made in this litigation would have become untimely. Additionally, Ms. Moore provided counsel with assistance in developing the facts and timelines that comprised the Complaints filed in this matter and participated and assisted in discovery as well.

## F.      Settlement Claims Administration

Plaintiff will retain a third-party company to serve as the Settlement Administrator. The settlement administration fees will be paid out of the Gross Settlement Amount.

The Settlement Administrator shall be responsible for:

(i)      Issuing the Class Notice to all Class Members.
(ii)     Issuing the CAFA Notice to State and Federal authorities.

(iii) Creating and maintaining the Settlement website.
(iv) Establishing and maintaining the QSF.
(v) Disbursement of Settlement funds consistent with the Settlement Agreement and the elections of Class Members.
(vi) Payment of taxes associated with the QSF.
(vii) Payment of withholdings associated with Class Member disbursals.
(viii) Taking all actions consistent and necessary to comply with the Preliminary and Final Approval Orders.

Class Counsel shall have the ability to communicate with the Class Members to (a) confirm they received their Notice of Settlement, and (b) to answer any questions about the litigation and the Settlement Agreement. These communications may be by phone call, text message, or email, are Court-approved communications, and shall not be considered as solicitations or a violation of any other law.

## G.      Proposed Notice Constitutes Best Notice Practicable

Under Rule 23(e), the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." FED. R. CIV. P. 23(e). The proposed Settlement Notice notifies Class Members of this class action. The Settlement Notice is designed to inform the Class Members of the substantive terms of the proposed Settlement Agreement, their rights, and how to object to the settlement.

The Parties propose the proposed Settlement Notice, where feasible, will be distributed via First Class Mail, email, and text message by the Settlement Administrator. Utilizing three methods of notice dissemination provides the best practicable form of notice and provides the best opportunity that each Class Member receive their Settlement Notice to make sure that they are able to timely receive their settlement proceeds.

## E.      Attorneys' Fees and Litigation Costs

Under the terms of the Settlement Agreement, subject to Court approval, Class Counsel will request up to $2,000,000.00 in attorneys' fees[6] along with their actual litigation expenses and costs, which together represent payment of all reasonable attorneys' fees, expenses, and costs associated with the lawsuit. Class Counsel will submit a Motion for Approval of Attorneys' Fees and Costs either before, or in conjunction with the Final Approval Motion, or at a different date to be set by this Court.

## V.
### ARGUMENT & AUTHORITIES

### A.      Standard of Review

"Federal Rule of Civil Procedure 23(e) requires court-approval of any proposed settlement of a class action lawsuit, and further requires that class members receive notice of the settlement before the court approves it." *Winingear v. City of Norfolk*, No. 2:12CV560, 2014 WL 12526327, at *1 (E.D. Va. June 5, 2014).

There are typically three stages applicable to the review of a proposed class action settlement. *See* MANUAL FOR COMPLEX LITIGATION (4th) § 21.632–.634. First, the court conducts a preliminary fairness evaluation and, if applicable, considers class certification. *See id.* at § 21.632 (noting that if the parties move for both class certification and preliminary approval, the certification hearing and preliminary fairness evaluation can usually be combined). Second, if the court makes a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms, the parties are directed to prepare the notice of certification and proposed settlement to the class members. *Id.* at § 21.633. Third, the court holds a final fairness hearing to determine whether to approve the settlement. *Id.* at § 21.634.

### B.      Preliminary Class Settlement Approval Process

---

[6] Counsel's current lodestar is in excess of $2,000,000.00 and will continue to grow through the settlement process. Nevertheless, as a term of settlement, counsel have agreed to seek no more than $2,000,000.00 in attorneys' fees from the Settlement Fund.

Courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." *Gunnells v. Health Plan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (citing *In re A.H. Robins*, 880 F.2d 709, 740 (4th Cir. 1989), cert. den., *Anderson v. Aetna Cas. and Sur. Co.*, 493 U.S. 959 (1989)), cert. den., *Healthplan Services, Inc. v. Gunnells*, 542 U.S. 915 (2004); *see also Kidwell v. Transportation Communications International Union*, 946 F.2d 283, 305 (4th Cir. 1991), cert. den., 503 U.S. 1005 (1992) ("[t]rend is to give Rule 23 a liberal construction."); *Rodger v. Electronic Data Systems Corp*, 160 F.R.D. 532, 535 (E.D.N.C. 1995). Here, the issue of Rule 23 certification was fully briefed at the time of settlement, and it may well be possible that the Court had been prepared to issue its ruling had the parties not agreed to a settlement. Regardless, when a settlement is reached prior to Rule 23 certification, the law permits a class to be certified solely for the purposes of settlement. FED. R. CIV. P. 23(e); *Gonzalez v. O.J. Smith Farms, Inc.*, No. 5:20-CV-00086-FL, 2020 WL 7388435, at *2 (E.D.N.C. Dec. 16, 2020). Although Rule 23(e) does not delineate a procedure for court approval of settlements of class actions, courts have generally followed a multi-step process. *See* FED. R. CIV. P. 23(e)(2).

Federal courts generally find that preliminary approval of settlement and notice to the proposed class is appropriate if the proposed settlement "appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." NEWBERG ON CLASS ACTIONS § 13:13 (5th ed. 2011).

At the preliminary approval stage, courts must both ensure that all of the requirements of Rule 23(a) and one of the sections of 23(b) are satisfied and determine that the settlement falls within the range of possible approval. *See* FED. R. CIV. P. 23(a)–(b); *Winingear*, 2014 WL 12526327, at *1 (quoting *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014)

(recognizing that courts must "consider plaintiffs' expected recovery balanced against the value of the settlement offer" in determining if the settlement falls within the range of possible approval)). Preliminary approval requires an exacting and thorough examination of the settlement at issue, not merely a "judicial rubber-stamp" of the parties' agreement. *Id.* The Court must be provided with the necessary information "to evaluate the fairness or adequacy of a proposed settlement." *Id.* (citing *Martin v. Cargill, Inc.*, 295 F.R.D. 380, 383–84 (D. Minn. 2013)). There is a strong judicial policy in favor of settlement. *Gonzalez*, 2020 WL 7388435, at *2 (citing *Bennett v. Behring Corp.*, 737 F. 2d 982, 986 (11th Cir. 1984)).

## C.     Rule 23's Requirements Are Satisfied by the Proposed Class Settlement

As alluded to above, Plaintiff's Rule 23 certification motion had not yet been ruled on by the Court when the settlement was reached. For the same reasons as before, but now for the express and sole purpose of settlement[7], Plaintiffs again seek class certification under Rule 23(b)(1). The certification requirements of Rule 23 generally apply even when certification is for settlement purposes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997); *see also* FED. R. CIV. P. 23(b)(1). To be certified, the proposed class must first satisfy the four threshold requirements of Rule 23(a), which provide that:

(1)     the class is so numerous that joinder of all members is impracticable;

(2)     there are questions of law or fact common to the class;

(3)     the claims or defenses of the representative parties are typical of the claims or defenses of the class;

(4)     the representative parties will fairly and adequately protect the interests of the class.

*See* FED. R. CIV. P. 23(a).

---

[7] Defendants do not oppose class certification for the purpose of settlement, but reserve any previously filed opposition to class certification for any other purpose.

If the prerequisites of Rule 23(a) are met, a proposed class seeking damages must also satisfy the requirement of at least one subsection under Rule 23(b).

1.     The Proposed Class Satisfies Rule 23(a)(1)'s Numerosity Requirement

Rule 23(a)(1)'s numerosity requirement is met if the class is "so numerous that joinder of all members is impracticable." *See id.* at 23(a). There is no set number of members necessary for class certification and the decision to certify or not certify a class must be based upon the particular facts of each case. *Id.* (citing *Haywood v. Barnes*, 109 F.R.D. 568, 576–77 (E.D.N.C. 1986) (recognizing courts have "certified classes composed of as few as eighteen . . . and twenty-five members"). Here, the numerosity requirement is certainly met. As derived from the Plan census documents, the proposed class encompasses 119 Class Members. These numbers clearly show that individual joinder would be impracticable—if not impossible. *See id.*

2.     The Proposed Class Satisfies Rule 23(a)(2)'s Commonality Requirement

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." The commonality requirement "is not a high bar." *Minter v. Wells Fargo Bank, N.A. et al.,* 274 F.R.D. 525 (M.D. 2011) and largely intertwined with the typicality factor. *See General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 157 n.13 (1982)

"Rule 23(a) requires only that resolution of the common questions affect all or a substantial number of the class members." *McLaurin,* 271 F.R.D. at 475. The commonality and typicality requirements may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. *See Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 344 (4th. Cir. 1998) ("We…do not suggest that the commonality and typicality elements of Rule 23 require that members of the class have identical factual and legal claims in all respects.").

Plaintiff contends there are two overarching questions of law and fact common to the Class:

a.  Whether the Defendants' conduct with respect to the subject loan transactions violated their fiduciary duties to the ESOP participants.

b.  Whether the Defendants' conduct with respect to the wind down of the ESOP violated their ERISA fiduciary duties to the ESOP participants.

The appropriateness of class treatment in an ERISA case (as in other class actions) depends on the claims for which certification is sought. *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 813 (7th Cir. 2013). "Congress has expressly provided that a fiduciary 'who breaches any of the ... duties imposed [by ERISA] shall be personally liable to make good to [the] plan any losses to the plan resulting from [the] breach.'" *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 369 (4th Cir. 2014) (quoting 29 U.S.C. § 1109(a)).

In this case, Plaintiff asserts that the Defendants were the Plan sponsor and its fiduciaries and that they breached their fiduciary duties to the Class in numerous ways. Defendants are alleged to have engaged in illegal loan transactions for over nine years that drained the accounts of the ESOP participants. Plaintiff further asserts that in 2018 when it came time to make final distributions to the ESOP participants, Defendants failed in their duties as fiduciaries and engaged in transactions with ESOP stock for their personal gain.

Plaintiff contends that these alleged breaches give rise to Plaintiff's (and those similarly situated) right to recovery for the Plan as a whole for the losses caused by those breaches. In the case at bar, damage to the Plan could be shown by objectively proving that there was a fiduciary breach that resulted in a diminishment of the Plan's value. *DiFelice*, 235 F.R.D. at 70, 78 (citations omitted); *see also Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 362 (4th Cir. 2014). "The recovery is obtained by the plan—even if it is for injury only to a particular individual account—because the aggregation of individual accounts defines the assets of the plan." *In re Mut. Funds Inv. Litig.*, 529 F.3d at 218.

Against this backdrop, Plaintiff and Class Members clearly share several common factual and legal issues sufficient to satisfy the commonality requirement: Each Class Member is an individual who: (1) was a participant in the Plan governed by the same form documents and one statute; and (2) who was a Plan participant at some time between 2007 and 2016. While there may be individuals who retired earlier than others, and therefore may not be subject to damages associated with the winddown, such a difference speaks only to the quantum of damages associated with Plan members' individual ESOP accounts and not to any lack of commonality amongst Class members.

Plaintiff alleges a common course of conduct under the First Amended Complaint and her claims speak to how the Defendants actions harmed the Plan as a whole. As set out above, the First Amended Complaint asserts myriad common legal questions. These common legal questions focusing on Defendants' conduct and injury to the Plan satisfy the commonalty requirement under Rule 23(a)(2).[8]

### 3.    The Proposed Class Satisfies Rule 23(a)(3)'s Typicality Requirement

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality ensures the interests of the class and class representative align meaning the class representative will act to the benefit of the class's interest. The claims of representatives and class members need not be factually identical. *Lienhart v. Dryvit Systems Inc.,* 255 F.3d 138 (4th. Cir. 2001). "[E]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories," *Baby Neal v. Casey,* 43 F.3d 48, 58 (3d Cir. 1994), and "cases challenging the same unlawful conduct which

---

[8]  *See Kindle v. Dejana,* 315 F.R.D. 7, 11 (E.D.N.Y. 2016) (commonality found in fiduciary duty case under ERISA); *In re Enron Corp.,* No. MDL 1446, Civ. A. H-01-3913, 2006 U.S. Dist. LEXIS 43145, at *49-50 (S.D. Tex. June 7, 2006) (same); *Rogers v. Baxter Int'l Inc.,* No. 04-c-6476, 2006 U.S. Dist. LEXIS 12925, at *8-9 (N.D. Ill. Mar. 22, 2006) (same)

affects both the named plaintiffs and the putative class usually satisfy the typicality requirement." *Stewart v. Abraham*, 275 F.3d 220, 227 (3d. Cir. 2001) (internal quotation marks and citation omitted)).

Here, the only factual difference among the individual class members is the amount of alleged harm done, i.e. the diminished value of each individual ESOP account. The Class members' claims arise from the same course of conduct, rely on the same legal theory, and would have been proven using the same evidence. A Plaintiff satisfies the typicality requirement because their "allegations are not based on conduct unique [to them]." *Dornberger v. Metropolitan Life Insurance Co.,* 182 F.R.D. 72, 81 (S.D.N.Y. 1998). That common course of conduct is crucial. The "mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification." *Difelice v. U.S. Airways, Inc.*, No. 1:04cv889, 2006 U.S. Dist. LEXIS 15711, at *21 (E.D. Va. Mar. 22, 2006). "'Factual differences among the class members' cases will not preclude class certification if the class members share the same legal theory'." *Lutz v. Int'l Ass'n of Machinists & Aerospace Workers*, No. 00-148-A, 2000 U.S. Dist. LEXIS 18971, at *21 n.8 (E.D. Va. Oct. 12, 2000). Factual "variances in the amount of damages claimed, or differences in the availability of certain defenses against the representative plaintiffs, does not prohibit a finding of typicality as long as the claims are based on the same legal or remedial theory." *Jeffreys v. Communs. Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003).

Plaintiff and other class members were all participants in the same Plan and thus each was made subject to the result(s) of Defendants' alleged actions. Plaintiff possesses "the same interest[s] and suffer[ed] the same injury" as other members of the proposed class. *East Texas Motor Freight System, Inc. v. Rodriquez*, 431 U.S. 395, 403 (1977). Because Plaintiff claims that the Defendants caused the Plan to improperly absorb massive losses as well as cause Plan participants to lose out on the increased value in shares occasioned by the Blue Ridge Merger, Plaintiff shares the same legal interests and theories as Class Members to seek appropriate recovery for same.

Here, because the relief is brought and requested on behalf of the entire Plan, any rulings on liability would apply to all members of the class. *See Boyd v. Coventry Health Care, Inc.*, 299 F.R.D. 451, 459 (D. Md. 2014) ("In general, the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries.").

4. The Proposed Class Satisfies Rule 23(a)(4)'s Requirement for Adequacy of Representation

Rule 23(a)(4) requires a showing that the "representative parties will fairly and adequately protect the interests of the class." "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625–26 (1997). "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Id.* at 625–26 (quoting *East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977). To meet the adequacy requirement, "the class representatives must adequately represent the interests of the class members, and legal counsel must be competent to litigate for the interests of the class." *Jeffreys*, 212 F.R.D. at 323. A conflict between the Plaintiff and the Class Members "must be more than merely speculative or hypothetical[ ]" to defeat the adequacy requirement—instead, the "conflict must be fundamental." *Gunnells*, 348 F.3d at 430.

Here, both aspects of Rule 23(a)(4)'s adequacy requirement are met: (1) there is no conflict between the interests of the Plaintiff and the Class Members; and (2) Class Counsel are experienced in litigating complex multiparty actions like the one at issue. First, Plaintiff contends the following, (1) Plaintiff is typical of the class, and she has, and will continue, to fairly and adequately represent the interests of the class; (2) there is no potential conflict between the Plaintiff and the other members of the proposed class because she seeks redress for issues applying uniformly to all class members; and (3) Plaintiff's interests do not differ from those of the class as a whole, in that she seeks to benefit the proposed class by obtaining damages for all class members. Second, Class Counsel are experienced in

this type of litigation and have the resources to fully litigate this matter through trial on the merits, should such further litigation be required. *See* Declarations of Plaintiff's counsel [ECF 99-3].

5. The Proposed Class Satisfies Rule 23(b)(1)

"Rule 23(b)(1) allows class certification if individual actions would either create a risk of establishing incompatible standards of conduct for the defendants, Rule 23(b)(1)(A), or if adjudication of one claim would be dispositive of (or would substantially impair) the interests of other class members, Rule 23(b)(1)(B)… Alleged breaches by a fiduciary to a large class of beneficiaries present an especially appropriate instance for treatment under Rule 23(b)(1). Indeed, given the derivative nature of suits brought pursuant to § 502(a)(2) on behalf of the Plan, ERISA litigation of this nature presents a paradigmatic example of a (b)(1) class." *Knight v. Lavine*, 2013 U.S. Dist. LEXIS 14855 *10-11 (E.D. Va. Feb. 4, 2013) (citations omitted). As such, ERISA claims on behalf of plan participants fit hand in glove with Rule 23's purposes and guardrails.

> "A class may be certified under Rule 23(b)(1)(A) if separate actions "would create a risk of inconsistent or varying adjudications . . . that would establish incompatible standards of conduct" for the defendants or under 23(b)(1)(B) if separate actions would create a risk that individual actions would be "dispositive of the interests of other members not parties to the individual" suits or "would substantially impair or impede their ability to protect their interests."

*Berry v. Wells Fargo & Co.,* No. 3:17-00304, 2018 U.S. Dist. LEXIS 220095, at *32 (D.S.C. Oct. 9, 2018) (citations omitted).

"In essence, Rule 23(b)(1)(A) 'considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members.'" *Tatum*, 254 F.R.D. at 66 (M.D.N.C. 2008). While individual beneficiaries or participants may bring suit for fiduciary breaches, when, as here, a plaintiff seeks relief and certification that runs to the benefit of the "Plan as a whole and not individual plaintiffs," certification is appropriate. *Clark v. Duke Univ.*, 2018 U.S. Dist. LEXIS 62532 *24 (M.D.N.C. Apr. 13, 2018).

**Rule 23(b)(1)(A).** Rule 23(b)(1)(A) applies 'in cases *where the party is obliged by law to treat the members of the class alike [...]* or where the party must treat all alike as a matter of practical necessity'" *Amchem*, 521 U.S. at 614. Under 29 U.S.C. § 1109, fiduciaries are liable to the plan and may be found liable for damages occasioned by their breach(es) and be made to reimburse the plan. *In re Merck & Co.*, 2009 U.S. Dist. LEXIS 10243, at *36 (D.N.J. Feb. 9, 2009)). Rule 23(b)(1)(A)'s emphasis on avoiding "inconsistent adjudications" and "incompatible standards of conduct" for the Defendant is satisfied as the Plan sponsor and its fiduciaries were obligated to treat the members of the class alike under the Plan. *See In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (finding language of subdivision (b)(1)(A), addressing the risk of "inconsistent adjudications," speaks directly to ERISA suits, because the defendants have a statutory obligation, as well as a fiduciary responsibility, to "treat the members of the class alike"); *Cf. Alday v. Raytheon Co.*, 619 F. Supp. 2d 726, 736 (D. Ariz. 2008) (certifying class under Rule 23(b)(1)(A) "because ERISA requires plan administrators to treat all similarly situated participants in a consistent manner").

Plaintiff seeks class-wide relief, i.e., settlement, for alleged class-wide breaches. Settlement class certification ensures a consistent and known outcome for the Plan participants and for the Defendants. *See, e.g., In re Beacon Assoc. Litig.*, 282 F.R.D. 315, 342 (S.D.N.Y. 2012) (court concluding that "[a] breach of fiduciary duty claim brought by one member of a retirement plan necessarily affects the rights of the rest of the plan members to assert that claim, as the plan member seeks recovery on behalf of the plan as an entity," and that "the prosecution of separate actions would risk prejudice to putative class members."); *Shanehchian v. Macy's, Inc.* No. 1:07-cv-00828, 2011 U.S. Dist. LEXIS 24376, at *30 (S.D. Ohio Mar. 10, 2011) ("[B]ecause the fiduciary duties at issue ... are owed to the Plans, thousands of separate individual actions could result in differing standards of duty and, thus, differing standards of conduct with respect to Defendants and the Plans, which would be an untenable outcome."); *Chesemore v. Alliance Holdings, Inc.*, 276 F.R.D. 506, 517 (W.D. Wisc. 2011) (court noting

that the "plaintiffs [were] asserting claims against the trustees for breach of fiduciary duty" and that "[s]uits by individual class members could create inconsistent results for the fiduciaries."); *Harris v. Koenig*, 271 F.R.D. 383, 395 (D.D.C. 2010) (noting ordering restoration of plan assets and reformation of plan monitoring could lead to incompatible standards of conduct with respect to fiduciary duties and obligations toward the plan); *Stanford v. Foamex L.P.*, 263 F.R.D. 156, 173 (E.D. Pa. 2009) (finding risk of inconsistent orders arising from parallel plan-wide and individual account claims satisfied Rule 23(b)(1)(A)); *In re IKON Office Solutions, Inc.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) (potential for conflicting rulings on whether defendant was a fiduciary in part justified Rule 23(b)(1)(A) certification). Rule 23(b)(1)(A) certification therefore makes good sense and is warranted.

**Rule 23(b)(1)(B)**. "The structure of ERISA favors the principles enumerated under Rule 23(b)(1)(B), since the statute creates a 'shared' set of rights among the plan participants by imposing duties on the fiduciaries relative to the plan, and it even structures relief in terms of the plan and its accounts, rather than directly for the individual participants." *Douglin*, 115 F. Supp. 3d at 412 (citing *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833 n. 13 (1999)). The Advisory Committee Notes provide:

> [Rule 23(b)(1)(B)] takes in situations where the judgment in a non-class action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual action would lie in the fact that the other members of the class, thus practically concluded, would have had no representation in the lawsuit ... [This] reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust.

> Fed. R. Civ. P. 23(b)(1)(B) Advisory Committee's Note (1966 Amendment).

Based at least in part on the logic of the Advisory Committee, courts have concluded that subsection (b)(1)(B) is an appropriate subsection for class certification in an ERISA breach of fiduciary duty case. *See, e.g. Tatum*, 254 F.R.D. at 67 (relying on this comment to certify a Rule 23(b)(1)(B) class);

*DiFelice*, Inc., 235 F.R.D. at 80 (same); *Shirk v. Fifth Third Bancorp*, No. 05-CV-049, 2008 U.S. Dist. LEXIS 85151, at *16 (S.D. Ohio Sept. 30, 2008) (noting most courts rely on the Advisory Committee Note for Rule 23(b)(1)(B)).

The Advisory Committee Notes set out a situation similar to the instant one. Multiple individual actions would present a circumstance where "adjudications with respect to individual class members ... would be dispositive of the interests of other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). A determination of whether or not the Plan fiduciaries engaged in prohibited transactions would affect all participants, including Plaintiff and Class Members. That is to say, Plaintiff does not contend her claim is substantively different than those of her class brethren. Plaintiff brought an ERISA action in a representative capacity to enforce fiduciary duties on behalf of the Plan as a whole. The Settlement benefits the Plan participants as a whole. Given this nature of an ERISA claim which authorizes Plan-wide relief, there is a risk that failure to certify the Settlement Class would leave future plaintiffs without relief.

## D.     The Proposed Class Settlement Satisfies a Preliminary Fairness Evaluation

In determining a motion for preliminary approval of a class action settlement agreement the Court reviews the proposed settlement to make a preliminary fairness evaluation. *See Shaver v. Gills Eldersburg, Inc.*, No. 14-3977-JMC, 2016 U.S. Dist. LEXIS 54578, at *5 (D. Md. Apr. 25, 2016). Preliminary approval should be granted if the proposed settlement is within the range of possible approval. *Id.*

At this step, the court is only to determine whether there is "probable cause" that the proposed settlement is fair and reasonable. *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1380 (D. Md. 1983). A settlement is fair where it is the product of good-faith, arm's length bargaining without collusion. *In re Jiffy Lube*, 927 F.2d 155, 159 (4th Cir. 1991). In determining fairness, courts look at

"(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel." *Id.*

1.      <u>The Proposed Settlement is Fair</u>

Here, the four fairness factors favor a "probable cause" finding and approval of the proposed settlement. This settlement is not the result of collusion—but rather the result of a case that has been vigorously litigated for nearly a half-decade. This case only settled after the parties filed numerous contested motions and engaged in extensive discovery. The case was unsuccessfully mediated several years ago by a highly reputable national-scale class mediator. Then, it was not until within months of trial, with class certification and dueling dispositive motions all ripe for decision that the matter was finally resolved with the vital assistance of Magistrate Judge Hoppe.

i.      <u>Posture of the Case</u>

As explained in Section III above, Resolution was reached at a Judicial Settlement Conference on August 8, 2023, just two and half months before the matter was set for a late October trial. The matter involved numerous substantive contested motions of both the dispositive and non-dispositive variety.

ii.      <u>Extent of Discovery</u>

The Parties engaged in a robust and extended discovery process that took several years to complete. Discovery was sufficient to allow them to understand the case, the range of damages, and to assess the potential varying outcomes of the case.

Discovery in this case has been sufficient such that the Parties know the important facts affecting the case and have adequately assessed the respective benefits of settlement and potential risks of continued litigation. In addition, Class Counsel committed substantial resources and time in

investigating and analyzing the claims of the putative class. The proposed settlement calculations are based entirely on Plan data which drove the damages model Plaintiffs' counsel intended to use at trial.

### iii.  Circumstances Surrounding the Negotiations

The negotiations that resulted in this settlement were conducted at arms'-length before a United States Magistrate Judge. With Judge Hoppe's able assistance, the Parties agreed to a resolution in principle, at the close of the formal mediation (and later, a binding term sheet) and have continued to work together for months to fully finalize the Agreement before this Court. The Parties exchanged multiple drafts of the Agreement and held multiple further conferences to address settlement issues as they arose during the drafting process.

### iv.  Experience of Counsel

Class Counsel are experienced litigators who have consistently represented the interests of the Class. Leveraging the various expertise of the different Class counsel was essential in the successful litigation of Plaintiff's claims. *See generally* [ECF 99-3]. Defendants' Counsel are a team of attorneys from one of the most preeminent firms in the country. They are extremely experienced in ERISA and Class action litigation and are somewhat unique in that they have particular experience within the ESOP subset of ERISA litigation. They have litigated a number of high-profile class action matters in this area and have a tremendous knowledge base from which to work from.

### v.  Degree of Opposition to the Settlement

As Settlement Notice has not yet issued to the Class Members, Plaintiff is unable to fully respond to this factor. Plaintiff will fully address this factor in the motion for final approval, should this Court preliminary approve the Settlement Agreement and authorize the issuance of Notice.

An examination of the four fairness factors clearly demonstrate that this proposed settlement is not the result of collusion, but is the product of good-faith, arm's length bargaining overseen an impartial Federal Magistrate Judge. Therefore, this proposed settlement should be approved as fair.

### 2. The Proposed Settlement is Adequate

Likewise, the adequacy factors equally favor approval of the proposed settlement. While the adequacy factors are more relevant to this Court's decision in the final approval motion, they do provide guidance at the preliminary approval stage that the settlement is appropriate for certification. *See In re Jiffy Lube*, 927 F.2d at 159.

#### i. Strength of Plaintiffs' Case on the Merits

Plaintiff has asserted that Plan losses were occasioned by Defendants' actions. This caused a loss to individual accounts of all Class Members. Defendants have denied all of Plaintiff's allegations and has claimed, among other things, that no violations of ERISA occurred, that no class could be certified, that some or all of Plaintiff's claims are time barred or lack standing, and that some or all of the Class Members suffered no damages. While Plaintiff had successfully fended off motions concerning most of these defenses, it remained possible that Plaintiff could have suffered a bad result on the pending dispositive motions or class certification. Moreover, the upcoming trial would have offered Defendants any number of opportunities to fully or partially defeat Plaintiff's claims. Finally, Plaintiff believes that it was highly likely that any verdict in her favor would have been subject to vigorous appeal on any one or several of the highly disputed ERISA issues determined in earlier decisions. The Agreement provides for substantial compensation for the Class Members' claims and negates the risk of loss.

#### ii. Difficulties of Proof and Defenses

In order to prevail on her claims, Plaintiff would have been required to show that the claim was timely, that ERISA was violated, and also prove the existence of damages. The Defendants contended that Plaintiff could do none of the three. *See e.g,* [ECFs 15, 91, 100, and 170].

#### iii. Duration and Expense of Additional Litigation

This settlement is the result of significant litigation across a period extending more than four years. Had the matter gone to trial and then been appealed, it could have lasted for several more. The pleadings and briefs already filed in this Court demonstrate that this case has been difficult and expensive to resolve. Litigating this case to conclusion through appeal would cost each side significant amounts in additional attorneys' fees and the end result may still have been a settlement similar to the one currently before the Court.

Therefore, this factor also supports the adequacy of the proposed settlement.

### iv.     Solvency of Defendant and Likelihood of Recovery

The fourth adequacy factor, Defendants' financial solvency, appears to not be in question. Nevertheless, Plaintiff is concerned with Blue Ridge Bank's recent report of significant losses in its financial report for the third quarter of 2023 and views the same as a reason to expeditiously proceed with settlement. Simply put, even if there is no realistic chance of insolvency, it does not benefit the Class in any way to delay and to absorb the risk of a decline in Defendants' circumstances. Defendants have agreed to pay $6,000,000.00 now to resolve the pending litigation and are capable of funding the full amount according to the deadlines set forth herein. This proposed settlement provides significant compensation and a level of certainty for the Plaintiff—now, and not at some unknown time in the future.

### v.     Degree of Opposition to the Settlement

As notice of the settlement has not yet been issued to the Class Members, review of this factor is premature. However, Plaintiff has approved of and willingly executed the Settlement Agreement before the Court. The Parties will have further insight regarding the degree of opposition to the settlement, if any, before the filing of the Final Approval Motion.

Accordingly, all five of the adequacy factors favor approving this proposed settlement. Therefore, this proposed settlement should be approved as adequate.

## VI.
## CONCLUSION

Wherefore Plaintiff requests that the Court preliminarily approve the Settlement Agreement and enter the proposed Preliminary Approval Order provided as an attachment to this Motion.

Dated: November 28, 2023

Respectfully submitted,

JANICE A. MOORE, ON BEHALF OF HERSELF AND A CLASS OF ALL SIMILARLY SITUATED PARTICIPANTS IN THE VIRGINIA COMMUNITY BANKSHARES, INC. EMPLOYEE STOCK OWNERSHIP PLAN,

By: _____/s/_____
                      Counsel

| | |
|---|---|
| Harris D. Butler, VSB No. 26483 | Mark J. Krudys, VSB No. 30718 |
| Zev H. Antell, VSB No. 74634 | Daniel Zemel, VSB No. 95073 |
| BUTLER ROYALS, PLC | THE KRUDYS LAW FIRM, PLC |
| 140 Virginia Street, Suite 302 | 919 East Main Street, Suite 2020 |
| Richmond, VA 23219 | Richmond, VA  23219 |
| Phone: (804) 648-4848 | Phone: (804) 774-7950 |
| Fax: (804) 237-0413 | Fax: (804) 381-4458 |
| Email: harris@butlercurwood.com | Email: mkrudys@krudys.com |
| Email: zev@butlercurwood.com | Email : dzemel@krudys.com |
| | |
| Marie D. Carter, VSB No. 21278 | Jeffrey A. Sanborn, VSB No. 40777 |
| MARIE CARTER, PLC | JEFFREY A. SANBORN, ESQ. |
| 300 Tuckahoe Blvd. | 835 Summit View Lane |
| Richmond, VA 23226 | Charlottesville, VA  22903 |
| Phone: (804) 402-4003 | Phone: (434) 825-7205 |
| Email: mdcarter@benefits-law.com | Email: jsanborn@sanborn-law.com |

*Counsel for Plaintiff Janice A. Moore on Behalf of Herself and a Class of All Similarly Situated Participants in the Virginia Community Bankshares, Inc. Employee Stock Ownership Plan*

## CERTIFICATE OF SERVICE

I hereby certify that on November 28, 2023 , I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Virginia using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Zev Antell*
Zev Antell